IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANGELA HOGAN and B.H., a
minor, by and through his
guardian ANGELA HOGAN,
individually and on behalf of
all others similarly
situated,

Case No. 21 C 3169

Judge Harry D. Leinenweber

　　　　　　　Plaintiffs,

　　　v.

AMAZON.COM, INC.,

　　　　　　Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Angela Hogan ("Hogan") and B.H., a minor, bring this putative class action individually and on behalf of similarly situated individuals against Defendant Amazon.com, Inc. ("Amazon") Plaintiffs allege that Amazon violated Section 15 (a)—(c) of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILL. COMP. STAT. §§ 14/1—14/99 (2008). Plaintiffs also bring a claim for unjust enrichment. Amazon has moved to dismiss the Complaint. (Dkt. No. 35.) For the reasons stated herein, Amazon's Motion to Dismiss is denied in part, granted in part, and Plaintiffs' claims under BIPA Section 15(a) and 15(c) are remanded to Cook County Circuit Court.

## I. FACTUAL BACKGROUND

Plaintiffs are citizens of Illinois who are filing suit against Amazon based on Amazon's collection of biometric data through its Amazon Photos service. (Compl. ¶¶ 5—13, Dkt. No. 23.) Amazon launched Amazon photos in November 2014 to provide users with unlimited photo storage. (*Id.* ¶ 3.) Amazon Prime subscribers have automatic access to Amazon photos. (*Id.*) Prime subscribers may also grant access to up to five people access to Amazon Photos through a service called Family Vault. (*Id.* ¶ 46.) A person who joins a family vault receives a free Amazon Photos account, even if they are not a Prime member. (*Id.* ¶ 47.)

Amazon Photos includes Amazon's image recognition technology. (*Id.* ¶ 6.) Any time a user uploads a photograph containing a person's face, Amazon scans the person's face and obtains their biometric identifiers. (*Id.*) Amazon's image recognition technology scans the face of every person appearing in a photo uploaded to Amazon Photos, regardless of whether that person is a user of the service or not. (*Id.* ¶ 7.) This feature is automatically enabled when a user signs up for Amazon Photos, unless the user is an Illinois resident. (*Id.* ¶ 38.) If the user is an Illinois resident, image recognition is disabled and must be manually enabled by the user. (*Id.*) When a user enables image recognition they are provided with a link to "important legal information," including that

"Illinois state law may require the informed written consent from an Illinois resident before performing image recognition on photos that include his or her face." (*Id.* ¶¶ 41–42.) Amazon Prime users can disable Amazon Photos' image recognition feature at any time. (*Id.* ¶ 49.) However, a Family Vault user cannot disable image recognition if the Amazon Prime user who invited them has not disabled the feature. (*Id.* ¶ 48).

In January 2017, Amazon launched Rekognition, a technology that analyzed photos and provided object and scene detection, facial analysis, face comparison, and facial recognition. (*Id.* ¶ 29.) Rekognition was "trained" by analyzing the images users uploaded to Amazon Photos. (*Id.* ¶ 31.) Rekognition would store and analyze the biometric identifiers collected through Amazon Photos to make the service more accurate and marketable. (*Id.* ¶ 32.) Amazon sells its Rekognition technology to business, governments, and other organizations. (*Id.* ¶ 29.) Amazon Photos' users were not specifically informed that their images were being processed through Rekognition. (*Id.* ¶ 32.)

Hogan began using Amazon Photos in January 2021. (*Id.* ¶ 70.) The application was linked to Hogan's Amazon Prime account. (*Id.*) Hogan used Amazon Photos to store numerous images of Hogan and B.H. (*Id.* ¶ 71.) Because the image recognition feature was enabled, Amazon scanned Plaintiffs' faces, collecting and storing

Plaintiffs' biometric information. (*Id.*) Plaintiffs state that they never received any information about how long their biometric information would be stored, used, or when it would be destroyed. (*Id.* ¶¶ 72—74.) Plaintiffs state that they were not notified that Amazon would use their biometric data to improve its Rekognition technology. (*Id.* ¶ 74.)

