**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ANGELA HOGAN and B.H., a minor, by and
through his guardian ANGELA HOGAN,
individually and on behalf of all others
similarly situated,

        *Plaintiffs*,

        v.

AMAZON.COM, INC.,

        *Defendant*.

Case No. 1:21-cv-03169

Honorable John J. Tharp, Jr.

**PUBLIC REDACTED VERSION**

**DEFENDANT AMAZON.COM, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

I.      AMAZON PHOTOS IS FOR PHOTOS STORAGE AND MANAGEMENT ................ 3

II.     IMAGE RECOGNITION TECHNOLOGY WAS DISABLED BY DEFAULT. ............ 5

III.    MS. HOGAN ENABLED IMAGE RECOGNITION SO SHE COULD SUE. ................ 7

ARGUMENT ........................................................................................................................ 8

I.      A CLASS ACTION IS NOT SUPERIOR. ................................................................. 9

      A.     Class Litigation Would Be Unmanageable in the Extreme. ................................. 9

           1.     Identifying the Members of the Putative Non-User Class Is
Impossible. ........................................................................................ 10

           2.     Identifying the Members of the User Class Would Overwhelm
These Proceedings. ........................................................................... 12

      B.     This Case Does Not Involve Potential "Small Recoveries" Justifying a
Class. ............................................................................................................... 14

II.     INDIVIDUALIZED ISSUES WOULD PREDOMINATE. ........................................ 16

      A.     Whether Each Photo Was Uploaded in Illinois Is an Individualized Issue. ........ 16

      B.     Other Individualized Issues Also Predominate. ................................................ 20

           1.     Whether Each Embedding is Sufficient to Qualify as a Unique
Biometric Identifier is an Individualized Issue. .................................. 20

           2.     Whether Each Class Member Provided Informed Consent is an
Individualized Issue. ......................................................................... 23

           3.     Equitable Defenses Raise Individualized Issues. ................................ 25

           4.     Determining Discretionary Damages Raises Individualized Issues. ....... 27

III.    PLAINTIFFS FAIL TO PROVE ADEQUACY OR TYPICALITY. ........................... 29

IV.    THE COURT SHOULD NOT CERTIFY A CLASS UNDER RULE 23(B)(2). ........... 30

CONCLUSION .................................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)........................................................................................................8

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)......................................................................................................14

*Anderson v. Holy See*,
878 F.Supp.2d 923 (N.D. Ill. 2012) ............................................................................26

*Andrews v. Chevy Chase Bank*,
545 F.3d 570 (7th Cir. 2008) .......................................................................................15

*Bakov v. Consol. World Travel, Inc.*,
2019 WL 1294659 (N.D. Ill. 2019) ..............................................................................9

*Beaton v. Speedy PC Software*,
907 F.3d 1018 (7th Cir. 2018) .....................................................................................29

*Brandenberg v. Meridian Senior Living, LLC*,
564 F. Supp. 3d 627 (C.D. Ill. 2021) ..........................................................................26

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008)......................................................................................................14

*Briscoe v. Health Care Serv. Corp.*,
337 F.R.D. 158 (N.D. Ill. 2020)...................................................................................10

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) .....................................................................................14

*Campana v. Nuance Commc'ns, Inc.*,
2024 WL 2809838 (N.D. Ill 2024) ........................................................................17, 20

*Canterbury v. Spense*,
464 F.2d 772 (D.C. Cir. 1972)......................................................................................24

*Carle Found. v. Dep't of Revenue*,
917 N.E.2d 1136 (Ill. App. Ct. 2009) ..........................................................................26

*Carpenter v. McDonald's Corp.*,
580 F. Supp. 3d 512 (N.D. Ill. 2022) ..........................................................................21

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013).................................................................................28

*Conrad v. Boiron, Inc.*,
    869 F.3d 536 (7th Cir 2017) ..............................................................29

*Cothron v. White Castle Sys., Inc.*,
    216 N.E.3d 918 (Ill. 2023) ...........................................................19, 27

*Dynak v. Bd. Of Educ.*,
    164 N.E.3d 1226 (Ill. 2020)................................................................21

*E.E.O.C. v. AutoZone, Inc.*,
    707 F.3d 824 (7th Cir. 2013) ..............................................................30

*G.M. Sign, Inc. v. Brink's Mfg. Co.*,
    2011 WL 248511 (N.D. Ill. 2011) ......................................................25

*Gen. Tel. Co. v. Falcon*,
    457 U.S. 147 (1982)..............................................................................8

*Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*,
    29 F.4th 839 (7th Cir. 2022) .........................................................25, 26

*Hogan v. Amazon.com, Inc.*,
    2022 WL 952763 (N.D. Ill. 2022) .................................................23, 24

*Hyderi v. Wash. Mut. Bank, FA*,
    235 F.R.D. 390 (N.D. Ill. 2006).........................................................15

*In re Facebook Biometric Info. Priv. Litig.*,
    326 F.R.D. 535 (N.D. Cal. 2018).................................................19, 20

*In re TransUnion Corp. Privacy Litig.*,
    211 F.R.D. 328 (N.D. Ill. 2002).........................................................15

*Jamie S. v. Milwaukee Pub. Schs.*,
    668 F.3d 481 (7th Cir. 2012) ..............................................................10

*Karpilovsky v. All Web Leads, Inc.*,
    2018 WL 3108884 (N.D. Ill. 2018) ....................................................10

*Lacy v. Cook Cnty.*,
    897 F.3d 847 (7th Cir. 2018) ................................................................9

*Martell v. X Corp.*,
    2024 WL 3011353 (N.D. Ill. 2024) ...............................................17, 20

*McGoveran v. Amazon Web Servs.*,
  2021 WL 4502089 (D. Del. 2021) ....................................................................17, 20

*McLaughlin v. Am. Tobacco Co.*,
  522 F. 3d 214 (2d Cir. 2008)....................................................................................13

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) .....................................................................................8

*Mullins v. Direct Digital, LLC*,
  795 F.3d 654 (7th Cir. 2015) .........................................................................9, 10, 13

*Murray v. GMAC Mortg. Corp.*,
  434 F.3d 948 (7th Cir. 2006) .............................................................................15, 16

*Oshana v. Coca-Cola Co.*,
  472 F.3d 506 (7th Cir. 2006) ...................................................................................29

*Pierce v. County of Orange*,
  526 F.3d 1190 (9th Cir. 2008) ...................................................................................9