As a result, Plaintiffs filed suit against Amazon, alleging violations of Section 15 (a)—(c) of BIPA. Plaintiffs originally filed their case in Cook County Circuit Court, but it was removed to this Court. (Dkt. No. 1.)

Amazon moved to dismiss the Complaint, making two main arguments (Mem., Dkt. No. 36.) Amazon's first argument is that the Plaintiffs agreed to the Amazon Photos Terms of Use ("TOUs") and Amazon's Conditions of Use ("COUs"), which specify that disputes are governed by Washington law. (*Id.* at 7.) Amazon's second argument is that Plaintiffs do not state claims in which relief can be granted under BIPA. (*Id.* at 10). Amazon also argues that Plaintiffs cannot state a claim for unjust enrichment because it is based on the same conduct as the BIPA claims. (*Id.* at 17.)

## II.  <u>LEGAL STANDARD</u>

A motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of a complaint. To defeat a 12(b)(6) motion, the allegations in a complaint must be

plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. At the motion to dismiss stage, a court must "accept [ ] as true all well-pleaded facts alleged, and draw [ ] all possible inferences in [the plaintiff's] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

### III.  <u>DISCUSSION</u>

Before ruling on the motion to dismiss, the Court must deal with two predicate issues. First, it must first decide which documents can fairly be considered in its analysis. Second, it must determine what state law governs Plaintiffs' claims.

### A.  **Incorporation-by-Reference**

Amazon attaches seven documents to its motion to dismiss. They are as follows: Amazon Photos' TOUs; Amazon's COUs; Amazon's privacy notice; Amazon's file retention policy; a brief filed in a separate case in the Northern District of California; Amazon's notice to Illinois Residents; and a transcript of proceedings from the Illinois House of Representatives session from May 30, 2008, when the House passed BIPA.

- 5 -

When ruling on a 12(b)(6) motion, a court may consider documents outside of the plaintiff's complaint if they are referred to in the complaint and central to the claim. *Wright v. Associated Ins. Companies Inc.*, 29 F.3d. 1244, 1248 (7th Cir. 1994). This rule is known as the incorporation-by-reference doctrine and states, "if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). The Seventh Circuit has noted that the incorporation-by-reference doctrine "is a narrow exception aimed at cases interpreting, for example, a contract." *Levenstein v. Salafsky,* 164 F.3d 345, 347 (7th Cir. 1998). If the doctrine does not apply, the court must either exclude the documents defendant submitted, or convert the motion into a motion for summary judgment. *Id*. Both the decision to consider a document, and the decision to convert the motion into a summary judgment motion fall within the court's discretion. *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009).

The Court finds that the incorporation-by-reference doctrine applies to some, but not all, of the attached documents. The Court considers the TOUs and the notice to Illinois residents because both are quoted in the Complaint and are central to Plaintiffs'

- 6 -

claims. The Court will also exercise its discretion to consider
the COUs. When discussing disputes, the TOUs state: "Any dispute
or claim arising from or relating to the Agreement or the Services
is subject to . . . all other terms in the Amazon.com Conditions
of Use." (Terms of Use at 3, Mem., Ex. A, Dkt. No. 36-1.) The TOUs
include a link to the COUs. (*Id.*) The COUs state: "By using any
Amazon Service, you agree that applicable federal law, and the
laws of the state of Washington . . . will govern these Conditions
of Use and any dispute of any sort." (Conditions of Use at 4, Mem.,
Ex. B, Dkt. No. 36-2.) Part of Plaintiffs' claims are based, in
part, on Amazon Photos TOUs. Amazon's COUs govern the usage of all
Amazon Services, include Amazon Photos. Further, the only relevant
portion of the TOUs is the choice-of-law provision. Both parties
agree that the choice-of-law issue applies, and it has been briefed
extensively. This issue is essentially a question of contract
interpretation, an area of law where the Seventh Circuit has held
the incorporation-by-reference doctrine applies. *See Levenstein*,
164 F.3d at 347. As such, the Court will consider the COUs, as
well as the TOUs, and the notice to Illinois residents when ruling
on Amazon's Motion to Dismiss.