*Rivera v. Google Inc.*,
  238 F. Supp. 3d 1088 (N.D. Ill. 2017) ......................................................16, 17, 20

*Santana v. Take-Two Interactive Software, Inc.*,
  717 F. App'x 12 (2d Cir. 2017) ...............................................................................24

*Snider v. Heartland Beef, Inc.*,
  479 F. Supp. 3d 762 (C.D. Ill. 2020) .......................................................................26

*Svoboda v. Amazon.com, Inc.*,
  2024 WL 1363718 (N.D. Ill. 2024) .........................................................................15

*Tapia-Rendon v. United Tape & Finishing Co.*,
  2023 WL 5228178 (N.D.Ill. 2023) ..........................................................................27

*Toney v. Quality Res., Inc.*,
  75 F. Supp. 3d 727 (N.D. Ill. 2014) ...................................................................26, 27

*Vance v. Microsoft Corp.*,
  2022 WL 9983979 (W.D. Wash. 2022)...............................................................17, 20

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2010)..................................................................................8, 28, 30

*Wallrich v. Samsung Elecs., Inc.*,
  2023 WL 5934842 (N.D. Ill. 2023) .........................................................................17

iv

*Weaver v. Champion Petfoods*,
  3 F.4th 927 (7th Cir. 2021) ........................................................................24

*Wiley v. Am. Fin. Network, Inc.*,
  2023 WL 4681538 (C.D. Cal. 2023) ..........................................................29

*Zellmer v. Meta Platforms, Inc.*,
  2024 WL 3016946 (9th Cir. 2024) ..............................................................21

*Zinser v. Accufix*,
  253 F.3d 1180 (9th Cir. 2001) ....................................................................16

## STATUTES

740 ILCS 14/5(c) ................................................................................................21

740 ILCS 14/10 ....................................................................................20, 21, 23

740 ILCS 14/15 ..................................................................................................15

740 ILCS 14/15(b)(3) ........................................................................................23

740 ILCS 14/15(e)(2) ........................................................................................21

740 ILCS 14/20 ..................................................................................................26

740 ILCS 15(a) ..................................................................................................30

740 ILCS 15(b) ......................................................................................8, 23, 30

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 ...........................................................................................8, 9

Fed. R. Civ. P. 23(a) ........................................................................................30

Fed. R. Civ. P. 23(a)(2) ....................................................................................30

Fed. R. Civ. P. 23(b)(2) ....................................................................................30

Fed. R. Civ. P. 23(b)(3) ..........................................................................9, 25, 28

Fed. R. Civ. P. 23(b)(3)(D) ................................................................................9

## INTRODUCTION

Amazon Photos is a free service that offers photo storage and organizational tools, including an optional "image recognition" feature that groups similar objects and faces together. Image recognition was disabled by default in Illinois, and Illinois users could enable it only by first consenting to Amazon Photos' Terms of Use and an Illinois-specific legal notice, which explained the feature and how it operates. Plaintiff Angela Hogan agreed to those terms and enabled image recognition, yet now alleges that Amazon Photos violated BIPA Section 15(b) by scanning her face geometry without consent when grouping her photos together. She brings this lawsuit on behalf of herself and her toddler son, Plaintiff B.H., whose photos she also uploaded to her Amazon Photos account after enabling image recognition.

With this motion, Plaintiffs demand certification of two sprawling and indeterminate classes that are unlike any ever certified. Plaintiffs do not know who is in the proposed classes, and there is no way to identify them without conducting an unprecedented account-by-account, photo-by-photo, and face-by-face analysis of more than ███████████████████ ██████████. Even if this were feasible, there is no way to match those ██████ of faces to actual people (many of whom do not know they appear in the photos), let alone determine whether they reside in Illinois. The economics of the proposed classes are also unprecedented. If certified, they would threaten Amazon with potential liability ████████████████████████████ ████████████████████████████████████████. Indeed, under Plaintiffs' theory, many of the putative class members have individual claims against ████████████ ████████████████████████, despite suffering no actual harm. A class action is not the superior method for adjudicating such high-value claims, with no ascertainable owner and no means to provide notice or opt-out rights.

Class litigation would also be unmanageable in the extreme. Each putative class member would need to present individualized evidence proving that (1) the person's face appears in one or more photos uploaded to an Amazon Photos account with image recognition enabled; (2) the person is an Illinois resident; and (3) each photo was uploaded to Amazon Photos from within Illinois, as only conduct occurring "primarily and substantially" in Illinois could potentially trigger BIPA. Plaintiffs propose no means by which *any* of these issues could be proven on a classwide basis, and no such means exists. Any attempt to answer these essential questions would require ██████████████████████████████ and still, in many instances, there would be no answer.

Other individualized issues also predominate and preclude class certification. Each putative class member must prove that the data generated by Amazon Photos' image-recognition feature qualifies as "biometric information" under BIPA. Yet because of differences in photo quality, including that faces often are cut off, obscured, or out of focus, this issue cannot be resolved on a classwide basis. Each photograph and its accompanying data must be analyzed individually to adjudicate the alleged BIPA violation. Likewise, each putative class member must prove that Amazon collected their biometric information without informed consent. This, too, requires an individualized inquiry because the evidence shows ████████████████ who viewed Amazon Photos' disclosures believed that the image-recognition feature would collect biometric information if they turned it on. Mini-trials would be required to determine which class members are in the small minority and thus may not have provided informed consent.

Finally, Plaintiffs are neither adequate nor typical class representatives. Ms. Hogan replied to a Facebook advertisement from Plaintiffs' counsel seeking plaintiffs for this case. ████████ ████████████████████████████████████████ to manufacture a BIPA claim, knowing full well how the feature worked. She enjoyed the feature, which helped her organize

photos of B.H. and see his development over the years, and she continued to use it after filing this lawsuit, even though she could have disabled it at any time. These facts give rise to unique defenses to Plaintiffs' claims, and make Plaintiffs inadequate, atypical class representatives.

For these and other reasons described below, this Court should deny Plaintiffs' motion for class certification, which fails for lack of superiority, predominance, adequacy, and typicality.