The Court declines to consider the other attached documents,
which consist of Amazon's privacy notice, Amazon's file retention
policy, the brief in the California case, and the transcript of

the Illinois House of Representatives session. None of these documents are referred to in Plaintiffs' Complaint. A brief in an entirely separate case and the legislative history behind BIPA are not central to Plaintiffs' claims. Both Amazon's privacy notice and its file retention policy are linked in the TOUs. However, neither document specifically mentions how Amazon treats biometric information or identifiers, so they are not central to Plaintiffs' claims.

### B. The Choice-of-Law Provision

A federal court sitting in diversity will apply the choice-of-law rules of the state where it sits. *Jackson v. Payday Financial, LLC.*, 764 F.3d. 765, 774. In Illinois, a choice-of-law determination is only necessary when a difference in law will make a difference in the outcome. *Sosa v. Onfido*, *Inc.,* 8 F.4th 631, 637 (citing *Bridgeview Health Care Ctr.*, *Ltd. v. State Farm Fire & Cas. Co.,* 2014 IL 116389, ¶ 10, 10 N.E.3d 902, 905). In the event that a choice-of-law determination is necessary, "Illinois respects a contract's choice-of-law provision as long as the contract is valid and the law chosen is not contrary to Illinois' fundamental public policy." *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 705 (7th Cir. 2004) (citing *Fulcrum Fin. Partners v. Meridian Leasing Corp.*, 230 F.3d 1004, 1011 (7th Cir.2000)). If the law chosen is contrary to Illinois' fundamental public policy, a court

must weigh which state has a materially greater interest in the subject matter of the litigation. *Hendricks v. Novae Corp. Underwriting, Ltd.*, 868 F.3d 542, 545 (7th Cir. 2017); *see also Gen. Elec. Co. v. Uptake Techs., Inc.,* 394 F.Supp. 3d 815, 825 (N.D. Ill. 2019).

The law treats minors differently in contract law, and as a result the parties agree in the first instance that B.H. was not party to the contract, and the Court will analyze his position separately. Here, both parties agree that the parties entered a valid contract and Illinois law applies Amazon's choice-of-law provision. The parties' dispute whether Illinois law requires the suit to be governed by Washington law. Because the choice-of-law provision applies to both Plaintiffs' BIPA claims and the unjust enrichment claim, the Court will analyze the choice-of-law decision for both claims in turn.

### 1. *Choice-of-Law for the BIPA Claims*

The decision in what law to apply to the BIPA claims will make a difference in the ultimate outcome of the case. As the parties point out, Washington's biometric protection statute does not create a private cause of action. WASH. REV. CODE § 19.375.030 (2017) ("This chapter may be enforced solely by the attorney general under the consumer protection act."). In other words, if

Washington law applies, Hogan would be foreclosed from suing under BIPA, and would be unable to bring suit on her own behalf.

The Seventh Circuit has not issued a broad rule about whether enforcing a choice-of-law provision that forecloses a BIPA claim is contrary to Illinois' fundamental public policy. However, district courts across the country have ruled on this issue on a case-by-case basis. Most notably, the Northern District of California refused to uphold a choice-of-law provision that would substitute California law for BIPA. *In re Facebook Biometric Information Privacy Litigation*, 185 F.Supp. 3d 1155, 1169-1170 (N.D. Cal. 2016). In that case, the plaintiffs filed suit in Illinois against Facebook under BIPA, but the case was transferred to the Northern District of California. *Id.* at 1158. Facebook filed a motion to dismiss, arguing that plaintiffs were bound by the choice of law provision in Facebook's user agreement. *Id.* at 1159. The court concluded that plaintiffs agreed to the user agreement, which contained a choice-of-law provision specifying that California law would apply. *Id.* at 1167. The court applied California choice-of-law rules, which dictate that the choice-of-law provision will not apply if the chosen law is contrary to a fundamental policy of the state law alternative. *Id.* at 1169 (citing *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1323 (9th Cir.2012)). The court found that BIPA is a "fundamental policy of

- 10 -

the state of Illinois." *Id*. at 1169. Specifically, the court found that the plain language of BIPA "indisputably evinces a fundamental privacy policy of Illinois." *Id*. One of the reasons the court declined to apply California law is because, at the time, California did not have a statute or policy equivalent to BIPA. *Id*. at 1169-1170. Other courts have acknowledged this reasoning when assessing similar claims. *Williams v. Facebook, Inc.*, 384 F.Supp. 3d 1043, 1056 (N.D. Cal. 2018) (choosing to apply California law over Illinois law when California had no biometric protection statute would write Illinois' law "out of existence."); *Palamino v. Facebook, Inc.*, No. 16-CV-04230-HSG, 2017 WL 76901, at *4 (N.D. Cal. Jan. 9, 2017).