## **BACKGROUND**

### I. **AMAZON PHOTOS IS FOR PHOTOS STORAGE AND MANAGEMENT.**

Amazon Photos is a free, secure, online storage system for photos and videos. Calargun Decl. ¶ 2 & Ex. A; *see also* Siegel Rep. ¶¶ 8-10.[1] Users can save, share, and access their photos. *Id.* Image recognition is an optional tool to help users organize photos by people and things. *Id.* ¶ 3. Image recognition was disabled by default in Illinois, and a customer who wished to use it had to voluntarily opt in and consent to Amazon's Terms of Use ("TOUs") and "important legal information." Calargun Tr. 238:15-239:18; Buckingham Tr. 66:1-25.

When enabled,[2] the image recognition technology involves a three-step process that begins immediately after a photo is uploaded by the user. ███████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████████

---

[1] Amazon Photos is owned and operated by non-party, Amazon.com Services LLC, not Defendant Amazon.com, Inc.

[2] ████████████████████████████████████████████████████ Amazon discontinued image recognition technology for these account holders in January 2023. Calargun Tr. 101:9-102:15; *see* Calargun 30(b)(6) Tr. 46:22-47:4.





Users decide whether to label any clusters created for their accounts, ██████████ ██████████████████████████ Labels can be a name, a nickname, or anything else the user chooses. *Id*. For example, a user might name a cluster of images of their mother, "Supermom." Amazon Photos will group similar embeddings into the "Supermom" cluster, but Amazon has no way to know Supermom's identity. ██████████████████████████████ ████████████████████████████████████████

## II.     IMAGE RECOGNITION TECHNOLOGY WAS DISABLED BY DEFAULT.

Amazon Photos users in Illinois who voluntarily enabled image recognition were provided with disclosures, both during the Amazon Photos sign-up process and when completing the further steps required to enable image recognition. The record shows that Amazon's goal was to make things easy to understand by using plain language. McLane Tr. 105:23-108:8; 256:3-259:25.

To create an Amazon Photos account, a user must accept the Amazon Photos TOUs, which are presented via a prominent hyperlink on the sign-in screen. The TOUs inform the user that Amazon Photos' services "provide storage, retrieval, management, printing, and access features and functionality for your photos, videos, and other files ('Your Files')." McLane Tr. Ex. 9 § 1.1. The TOUs state: "[w]hen enabled, you agree that the Services may use image recognition technology to group together photos containing people with similar facial characteristics, and to organize and tag your photos." *Id.* The TOUs further disclose that "[w]e retain image recognition data, including data about the faces, in the photos you store using the Services until you disable

the image recognition features or your account's access to the Services is terminated." *Id*. The

TOUs provide the following additional information:

> Image recognition features are enabled automatically when you begin using the
> Services unless the billing information associated with your account indicates that
> you may be an Illinois resident, in which case the image recognition features will
> be disabled and must be enabled by you. You may enable or disable the Services'
> image recognition features through your account settings here. You can learn more
> about the Services' image recognition features in our help content available here.

*Id*. The TOUs also include the following "Notice to Illinois Residents":

> The image recognition features of the Services are not initially enabled for residents
> of the State of Illinois. If you are an Illinois resident and (a) wish to use the image
> recognition features of the Services for the photos stored in your account or in a
> Family Vault that you create, . . . you understand that image recognition analysis
> will be performed on the photos stored in your account or that are contributed by
> you to the Family Vault, and you represent to us that you have obtained the
> informed written consent of the individuals in the photos stored in your account
> permitting us to use image recognition analysis on photos of them. If you are an
> Illinois resident, you are also required to read and agree to the important legal
> information regarding your use of such features here.

*Id*. at § 6.6.

Image recognition was disabled by default for Illinois users. *See, e.g.*, McLane Tr. 44:8-

11. To enable image recognition, Illinois users had to navigate to the Find People, Places, and

Things screen and then turn image recognition on by toggling a switch from "off" to "on":



*See* ECF No. 23, Am. Compl. ¶¶ 39, 40.

6

The first hyperlink, "Learn more," takes a user to a page titled "How Does Image Recognition Work?" That page described the key features of the technology, including that it would help users "search and find photos" and keep their photo library organized. *Id.* This screen also advised users that "by turning on image recognition features" they were agreeing to "important legal information" available by hyperlink. *Id.* ¶ 41. The legal information to which the user agreed informed them that "[i]mage recognition features are disabled initially for Illinois residents because an Illinois state law may require the informed written consent from an Illinois resident before performing image recognition on photos that include his or her face" and that "[b]y enabling image recognition features for your account, you understand that image recognition analysis will be performed on the photos stored in your account." McLane Tr. Ex. 7. Consumers could turn off image recognition at any time: "You may enable or disable the Services' image recognition features through your account settings here." McLane Tr. Ex. 9 § 1.1.

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████

Plaintiffs initially alleged that Amazon used image recognition data to train Amazon Web Services' product Rekognition. *See* ECF No. 23, Am. Compl. ¶¶ 8, 59-60, 97. While that allegation helped Plaintiffs survive a motion to dismiss, it has been proven false (*see, e.g.*, Flynn Tr. 28:20-30:7) and Plaintiffs have since abandoned it.

## III.   MS. HOGAN ENABLED IMAGE RECOGNITION SO SHE COULD SUE.

In December 2020, Plaintiff Angela Hogan purchased two Amazon Fire tablets for her then 11-year-old daughter and then infant son. Hogan Tr. 11:11-14, 19:11-13, 20:9-19. On April 27, 2021, Ms. Hogan responded to a Facebook solicitation from her lawyers, who were seeking a

plaintiff for this case. *Id.* 124:3-24. ███████████████████████████

███████████████████████████ Two weeks later, she filed this lawsuit. *See* ECF

No. 1-1 (filed on May 12, 2021 in Illinois state court).

Before opting-in to image recognition, Ms. Hogan did not read Amazon Photos' TOUs or

the Notice to Illinois residents. *See* Hogan Tr. 78:21-80:22, 116:10-117:2 & Ex. 4. ████████

███████████████████████████████████████████████

███████████████████████████████████████ She

appreciates how Amazon Photos allows her to "[s]ee[] how [her son]'s grown over the years" and

that it "refreshes [her] memory on the things that he's done …." *Id.* 38:21-39:8. Ms. Hogan admits

she has experienced no actual harm by her use of image recognition. *Id.* 89:18-24; Herrington

Decl. Ex. 8 at Resp. to Interrog. No. 3. Plaintiffs assert a single claim under BIPA Section 15(b),

alleging that the face embeddings generated by the image recognition feature she knowingly

enabled constitute a "biometric identifier" under BIPA, and that Amazon collected her biometric

identifier without obtaining her informed written consent. ECF No. 23, Am. Compl. ¶¶ 97-98.