The court's decision in *Facebook* is instructive. Both California and Illinois choice-of-law rules dictate that law specified in the contract will not apply if it violates a fundamental state law policy. *Ruiz*, 667 F.3d at 1323 (explaining California's choice-of-law rules); *Thomas*, 381 F.3d 701 (explaining Illinois' choice-of-law rules). However, *Facebook* is not totally applicable here. While California did not have a biometric protection statute or policy at the time, Washington does. As noted above, the key difference between the two statutes is that the Washington statute does not create a private cause of action.

A recent decision by a court in this District has considered the question of whether applying Washington law would be contrary to Illinois' fundamental public policy. *Courtnie Patterson v. Respondus, Inc.*, No. 20 C 7692, 2022 WL 860946 (N.D. Ill. Mar. 23, 2022). *Courtnie* is a consolidation of three actions, all filed against Respondus, a Washington-based company. *Id.* at *1. Much like in this case, the plaintiff in *Courtnie* was subject to a contract with a choice-of-law provision specifying Washington law would govern any disputes. *Id.* at *11. The court there found that enforcing the choice-of-law provision would violate Illinois public policy. *Id.* at *14. In so doing, the court also held that "BIPA reflects a fundamental Illinois public policy of protecting individual privacy rights in biometric information." *Id.* at *15. This Court agrees with the *Courtnie* court. Illinois has "codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Entertainment Corporation*, 2019 IL 123186129, ¶ 33, N.E.3d 1197, 1206 (Ill. 2019). The fact that BIPA creates a private cause of action underscores the importance Illinois places on an *individual's* right to control their biometric information. Applying Washington law would rob Plaintiffs of control over their individual biometric information, instead leaving it to Washington's attorney general to bring suit. Enforcing the choice-

of-law provision would thus undermine fundamental Illinois public policy. *See Courtnie*, 2022 WL 860946 at *16.

In defense of its position, Amazon alleges that Illinois courts have enforced choice-of-law provisions when they would deprive a plaintiff of a claim they would otherwise have. In support, Amazon cites to *WTM, Inc. v. Henneck*, 125 F.Supp. 2d 864 (N.D. Ill. 2000). In *Henneck*, the contract had a choice-of-law provision which specified that Illinois law would apply. *Id*. at 867. The *Henneck* court chose to enforce the choice-of-law provision because choosing Illinois law would not be contrary to the public policy of Illinois. *Id*. at 868. The holding in *Henneck* is not applicable here. It is clearly not against fundamental Illinois public policy to apply Illinois law. The decision to apply a different state's law in place of Illinois' law requires different public policy considerations. *See Courtnie*, 2022 WL 860946 at *15. Amazon additionally cites to cases where courts have upheld choice-of-law provisions that deprived plaintiffs of claims under Illinois law. Those cases too are inapplicable. Amazon cites cases where courts have enforced choice-of-law provisions in the context of actions and defenses raised under the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act".) *See e.g., Amaro v. Cap. One Bank*, No. 97 C 4638, 1998 WL 299396 (N.D. Ill. May 21, 1998) (upholding a choice-of-law provision requiring