## ARGUMENT

Rule 23 "imposes stringent requirements for certification that in practice excludes most

claims" from class treatment. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013).

Plaintiffs must demonstrate that each requirement is met by a preponderance of the evidence.

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). The Court must

conduct a "rigorous analysis" of Rule 23's stringent requirements, *Gen. Tel. Co. v. Falcon*, 457

U.S. 147, 161 (1982), which usually "entail[s] some overlap with the merits of the plaintiff's

underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2010). "The class

determination generally involves considerations that are enmeshed in the factual and legal issues

comprising the plaintiff's cause of action." *Id.*

## I.     A CLASS ACTION IS NOT SUPERIOR.

### A.     Class Litigation Would Be Unmanageable in the Extreme.

Rule 23(b)(3) requires the plaintiff to prove a class action would be superior to individual litigation. The Court must consider, among other things, "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). Manageability problems can manifest in a number of ways. Most relevant here, class treatment is not superior if individualized inquiries are required to identify class members and determine whether they potentially have claims. The problem is especially acute where, as here, the plaintiff provides ***no plan*** for identifying class members or their potential claims. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 672 (7th Cir. 2015) ("If the proposed class presents unusually difficult manageability problems, district courts have discretion to press the plaintiff for details about the plaintiff's plan to identify class members. A plaintiff's failure to address the district court's concerns adequately may well cause the plaintiff to flunk the superiority requirement."); *accord Pierce v. County of Orange*, 526 F.3d 1190, 1200 (9th Cir. 2008) (affirming decertification of class where "Rule 23(b)(3) would not offer a superior method for fair and efficient adjudication in light of expected difficulties identifying class members").

When it is not just difficult but impossible to identify the members of the class, a plaintiff fails to prove the class is ascertainable, which courts have "long recognized" is "an implicit requirement under Rule 23." *Mullins*, 795 F.3d at 657; *see also, e.g.*, *Bakov v. Consol. World Travel, Inc.*, 2019 WL 1294659, at *13 (N.D. Ill. 2019) ("[A] plaintiff must prove the proposed class is 'ascertainable.'"). A proposed class is not ascertainable unless it is "defined clearly and based on objective criteria," such that it is at least possible to identify class members. *Mullins*, 795 F.3d 659; *see also Lacy v. Cook Cnty.*, 897 F.3d 847, 864 (7th Cir. 2018) ("[W]e have required that a class be sufficiently definite that its members are ascertainable."). Put another way, a class definition "lacks the definiteness required for class certification" when "there is no way to know

or readily ascertain who is a member of the class." *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 495 (7th Cir. 2012); *see also id.* at n.4 (distinguishing cases where the class definition refers to persons whose "identity" is "known," from cases where "the vast majority" of persons who fit the class definition "are not individually known"). As the *Mullins* court asked, "Who could reasonably argue that a plaintiff should be allowed to certify a class whose members are impossible to identify?" 795 F.3d at 662.

### 1. Identifying the Members of the Putative Non-User Class Is Impossible.

The Non-User Class is "a class whose members are impossible to identify." *Id*. The Non-User Class includes "[a]ny Illinois resident whose face appears in a photo stored in another Illinois resident's Amazon Photos account that had image recognition enabled during the Class Period, where Amazon generated a face embedding from the image of the face." Mot. 3. That definition comprises people whose faces appear in a photo that has been uploaded to an Amazon Photos account by a different Illinois resident.

The Non-User Class may have an "objective" definition, but it is not a definition that allows anyone to identify its members. Plaintiffs do not offer *any* means for identifying these non-users, who are strangers to Amazon, much less establishing their Illinois residency. ███████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████ A plaintiff "is required" to at least "set[] forth a method of identifying class members." *Karpilovsky v. All Web Leads, Inc.*, 2018 WL 3108884, at *9 (N.D. Ill. 2018); *accord Briscoe v. Health Care Serv. Corp.*, 337 F.R.D. 158, 165 (N.D. Ill. 2020) (denying certification of

---

3 ████████████████████████████████████████████████████████
████████████████████████████████████████████████

subclass on ascertainability grounds where the "Plaintiffs fail … to show the existence of reliable, objective criteria—such as a definite universe of billing codes—that would allow this Court to ascertain members of th[e] subclass"). Plaintiffs fail to satisfy the minimal ascertainability burden.

This is not a case where identifying class members is possible but merely difficult administratively. Nor is it a case where class members could be identified by, for example, publication notice and class member self-identification through affidavit or other creative means.





If the photo were uploaded to an Amazon Photos account with image recognition enabled, every person in the photo, other than the Amazon Photos users (who may or may not actually be in the picture), would fit within Plaintiffs' definition for the Non-User Class if they are an Illinois resident and if an embedding was generated from their facial image. These people cannot be identified. Most do not know they are in the photo, and

even if some do, they do not know whether the photo was uploaded to an account with image recognition enabled. To presume otherwise ignores reality. A Non-User Class is not ascertainable.

### 2. Identifying the Members of the User Class Would Overwhelm These Proceedings.

Similar issues plague the proposed User Class. ███████████████████████████
████████████████████████████████████████████████████████████████████████

█ But not every user who owns one of those accounts fits Plaintiffs' definition of the User Class. For starters, Plaintiffs have no idea who is in the User Class because they do not even know which account holders' faces appear in a photo uploaded to that user's account. Daley Rep. ¶ 50. For example, it is not difficult to imagine an account that includes only photos of persons other than the account holder who remained behind the camera. There is no way to identify members of the User Class without searching through ████████████████████████████

That account-by-account review is necessary to ascertain the members of the User Class, but it is still not sufficient. Members of the User Class must be Illinois residents. ██████████
███████████████████████████████████████████████████████ But an Illinois billing address does not establish Illinois residency. Daley Rep. ¶¶ 100-101. There are many reasons why a person's billing address may be in a state where they are not a legal resident (and vice-versa), such as short-term housing for business or other purposes, impermanent housing during a period of study, and administration of an Amazon Prime account for a relative. *Id*. For example, someone can have an Illinois billing address (where they grew up) but reside in Michigan. A billing address is not a proxy for residency and would be both under and over-inclusive. Residency would need to be litigated user-by-user to establish class membership.

Plaintiffs fail to offer any method for ascertaining the User Class that does not require account-by-account review for a photo reflecting the account holder's face that corresponds to an

12

embedding. Plaintiffs likewise fail to offer any method for ascertaining the User Class that does not also involve a user-by-user litigation to determine Illinois residency. 