- 13 -

application of Virginia law when plaintiff brought a claim under the Consumer Fraud Act.); *Potomac Leasing Co. v. Chuck's Pub, Inc.*, 156 Ill. App. 3d 755 (2d Dist. 1987) (upholding a choice-of-law provision requiring application of Michigan law when defendant raised an affirmative defense under the Consumer Fraud Act.); *Janice Doty Unlimited, Inc. v. Stoecker*, 697 F.Supp. 1016, 1020 (N.D. Ill. 1988) (upholding a choice-of-law provision requiring application of Georgia law when defendant brought a counterclaim under the Consumer Fraud Act). The line of cases that Amazon cites is evidence that courts do not consider the Consumer Fraud Act to be fundamental Illinois public policy, but it sheds no light on the status of BIPA. Every state has a consumer protection law, most of which allows individuals to file suit on their own behalf. *See* National Consumer Law Center, CONSUMER PROTECTION IN THE STATES, 11, *https://www.nclc.org/images/pdf/udap/udap-report.pdf*. That is not the case at hand. Thus, the Court finds that the choice-of-law provision is contrary to Illinois' fundamental public policy in this case.

Because the Court finds that the choice-of-law provision violates fundamental Illinois' public policy, the Court does not reach Plaintiffs' additional arguments. The Court will next turn to the issue of whether Washington or Illinois has a materially greater interest in this dispute. Amazon argues that Washington

- 14 -

has a greater interest than Illinois because Amazon's headquarters is in Seattle. Amazon alleges that the employees working on Amazon photos and Rekognition products are also based in Seattle. Plaintiffs argue that Illinois has the greater interest because Illinois citizens are being harmed.

The Court finds that Illinois has the greater material interest in this dispute. The fact that Amazon is headquartered in Washington and employs workers there does not give Washington a greater interest. *See Courtnie*, 2022 WL 860946 at \*16; *Eng. Co. v. Nw. Envirocon, Inc.*, 278 Ill. App. 3d 406, 411 (2d Dist. 1996). Washington district courts have considered similar issues, recognizing that Illinois "made clear through BIPA that it has substantial interest in protecting its residents' biometric data, even if the harm is inflicted by an out-of-state corporation." *Vance v. Microsoft Corp.*, 534 F.Supp. 3d 1301, 1312 (W.D. Wash. 2021). Washington district courts have even considered claims against Amazon under BIPA, writing: "Illinois's recognition of both the role of major national corporations as well as the unknown nature of the full ramifications of biometric technology underscores Illinois's great interest in protecting its citizenry." *Vance v. Amazon.com Inc.*, 534 F.Supp. 3d 1314, 1327 (W.D. Wash. 2021). The Court agrees. Illinois has the greater material interest in this dispute and the Court will not enforce

the choice-of-law provision. Hogan's claims will be evaluated using Illinois law under BIPA.

The parties also dispute what law will govern B.H.'s claims. The arguments are somewhat underdeveloped in the briefing. According to Plaintiffs' allegations, B.H. was not a party to any contract with Amazon. Amazon argues that it "reserves the right to argue . . . that the choice of law provision is binding on B.H., either as a signatory or a non-signatory." (Mem. p. 8, n. 3, Dkt. No. 36.) However, since the Court is not enforcing the choice-of-law provision for Hogan, it cannot be binding on B.H. either. B.H.'s claims will also be evaluated using Illinois law under BIPA.

### 2. Choice-of-Law for the Unjust Enrichment Claim

The choice-of-law analysis for Plaintiffs' unjust enrichment claim is much simpler. The decision in what law to apply will make no difference in the ultimate outcome of the claim. The elements of unjust enrichment are largely similar in both states. *Stefanski v. City of Chicago*, 2015 IL App (1st) 132844, ¶ 47, 28 N.E.3d 967, 980; *Norcon Builders*, *LLC. v. GMP Homes VG, LLC.*, 161 Wash. App. 474, 490, (2011). As the choice of law will make no difference in outcome, the Court will apply Illinois law to the unjust enrichment claim as well.

### C.  Plaintiffs' BIPA Claims

Plaintiffs' Complaint alleges that Amazon violated BIPA Section 15, subsections (a), (b), and (c). The Court analyzes each claim in turn.