Amazon must be allowed a meaningful process to contest individual class membership. Plaintiffs have utterly failed to demonstrate that the User Class is ascertainable in any manner that is not merely theoretical. While *Mullins* rejected a heightened ascertainability requirement, it did not reject ascertainability outright. *See* 795 F.3d at 657. Identifying the members of the User Class is so difficult it is effectively impossible and, therefore, the User Class is not ascertainable.

At the very least, given the high stakes, these manageability problems render class litigation inferior and inappropriate, because Plaintiffs' inability to identify class members makes calculating or even estimating aggregate class damages impossible. Plaintiffs offer no proposed damages methodology or expert. Courts have rejected efforts to calculate damages using a rough estimate of the total number of class members with claims, multiplied by each class member's average recovery. This approach violates the Rules Enabling Act because it "is likely to result in an astronomical damages figure that does not accurately reflect the number of plaintiffs actually injured by defendants and that bears little or no relationship to the amount of economic harm actually caused by defendants." *McLaughlin v. Am. Tobacco Co.*, 522 F. 3d 214, 231 (2d Cir.

2008).[4] ████████████████████████████████████████████████

████████████████████████████████████████

This is also not a case where "aggregate liability" can be computed without reference to the number of people in the class. *Briseno v. Conagra Foods, Inc*., 844 F.3d 1121, 1132 (9th Cir. 2017). In such cases, "'the identity of particular class members does not implicate the defendant's due process interest at all' because 'the addition or subtraction of individual class members affects neither the defendant's liability nor the total amount of damages it owes to the class." *Id.* (quoting *Mullins*, 795 F.3d at 670). Here, by contrast, determining who **might** have a BIPA claim and calculating or estimating aggregate class damages is impossible because the number of class members with claims is unknown and the potential liability could not be computed with reference to the number of class members in any event. Amazon's potential BIPA liability depends on how many Illinois residents are in each photo and which photos were uploaded while the user was located in Illinois (*see infra*, Section II.A). Plaintiffs' inability to identify class members coupled with the impropriety of using estimated aggregate damages, and the plethora of individualized issues, make this class unmanageable and therefore not superior.

## B. This Case Does Not Involve Potential "Small Recoveries" Justifying a Class.

"[T]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit Corp*., 109 F.3d 338, 344 (7th Cir. 1997)). This policy simply is not implicated here. ████████████████████████████████████████

████████████████████████████████████████████████

---

[4] *Abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co*., 553 U.S. 639 (2008).



And because there is no upper limit to damages under Plaintiffs' theory, persons whose faces appear ████████████████ BIPA also enables plaintiffs to recover attorneys' fees and litigation costs like expert fees. 740 ILCS 14/15.

When large individual damages and attorneys' fees are recoverable, courts find that superiority is not satisfied. *See, e.g.*, *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 577-78 (7th Cir. 2008) (denying certification where the statutory remedy "is not the sort of remedy that would not otherwise be sought unless the class-action mechanism were available"); *Hyderi v. Wash. Mut. Bank, FA*, 235 F.R.D. 390, 401 (N.D. Ill. 2006) (holding that the availability of statutory damages of just $1,000, along with attorneys' fees and costs, "provides substantial incentives to bring meritorious individual suits"). This is especially so where, like here, there is no actual injury. *In re TransUnion Corp. Privacy Litig.*, 211 F.R.D. 328, 351 (N.D. Ill. 2002) (denying certification and raising due process concerns where a class sought $19 billion in statutory damages "that has little relation to the harm actually suffered by the class").

The Court should not follow *Svoboda v. Amazon.com, Inc.*, 2024 WL 1363718 (N.D. Ill. 2024). In rejecting Amazon's argument that high-value individual claims militate against class certification, *id.* at *12, the court in *Svoboda* mistook the holding of *Murray v. GMAC Mortg.*

*Corp.*, 434 F.3d 948 (7th Cir. 2006). *Murray* held that a district court should not refuse to certify a class simply because doing so would result in massive ***aggregate*** liability. *Id.* at 953-54. *Murray* was a case where each class member could recover no more than $1,000, a sum the Seventh Circuit held was "too slight to support individual suits"; damages were substantial in the aggregate only because of the number of persons in the nationwide class. *Id.* at 953. This case is different. ██

████████████████████████████████████████████████████████

████████████████████████████████████ and as the *Murray* court stated, in such cases it is "wise to reject class treatment altogether." *Id.* Indeed, Plaintiffs cite no case where a court has afforded class treatment with such large individual claims. Doing so would not only be unprecedented, but also contrary to *Murray* and countless other cases addressing superiority.

███████████████████████████████████████████████████████

████████████████████████████████ The other "pending litigation" factor in the superiority analysis promotes "judicial economy and reduc[es] the possibility of multiple lawsuits" by cautioning courts against certifying classes when multiple other cases are pending. *Zinser v. Accufix*, 253 F.3d 1180, 1191 (9th Cir. 2001) (cleaned up). The "pending litigation" factor is not an excuse for a court to aggregate large claims that can be pursued individually or infer that class members lack adequate incentive to their litigate their own high-value claims. The absence of other cases is unsurprising given that class members enjoy the image recognition feature they voluntarily enabled and may not feel they have anything to sue about. They may also believe—██████████

████████████████████████ that Amazon disclosed it collects biometrics.

## II.  INDIVIDUALIZED ISSUES WOULD PREDOMINATE.

### A.  Whether Each Photo Was Uploaded in Illinois Is an Individualized Issue.

BIPA's reach is limited to conduct that occurred "primarily and substantially" in Illinois. *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1100-01 (N.D. Ill. 2017) (citing *Avery v. State Farm*

*Mut. Auto. Ins. Co*., 835 N.E.2d 801, 854 (Ill. 2005)). This is a fact-intensive inquiry that depends on the totality of the circumstances. *Id.* at 1101. That a plaintiff lives in Illinois is insufficient. *See Campana v. Nuance Commc'ns*, 2024 WL 2809838, at *3 (N.D. Ill 2024) ("claim of Illinois residency" is insufficient to establish that BIPA applies); *McGoveran v. Amazon Web Servs.*, 2021 WL 4502089, at *3 (D. Del. 2021) ("Plaintiffs' residency, standing alone, is not sufficient to establish that the alleged conduct occurred 'primarily and substantially' in Illinois"). While "there is no single formula or bright-line test for determining whether a transaction occurs within this state," *Rivera*, 238 F. Supp. 3d at 1101, at the very least, the conduct that allegedly violates BIPA must have occurred in Illinois. *See, e.g.*, *Vance v. Microsoft Corp*., 2022 WL 9983979, at *7 (W.D. Wash. 2022) (granting summary judgment where alleged facial scans did not occur in Illinois).