#### 1.  Plaintiffs' 15(a) Claim

Section 15(a) of BIPA states:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

740 ILL. COMP. STAT. §§ 14/15(a). Neither party has raised the issue of jurisdiction here. Yet a court must ensure that it has subject-matter jurisdiction, even when the parties do not raise the issue. *Dexia Credit Loc. v. Rogan*, 602 F.3d 879, 883 (7th Cir. 2010). Parties may not waive arguments that the court lacks jurisdiction. *Id.* When a case is originally filed in state court and then removed to federal court, the federal court must remand those parts of the case that it does not have jurisdiction over. 28 U.S.C. § 1447(c); *Collier v. SP Plus Corp.*, 889 F.3d 894, 897 (7th Cir. 2018).

For a federal court to have subject matter jurisdiction, the plaintiff must have standing. *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020). "To have standing to maintain a case in federal court, a plaintiff must establish '(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'" *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 860 (7th Cir. 2018) (quoting *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017)).

The Seventh Circuit has held that for a plaintiff to establish standing in a BIPA claim they must "have suffered an actual or imminent, concrete and particularized injury-in-fact." *Bryant v. Compass Group USA, Inc.*, 958 F.3d 617, 619-620 (7th Cir. 2020). The requirement to establish standing in the Seventh Circuit for a BIPA claim is different than the requirement to establish standing in Illinois state court. *Id*. at 622. Illinois' courts do not require plaintiffs to show a particularized injury-in-fact to establish standing. *Rosenbach*, N.E.3d at 1206. In other words, in Illinois, "[t]he violation, in itself, is sufficient to support the individual's or customer's statutory cause of action." *Id*.

When asserting claims under Section 15(a), a plaintiff has standing to assert a claim of unlawful retention of biometric data beyond the time limits set within that section. *Courtnie*, 2022 WL

- 18 -

860946 at *17 (citing *Fox v. Dakkota Integrated Sys.*, LLC*, 980 F.3d 1146, 1154-1155 (7th Cir. 2020)). However, when a plaintiff's 15(a) claim only alleges that a defendant did not create a publicly available written policy governing the retention of biometric identifiers and information, they lack standing. *Bryant*, 958 F3.d at 626.

Here, Plaintiffs claim that Amazon violated Section 15(a) of BIPA by failing to create a publicly available written policy governing the retention of biometric identifiers and information. Importantly, when pleading its 15(a) claim, Plaintiffs' Complaint does not allege that Amazon unlawfully retained biometric data beyond the legal time limit. The Complaint simply alleges that Amazon failed to create a retention policy. As such, Plaintiffs lack standing to bring this claim in federal court. Because this action began in state court, and because the standing requirements in Illinois state court differ, the Court remands, rather than dismisses Plaintiffs' Section 15(a) claims. *Collier*, 889 F.3d at 897; *Rosenbach*, N.E.3d at 1197 (Ill. 2019).

### 2. *Plaintiffs' Section 15(b) Claims*

BIPA Section 15(b) prohibits a private entity from obtaining a person's biometric identifier or biometric information unless it satisfies three conditions. 740 ILL. COMP. STAT. §§ 14/15(b). First, the entity must inform the subject in writing that it is collecting

- 19 -

or storing biometric information. *Id*. (b)(1). Second, it must inform the subject in writing of the specific purpose and length of term that the information is being collected, stored, and used. *Id*. (b)(2). Third, it must receive a written release from the subject. *Id.* (b)(3). A biometric identifier is defined as a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry. *Id*. 14/10.

The Court finds that Plaintiffs have standing to bring their 15(b) claim. The Seventh Circuit has held that when a plaintiff alleges that they were not given statutorily required information, they are essentially deprived of informed consent. *Bryant*, 958 F.3d at 626. The deprivation of informed consent is a particularized injury-in-fact, as plaintiffs may have chosen not to use the service if they had full information. *Id*. Here, the Complaint alleges that Amazon failed to inform Plaintiff about what information was collected from them, the terms of that collection, and what the information was used for. In essence, the Plaintiffs allege that they lacked the information necessary to give informed consent to use of Amazon Photos. They have standing to bring their 15(b) claim.