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████ Even if Illinois residency could be established for each class member (an impossible task), that would not show where each photo was uploaded. People often take and/or upload photos while outside of their home state. *See Wallrich v. Samsung Elecs., Inc*., 2023 WL 5934842, at *6 (N.D. Ill. 2023) (taking "judicial notice of today's norm that smartphone users use their smartphone where they live and travel"); *see also, e.g.*, Daley Rep. ¶¶ 69-70, 73. Establishing where each photo was uploaded requires individual inquiries.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████



Adding another individualized issue, Auto-Save users can choose to upload photos using cellular or Wi-Fi access. *Id*. ¶ 10. For example, for those users who were recently active with Amazon Photos, ███████████████████████████ That means if an Illinois resident has cellular uploads enabled and takes a photo on a lake in Michigan, the photo will upload immediately and an embedding cannot even arguably have been generated in Illinois. If the user does not have cellular uploads enabled, the photo will not be uploaded until the user gains access to a Wi-Fi network—perhaps at her beach house in Michigan, or maybe at her home in Illinois— far from the location where the picture was taken. The analysis is different in each scenario, and users often have no idea where they were when their device connected to a cell tower or Wi-Fi.

Consider another example—a Notre Dame undergraduate student whose legal residence is his childhood home in Illinois. The student visits the University of Chicago Law School and takes a selfie during his campus tour. Perhaps the student does not upload the photo to his Amazon Photos account, for which he has enabled image recognition, until he is back in Indiana. Perhaps he insists he uploaded the photo while visiting his parents in Illinois. Or perhaps he simply does not recall where he was located when he uploaded the photo when asked about it several years later. Determining whether BIPA applies in any of these scenarios would require individualized inquiries, and that's for just a single photo. Imagine trying to do this ████████ times.

In all instances, individualized evidence and fact-finding will be necessary to avoid applying BIPA extraterritorially. *See, e.g.*, Daley Rep. ¶ 36. This threshold determination of whether BIPA even applies must be made ***for every photo*** about which ***each plaintiff*** asserts a BIPA a claim. Establishing both Illinois residency ***and*** BIPA violations occurring "primarily and substantially" in Illinois—for each of the more than ███████ photos potentially at issue—will require innumerable mini-trials about each photo and predominate over any common questions.

The class certification decision in *In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 540 (N.D. Cal. 2018), is inapposite yet still demonstrates why this case should not be certified. Critically, *Facebook* was decided before the Illinois Supreme Court held, in *Cothron v. White Castle Sys., Inc.*, 216 N.E.3d 918 (Ill. 2023), that a separate BIPA claim for statutory damages "accrues for each scan or transmission of biometric information." *Id*. at 928. Litigating before *Cothron*, the *Facebook* plaintiffs sought statutory damages of $1,000 to $5,000 ***per class member***. *See In re Facebook Biometric Info. Priv. Litig.*, No. 3:15-cv-03747, ECF No. 255, at 17 (N.D. Cal., filed Dec. 8, 2017). Litigating post-*Cothron*, Plaintiffs here seek statutory damages of up to $5,000 ***per embedding***. Thus, a photo-by-photo, face-by-face analysis was unnecessary in *Facebook* because there was a single claim asserted for each class member, and the plaintiffs needed only show one photo that was uploaded from Illinois for BIPA to apply to that one claim. Here, by contrast, each embedding may give rise to a separate claim and thus a photo-by-photo analysis is necessary to determine whether BIPA applies with respect to each embedding.

Moreover, the extraterritoriality question in *Facebook* was significantly different than the one posed here. In that case, the court rejected Facebook's argument that the location of Facebook's servers (outside Illinois) was the ***only*** relevant factor to the extraterritoriality analysis. *Facebook*, 326 F.R.D. at 547. That is a far cry from the inquiry here—i.e., the location of each

19

user's photo uploads—which will necessarily vary photo-by-photo.[5] Insofar as *Facebook* is read to hold that a plaintiff's Illinois residency is sufficient to avoid extraterritoriality problems, it is an outlier and against the weight of contrary BIPA decisions. *See Campana*, 2024 WL 2809838, at *3; *McGoveran*, 2021 WL 4502089, at *3; *Vance*, 2022 WL 9983979, at *7. And for good reason: the collection of biometric identifiers from a person outside Illinois cannot be said to occur "primarily and substantially" in Illinois merely because that person may return to Illinois in the future. *See Rivera*, 238 F. Supp. 3d at 1100.

**B.    Other Individualized Issues Also Predominate.**

**1.    Whether Each Embedding is Sufficient to Qualify as a Unique Biometric Identifier is an Individualized Issue.**

By its text and purpose, BIPA protects data that is biologically unique to an individual, such that it can be used to identify them. ███████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████

This highly factual, technical individualized assessment would overwhelm common questions.

BIPA defines "biometric identifier" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. BIPA does not define "scan of… face geometry," but by the interpretative principle *noscitur a sociis*, "scan … of face geometry" must be interpreted

---

[5] Moreover, unlike in this case, Facebook had "collected a wealth of data on its users, including self-reported residency and IP addresses." *Facebook*, 326 F.R.D. at 548. ████████████████████████████
███████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████

similar to the other terms of the same list. *See, e.g.*, *Dynak v. Bd. of Educ.*, 164 N.E.3d 1226, 1232-33 (Ill. 2020) (2020). Those other terms—fingerprint, iris scan, retina scan—share common attributes: they are biologically unique and allow identification of an individual against the general public. *See Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 515 (N.D. Ill. 2022) (interpreting "biometric identifier" as "a unique personal feature that can be used to identify a person"); *Martell v. X Corp.*, 2024 WL 3011353, at *3 (N.D. Ill. 2024) (if BIPA applies "to any retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry without those items actually identifying an individual, it would contravene the very purpose of BIPA") (granting motion to dismiss); *Zellmer v. Meta Platforms, Inc.*, 2024 WL 3016946, at *5 (9th Cir. 2024) ("[S]cans of face geometry fall within BIPA's list, but are not covered by BIPA if they cannot identify a person.").