The Court also finds that Plaintiffs have stated a 15(b) claim upon which relief can be granted. Plaintiffs argue that Amazon did not comply with its statutory notice and informed consent

requirements. Amazon points to its TOUs which state when image recognition is enabled, Amazon retains "image recognition data, including data about the faces." (Terms of Use at 1, Mem., Ex. A, Dkt. No. 36-1.) Amazon also points to another statement in the TOUs, stating that Amazon may retain user files to improve services, arguing that "services" includes Rekognition. The statement in the TOUs that Amazon retains data about the faces is not clear enough to notify a party that Amazon is collecting a biometric identifier. The statement in the TOUs that Amazon retains user files to improve services is not specific enough to notify a user that their images are being analyzed through an entirely different technology for Amazon's commercial gain. As such, Plaintiffs have sufficiently pled claims for violations of 15(b).

### 3. *Section 15(c)*

Section 15(c) of BIPA states:

> No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information.

740 Ill. Comp. Stat. §§ 14/15(c).

The Court finds that Plaintiffs do not have standing to bring their 15(c) claim. In *Courtnie*, the plaintiff also alleged a violation of 15(c) based defendants marketing of their product that collected biometric information. 2022 WL 860946 at *19. The

- 21 -

*Courtnie* court remanded plaintiff's 15(c) claim, holding that it did not allege any "concrete or particularized harm." *Id*. Here, Plaintiffs allege that Amazon violated 15(c) because it used the images uploaded to Amazon Photos to train Rekognition, which it then sold to third parties. However, Plaintiffs do not allege that they were specifically harmed. They do not plead facts to show that their images were specifically used to better the Rekognition technology or make it more marketable. As Plaintiffs fail to plead facts showing how they were affected by Amazon's profiting from Rekognition, they cannot show a particularized injury-in-fact. As a result, Plaintiffs do not have standing to maintain their claim in this Court. The Court remands Plaintiffs' Section 15(c) claims.

### D. Plaintiffs' Unjust Enrichment Claim

To state an unjust enrichment claim in Illinois, a plaintiff must allege that the defendant has unjustly retained a benefit to plaintiffs' detriment and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. *Stefanski*, 28 N.E.3d at 980. To sufficiently plead an unjust enrichment claim, a plaintiff need not necessarily show that they suffered a loss or damages. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 518 (7th Cir. 2011). However, a plaintiff must show a detriment, and a connection between that detriment and the defendant's retention of a benefit. *Id*.

Here the alleged detriment is Amazon's violation of BIPA to collect Plaintiffs biometric information. The alleged benefit is Amazon's profits from its sale of the Rekognition technology. The Plainitffs' claim runs into a familiar problem. It does not allege that retention of Plaintiffs' data specifically enriched Amazon. Unjust enrichment claims are a recourse for recovering something that a defendant is unfairly possessing to the plaintiff's detriment. *Id.* at 520. In support of their argument, Plaintiff cites *Vance v. Int'l Bus. Machines Corp.*, No. 20 C 577, 2020 WL 5530134 (N.D. Ill. Sept. 15, 2020). There, the court found that plaintiffs had adequately pled an unjust enrichment claim predicated on BIPA violations. *Id.* at *5. In *Vance*, the plaintiff uploaded images to Flickr, who made those images available to IBM. *Id.* at *1. IBM then took those images, analyzed them, and made a dataset from them, which it disseminated. *Id.*

Plaintiffs' claims in this case are too attenuated to state an unjust enrichment claim. In *Vance*, the plaintiff showed that specific images he uploaded were disseminated by IBM. Here, Plaintiffs do not allege which images are being used unjustly. Further, Plaintiffs do not allege facts to show exactly how Amazon is profiting from Plaintiffs' images. Even if Amazon was using Plaintiffs' images to train Rekognition, Plaintiffs fail to allege how their specific images made Rekognition more valuable or

profitable to Amazon. As a result, Plaintiffs have not sufficiently pled a claim of unjust enrichment. The Court dismisses the claim.

### IV.    CONCLUSION

For the reasons stated herein, Amazon's Motion to Dismiss (Dkt. No. 35) is denied as to Plaintiff's BIPA Section 15(b) claim and granted as to Plaintiffs' unjust enrichment claim. Plaintiff's BIPA Section 15(a) and 15(c) claims are remanded to Cook County Circuit Court.

**IT IS SO ORDERED.**


_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 3/30/2022

- 24 -