Statutory context confirms this plain-language interpretation. BIPA defines "confidential and sensitive information" as "personal information that ***can be used to uniquely identify an individual or an individual's account or property***," such as genetic information or a social security number. 740 ILCS 14/10 (emphasis added). BIPA requires private entities to maintain "biometric identifiers and biometric information" in the same way they maintain "other confidential and sensitive information." 740 ILCS 14/15(e)(2). A biometric identifier is thus a form of "confidential and sensitive information"—"personal information that can be used to identify an individual." 740 ILCS 14/10. BIPA's codified purpose leads to the same conclusion; it was intended to regulate information that is "biologically unique to the individual." 740 ILCS 14/5(c). Thus, statutory text, context, and purpose all show that a face scan cannot be a "scan of face geometry" under BIPA unless the information captured is biologically unique and thus could identify an individual.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

Thus, this is not a case, like some BIPA fingerprint cases, where there is no meaningful dispute that the technology collects a biometric identifier. To be clear, Amazon contends that image recognition is not a "scan of . . . face geometry" and therefore is not a biometric identifier under BIPA as a matter of law—an argument Amazon will pursue on summary judgment. For class certification, however, the crucial point is that Plaintiffs cannot prove on a classwide basis that Amazon **did** capture biologically unique identifiers. ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████ is "biologically unique" cannot be resolved with common proof, even accepting hypothetically that Plaintiffs' theories are otherwise viable.



### 2. Whether Each Class Member Provided Informed Consent is an Individualized Issue.

BIPA Section 15(b) requires a "written release" to collect biometric data, defined as "informed written consent." 740 ILCS 14/15(b)(3); 740 ILCS 14/10. Here, accountholders objectively consented in writing when they opted-in to using image recognition after agreeing in writing to Amazon Photos' TOUs, and "important legal information" which informed them that:

- "Image recognition features are disabled initially for Illinois residents because an Illinois state law may require the informed written consent from an Illinois resident before performing image recognition on photos that include his or her face"; and

- "By enabling image recognition features for your account, you understand that image recognition analysis will be performed on the photos stored in your account."

While the evidence supports that the disclosures are clear and satisfy BIPA, at the very least, Plaintiffs cannot prove, by common evidence, lack of consent for each class member.

Contrary to Plaintiffs' telling, ███████████████████████████████████████ ███████████████████████████████████████████████ In that motion-to-dismiss ruling, the Court limited its consideration to disclosures mentioned or incorporated by reference in the complaint, without analyzing Amazon's Privacy Policy and File Retention Policy. *Hogan v. Amazon.com, Inc.*, 2022 WL 952763, at *2-3 (N.D. Ill. 2022). Also, the Court analyzed Amazon's disclosures in light of Plaintiffs' allegation that Amazon used "biometric data" from Amazon

Photos to train another Amazon product, Rekognition, that involves facial recognition. *Id*., at *7. Discovery proved that allegation false, and Plaintiffs have rightly abandoned it.

Perhaps most importantly, the Court's conclusion that "[t]he statement in the TOUs that Amazon retains data about the faces is not clear enough to notify a party that Amazon is collecting a biometric identifier," *id*., was made under the liberal Rule 12 standard and without the benefit of fact development. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Courts commonly consider survey evidence like this in analyzing how a reasonable consumer would understand contested language. *See, e.g.*, *Weaver v. Champion Petfoods*, 3 F.4th 927, 934-35 (7th Cir. 2021) (consumer survey evidence is admissible—and may even be required—to show whether a disclosure is misleading to a reasonable customer). And contrary to Plaintiffs' view, the Court did not hold that Amazon must use the word "biometrics" to satisfy BIPA's notice and consent requirements. *See Santana v. Take-Two Interactive Software, Inc*., 717 F. App'x 12, 15-16 (2d Cir. 2017) (rejecting argument that a BIPA disclosure must parrot the statute's language).

But even if the Court were to conclude this evidence does not establish that Amazon's disclosures were objectively sufficient, whether a consumer had ***actual knowledge*** of the issues such that consent was informed is an individualized issue, unsuitable for common proof. BIPA does not define "informed consent." The concept was developed primarily in the medical context, where courts recognize that informed consent depends on a patient's actual knowledge.

*Canterbury v. Spense*, 464 F.2d 772, 788 (D.C. Cir. 1972) (The physician bears "no responsibility for discussion of hazards the patient has already discovered."). A class cannot be certified if the fact of consent must be determined "by reference to the characteristics of the individual prospective class members." *G.M. Sign, Inc. v. Brink's Mfg. Co*., 2011 WL 248511, at \*10 (N.D. Ill. 2011).

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████

### 3. Equitable Defenses Raise Individualized Issues.

Rule 23(b)(3)'s predominance requirement applies not only to the elements of a claim but also to affirmative defenses. *Gorss Motels, Inc. v. Brigadoon Fitness, Inc*., 29 F.4th 839, 845 (7th Cir. 2022). A class cannot be certified when "there is no generalized proof that can be used to

resolve [an affirmative defense] on a class wide basis." *Id.* Amazon asserts affirmative defenses of waiver and ratification, among others.[6] ECF No. 106 at 31-35.

These are valid affirmative defenses. The Court should not follow erroneous conclusions of two other courts that BIPA abrogates common-law defenses. *See Snider v. Heartland Beef, Inc.*, 479 F. Supp. 3d 762, 772 (C.D. Ill. 2020); *Brandenberg v. Meridian Senior Living, LLC*, 564 F. Supp. 3d 627, 635 (C.D. Ill. 2021). It is well-established that common law defenses remain unless ***expressly*** abrogated by statute. *Carle Found. v. Dep't of Revenue*, 917 N.E.2d 1136, 1146 (Ill. App. Ct. 2009). Nothing in BIPA expressly abrogates common law defenses like waiver or ratification. That would turn BIPA, which requires a negligent, reckless, or willful violation, *see* 740 ILCS 14/20, into a strict liability statute.

Ms. Hogan's own experience illustrates that individualized affirmative defense issues will predominate. Ms. Hogan's conduct readily satisfies the elements of at least the defenses of waiver and ratification. ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████ Rather, she now claims $5,000 in statutory damages for every photo she uploaded after she turned it on and after she sued. This behavior justifies a finding of waiver of her claims and a conclusion that she consented to image recognition for her photos. *See Anderson*, 878 F. Supp. 2d

---

[6] Waiver is the voluntary relinquishment of a known right and may occur "expressly or by conduct inconsistent with an intent to enforce that right." *Anderson v. Holy See*, 878 F. Supp. 2d 923, 933 (N.D. Ill. 2012). Ratification is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 745 (N.D. Ill. 2014). Ratification may be shown by "(a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." *Id.*

at 933; *Toney*, 75 F. Supp. 3d at 745. Some of the putative class would have, like Ms. Hogan, been fully informed about image recognition and chosen to continue using its benefits, which requires an individualized adjudication of whether their claims are likewise barred.

### 4. Determining Discretionary Damages Raises Individualized Issues.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████ Not so. Damages under BIPA are "discretionary rather than mandatory." *Cothron*, 216 N.E.2d at 929. In awarding damages, the jury may consider "the magnitude of plaintiff's losses" and "the circumstances of the violation." 7th Cir. Pattern Jury Instruction 12.8.4. Consistent with *Cothron*, the jury may decide to award a class member any amount of damages up to the statutory maximum, taking into account their particular facts and circumstances.

Unlike many BIPA cases, this is not a case where use of biometric technology was a condition of employment, or where the frequency and nature of use was similar across the class. *See, e.g.*, *Tapia-Rendon v. United Tape & Finishing Co.*, 2023 WL 5228178, at *6 (N.D. Ill. 2023) (certifying class of biometric timeclock users where "there is a reasonable likelihood a standardized per-scan [damages] will almost certainly be established and applied consistently across the class"). Issues related to notice, consent, and each class member's understanding of how the technology functions will vary. Again, Ms. Hogan's knowing use of image recognition to manufacture a claim is illustrative. Under *Cothron*'s discretionary damages regime, the jury is entitled to consider those circumstances when deciding whether and to what extent Ms. Hogan and her children are entitled to the up-to-$5,000 they request for every scanned image of their faces.[7]

---

[7] The Illinois House of Representatives and Senate have passed a bill setting out proposed amendments to BIPA. If enacted, the amendment would limit the amount of statutory damages available per claimant.

The jury also is entitled to consider whether a class member who, for example, reviewed the TOUs but had an honest misunderstanding of what data the image recognition feature would collect should be awarded the same damages as Ms. Hogan who intentionally created and then increased her claims. In assessing appropriate damages, jurors also should be able to consider the benefits a particular class member derived from image recognition. ███████████████

████████████████████████████████████████████████████████

██████████████████████████████ *Dukes*, 564 U.S. at 367 (Wal-Mart had "right to raise any individual affirmative defenses it may have" and that "a class cannot be certified on the premise that Wal-Mart will not be entitled to litigate its statutory defenses to individual claims").

████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████ To ignore such differences in favor of awarding damages in equal amounts to each and every class member would also mean ignoring *Cothron*'s clear holding that BIPA damages are discretionary.

The Supreme Court has made clear that a plaintiff seeking to certify a Rule 23(b)(3) class must demonstrate that "damages are ***capable*** of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (emphasis added). Where, as here, discretionary damages are necessarily variable by class member, failure to "present[]" a "methodology" means Plaintiffs "cannot show Rule 23(b)(3) predominance: Questions of individual damage calculations will inevitably overwhelm questions common to the class." *Id.*

### III.    PLAINTIFFS FAIL TO PROVE ADEQUACY OR TYPICALITY.

Plaintiffs fail to prove that their claims are typical of the class claims and that they are adequate representatives. Typicality and adequacy fail when a plaintiff's claims are subject to unique defenses. *Beaton v. Speedy PC Software*, 907 F.3d 1018, 1027 (7th Cir. 2018); *see also, e.g.*, *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (typicality lacking where proposed class included people who were not deceived). "[T]he court must be satisfied that the plaintiff will keep the interests of the entire class at the forefront." *Conrad v. Boiron, Inc.*, 869 F.3d 536, 539 (7th Cir 2017).

As discussed, Plaintiffs' claims differ from the claims of putative class members in important ways, including  These facts, atypical of other class members, bear on both liability and damages. *See Wiley v. Am. Fin. Network, Inc.*, 2023 WL 4681538, *3 (C.D. Cal. 2023) (denying certification where a putative plaintiff intentionally created a claim). These issues all present risks that Plaintiffs will not "keep the interests of the entire class at the forefront." *Conrad*, 869 F.3d at 539.

## IV. THE COURT SHOULD NOT CERTIFY A CLASS UNDER RULE 23(B)(2).

███████████████████████████████████████████████████████████

████████████████████████████ A Rule 23(b)(2) class need not satisfy the predominance and superiority requirements, but Plaintiffs fail even to meet Rule 23(a)'s more-lenient standards.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████ This does not satisfy Rule 23(a)(2) because there are no common issues: as to the first request, BIPA contains no freestanding requirement to "delete" biometric data. The requirement is found in Section 15(a) (not at issue in this case) and requires data to be deleted "when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." Even if Plaintiffs could seek this relief under Section 15(b), which they cannot, when (if ever) a user stopped using Amazon's services will vary from class member to class member. For the second injunctive relief request, there is no live dispute because Amazon is not collecting embeddings for Illinois accounts, so injunctive relief is unnecessary. Image recognition was made unavailable in Illinois more than 16 months ago, in January 2023. *See supra* at n.1. The third request is inappropriate because it is an overbroad "obey the law" injunction of the kind courts regularly reject. *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 842-43 (7th Cir. 2013).

Plaintiffs' proposed Rule 23(b)(2) class identifies no common issues, let alone questions that would "generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 351. Plaintiffs' request to certify a Rule 23(b)(2) class should be denied.

## CONCLUSION

The Court should deny Plaintiffs' Motion for Class Certification.

Date: June 17, 2024

MORGAN, LEWIS & BOCKIUS LLP

/s/ *Elizabeth B. Herrington*

Elizabeth B. Herrington
Gregory T. Fouts
Alborz Hassani
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
T: (312) 324-1445
F: (312) 324-1001
beth.herrington@morganlewis.com
gregory.fouts@morganlewis.com
alborz.hassani@morganlewis.com

J. Warren Rissier (*pro hac vice*)
300 South Grand Avenue, Twenty-Second Floor
Los Angeles, CA 90071-3132
T: (213) 680-6860
F: (213) 612-2501
warren.rissier@morganlewis.com

*Counsel for Defendant Amazon.com, Inc.*