**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ANGELA HOGAN and B.H., a minor, by and through his guardian ANGELA HOGAN, individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

AMAZON.COM, INC.,

*Defendant*.

Case No. 1:21-cv-03169

Honorable John J. Tharp, Jr.

**PUBLIC REDEACTED VERSION**

**DEFENDANT AMAZON.COM, INC.'S OPPOSITION TO**
**PLAINTIFFS' MOTION TO EXCLUDE EVIDENCE AND EXPERT OPINIONS**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. LEGAL STANDARD ..... 2

III. ARGUMENT ..... 3

A. Amazon Appropriately Filed Declarations to Oppose Class Certification. ..... 3

1. Calargun Properly Explains Hogan Enabled Image Recognition. ..... 4

2. Yilmaz Properly Provides Data About Amazon Photos Accounts. ..... 6

B. Amazon Appropriately Filed Expert Reports to Oppose Class Certification. ..... 8

1. The Expert Reports Were Timely Disclosed. ..... 8

2. Plaintiffs Object to Only a Fraction of What the Experts Considered. ..... 8

3. Plaintiffs Recently Put Amazon's Data Security at Issue. ..... 11

4. Expert Witnesses Are Allowed to Conduct Interviews. ..... 12

5. Siegel Appropriately Considered Amazon's Policies and Procedures. ..... 13

C. In Any Event, the Extreme Sanction of Exclusion Is Unwarranted ..... 14

IV. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bellas v. Orthofix, Inc.*,
2016 WL 5848916 (N.D. Ill. Oct. 6, 2016)....8

*Collins v. Illinois*,
554 F.3d 693 (7th Cir. 2008)....14

*David v. Caterpillar, Inc.*,
324 F.3d 851 (7th Cir. 2003)....3

*Doe 1 v. City of Chicago*,
2019 WL 5290899 (N.D. Ill. Oct. 18, 2019)....15

*EMC Corp. v. Pure Storage, Inc.*,
154 F. Supp. 3d 81 (D. Del. 2016)....8

*Gaspar v. DS Waters of Am.*,
2013 WL 2355994 (N.D. Ill. May 22, 2013)....12

*Green v. Kubota Tractor Corp.*,
2012 WL 1416465 (N.D. Ill. Apr. 24, 2012)....14

*Heller Fin. Leasing, Inc. v. Gordon*,
2006 WL 1650339 (N.D. Ill. June 13, 2006)....14

*In Re Lamictal Direct Purchaser Antitrust Litig.*,
2018 WL 11413414 (D. N.J. Sept. 20, 2018)....12

*Inline Connection Corp. v. AOL Time Warner Inc.*,
470 F. Supp. 2d 435 (D. Del. 2007)....12

*Intel Corp. v. Future Link Sys., LLC*,
2017 WL 2482881 (D. Del. June 1, 2017)....12

*James v. Hyatt Regency Chicago*,
707 F.3d 775 (7th Cir. 2013)....14

*LiiON, LLC v. Vertiv Group Corp.*,
2020 WL 6894668 (N.D. Ill. Nov. 24, 2020)....13

*Munoz v. InGenesis STGi Partners, LLC*,
2015 WL 13559891 (S.D. Cal. Dec. 23, 2015)....7

*Pogorzelska v. VanderCook Coll. of Music*,
2023 WL 3819025 (N.D. Ill. June 5, 2023) .......... 12

*PSN Illinois, LLC v. Abbott Labs.*,
2012 WL 5381278 (N.D. Ill. Oct. 31, 2012) .......... 12

*Santiago v. Franklin*,
2021 WL 929100 (N.D. Ill. Mar. 11, 2021) .......... 15

*Sherrod v. Lingle*,
223 F.3d 605 (7th Cir. 2000) .......... 3

*Uddin v. RadioShack Corp.*,
2012 WL 13054701 (C.D. Cal. July 2, 2012) .......... 15

*Weiland v. Linear Const., Ltd.*,
2002 WL 31307622 (N.D. Ill. Oct. 15, 2002) .......... 3

*Wiley v. Am. Fin. Network, Inc.*,
2023 WL 4681538 (C.D. Cal. 2023) .......... 4

*Williamson v. S.A. Gear Co., Inc.*,
2018 WL 1556281 (S.D. Ill. Mar. 29, 2018) .......... 3

*Wilson v. Kiewit Pac. Co.*,
2010 WL 5059522 (N.D. Cal. Dec. 6, 2010) .......... 7, 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 .......... 2, 3, 7

Fed. R. Civ. P. 34 .......... 7

Fed. R. Civ. P. 37 .......... 2

Paul M. Lisnek & Michael J. Kaufman, *Depositions: Procedure, Strategy & Technique* § 11:12 (3d ed. 2023) .......... 3

## I. INTRODUCTION

Amazon timely disclosed and appropriately relies on the evidence that Plaintiffs now improperly move to exclude. This evidence undercuts Plaintiffs' request for class certification—but, despite Plaintiffs' wishful thinking, that is no legitimate reason to exclude the evidence. This Court's orders and basic civil procedure provide Amazon the opportunity to submit expert reports and evidence in opposition to Plaintiffs' class certification request and accompanying expert reports. The Court should deny Plaintiffs' motion to exclude for three reasons.

First, Amazon timely disclosed all the evidence in compliance with this Court's scheduling orders. Amazon's opposition to the motion for class certification and "responsive expert reports addressing class certification and merits issues" were due on June 17, 2024—when Amazon filed them. ECF 138. Amazon provided Plaintiffs with voluminous evidence before the close of fact discovery. Then, when Plaintiffs revised their class definitions and opened new issues not otherwise in this case via their motion for class certification and expert reports, Amazon timely responded to those new issues with responsive expert reports and rebuttal evidence, as one would do in the normal course. Because Plaintiffs opened new issues, Amazon responded with evidence not previously responsive to Plaintiffs' discovery requests or apparently relevant to this action. Amazon agreed to Plaintiffs' request for a schedule extension to facilitate their reply expert reports, depositions of Amazon's experts, and their class certification reply brief. There is no reasonable argument that Plaintiffs have been prejudiced by Amazon's timely disclosures.

Second, even if any evidence was untimely (it was not), Amazon's actions were substantially justified and harmless. Plaintiffs' recent filings invited the very evidence they now seek to exclude. With the agreed-on extension, Plaintiffs had two-and-a-half months to conduct expert discovery and prepare their reply. Moreover, Plaintiffs are still conducting fact discovery

in the parallel state court case, and this Court ordered that such evidence can be used in this case (and vice versa). Key here, there is no plausible argument that Amazon's evidence will surprise or disrupt trial; no trial has been set, and any motions for summary judgment are not due for months.

Third, in stark contrast with Plaintiffs' suggestion that exclusion is "automatic," exclusion is strongly disfavored, even in the absence of substantial justification and harmlessness. Were any remedy warranted, Plaintiffs could be provided additional time to conduct discovery. Amazon, however, already agreed to the full amount of additional time and depositions that Plaintiffs requested. Amazon also requested that Plaintiffs advise if there was anything else they wanted—short of the extreme remedy of exclusion—to avoid Plaintiffs burdening the Court with a disfavored and meritless motion to exclude. Plaintiffs, however, never asked for any other accommodation. Thus, Plaintiffs' motion is a transparent attempt to exclude evidence merely because it is unfavorable to their flawed theory of the case—rather than a proper use of Rule 37 to right some legitimate wrong through a narrowly tailored remedy.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 37, a party that "fails to provide information or identify a witness as required by Rule 26(a) or (e) . . . is not allowed to use that information or witness to supply evidence . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Plaintiffs bear the burden to establish that exclusion is warranted under Rule 26(a) or (e), and they fail to meet that burden here.

Advisory Committee Notes to Rule 37 explain that "[t]he fundamental purpose of Rule 37 is to ensure that the merits of the case can be addressed at trial without any party suffering prejudice as a result of nonfeasance or malfeasance during discovery," not to serve as some technical bar or trap to preclude relevant evidence. Thus, any untimely disclosure must be ***both*** "unjustified and

harmful in order to warrant exclusion of the evidence." *Weiland v. Linear Const., Ltd.,* 2002 WL 31307622, at *2 (N.D. Ill. Oct. 15, 2002). Otherwise, it is error to preclude a party from relying on late-disclosed evidence. *See Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000) (district court abused its discretion by excluding experts without a showing of harm from discovery violation).

The District Court has "broad discretion" to determine whether a Rule 26 violation is substantially justified or harmless. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). "[T]he following factors should guide the district court's discretion: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Id*. All of these factors weigh against Plaintiffs' motion.

## III. ARGUMENT

### A. Amazon Appropriately Filed Declarations to Oppose Class Certification.

While Plaintiffs themselves submitted a declaration in support of their motion for class certification (ECF 128-1), Plaintiffs now argue that Amazon should not have submitted declarations from Bahri Yilmaz and Canku Calargun in opposition. However, courts routinely consider opposition declarations when deciding whether to certify a class. *See, e.g., Williamson v. S.A. Gear Co., Inc.*, 2018 WL 1556281, at *5-6 (S.D. Ill. Mar. 29, 2018) (denying motion to exclude declarations submitted in opposition to class certification).

Both Yilmaz and Calargun were listed on Amazon's Rule 26 disclosures and deposed by Plaintiffs. Amazon was not obligated to conduct direct examinations at the depositions in follow up to Plaintiffs' questioning. "Where an examiner fails, for whatever reason, to gather the entire story from the deponent, such tactical error need not be corrected by the protecting attorney … any favorable or additional information needed from a client may be obtained through affidavit." Paul

M. Lisnek & Michael J. Kaufman, *Depositions: Procedure, Strategy & Technique* § 11:12 (3d ed. 2023). Accordingly, the declarations submitted in support of Amazon's opposition to class certification are appropriate, as discussed in more detail below.

**1. Calargun Properly Explains Hogan Enabled Image Recognition.**

Plaintiffs ask this Court to strike Calargun's declaration because it demonstrates that Plaintiff Angela Hogan manufactured her BIPA claim in coordination with Plaintiffs' counsel. But that is not an appropriate ground to strike.

Although Plaintiffs move to strike Calargun's declaration entirely, Plaintiffs' motion substantively addresses only a small portion of his declaration. Plaintiffs take issue with Calargun's explanation that Plaintiff Angela Hogan enabled image recognition on April 29, 2021. *See* ECF 141-12 ¶ 10. Based on this fact, Amazon's opposition to class certification explains that Hogan enabled image recognition so that she could bring this lawsuit. *See* ECF 141 at 7; *see also Wiley v. Am. Fin. Network, Inc.*, 2023 WL 4681538, at *3 (C.D. Cal. 2023) (denying certification where a putative plaintiff intentionally created a claim). Hogan testified that, just two days before enabling image recognition (i.e., on April 27, 2021), she responded to a Facebook solicitation from her lawyers, who were seeking a plaintiff for this case. *See* ECF 141-8 at 124:3-129:11. Hogan then enabled image recognition on April 29, 2021 and filed this lawsuit two weeks later. *See* ECF 1-1 (Plaintiffs initially filed complaint in Illinois state court on May 12, 2021).

On May 19, 2023—long before fact discovery closed—Amazon produced its business records showing that Hogan enabled image recognition on April 29, 2021. These are the same records attached to Calargun's declaration as Exhibits C and D (ECF 141-15; ECF 141-16). This timely evidence is consistent with Plaintiffs' own Complaint, which alleges that Hogan first "began using Amazon Photos" in January 2021 after she gave her daughter "an Amazon Fire tablet

as a Christmas gift in December 2020" and that "in January 2021 both Plaintiff Angela Hogan and her daughter began using Amazon Photos." ECF 23 ¶¶ 69-70. These allegations are consistent with Amazon records showing the first photo was uploaded to Hogan's Amazon Photos account on January 20, 2021. *See* ECF 141-16 (timely produced on May 19, 2023); ECF 141-12 ¶ 11 ("Hogan's upload history indicates she first uploaded a photo to her Amazon Photos account on January 20, 2021."). Further, the fact that Hogan enabled image recognition on April 29, 2021 was expressly addressed in her deposition on May 9, 2023. ECF 141-08 at 29:11-19.

Despite Hogan's own allegation that she first used Amazon Photos in January 2021, record evidence showing that her first photo was uploaded on January 20, 2021, and records showing that she enabled image recognition on April 29, 2021, Plaintiffs' counsel deceptively asked leading questions of Calargun at his February 9, 2024 deposition, absent the other documentation or context, about a document Plaintiffs' counsel claims shows that Hogan opted into image recognition on January 4, 2020—more than one year before she began using Amazon Photos. *See* ECF 156-1, Ex. 32 at 44:18-45:4. Obviously, Hogan did not and could not enable image recognition one year before she began using Amazon Photos. Yet now Plaintiffs cry foul when Calargun clarifies what Plaintiffs already knew the evidence demonstrated.

Further, even assuming Hogan *first* enabled image recognition more than a year before she began using Amazon Photos (she did not) and then turned it off, the undisputed fact—that she turned on image recognition two days after she responded to her lawyer's advertisement to be a plaintiff in this case—remains probative. That is because she consented to Amazon's "important legal information" when turning on image recognition and resulting in embeddings being created from the faces in her photos. *See* ECF 141 at 3-8. Thus, she knowingly created the alleged biometrics with full knowledge about the consequence of her actions. This is relevant to whether

Hogan gave her informed written consent such that no BIPA violation occurred, and whether Amazon can prevail in its affirmative defenses of ratification and waiver. *See id.* at 25-26. In sum, the Court should deny Plaintiffs' baseless request to strike Calargun's declaration.

**2. Yilmaz Properly Provides Data About Amazon Photos Accounts.**

Plaintiffs object to the Yilmaz declaration's evidence showing that:

[redacted]

[redacted]

[redacted]

*See* ECF 141-19 (Yilmaz Declaration). There are three independent reasons why there is no merit to Plaintiffs' argument that Amazon should have disclosed this data earlier.

First, the data responsive to Plaintiffs' discovery requests was disclosed long ago in Amazon's interrogatory responses. For example, Amazon's supplemental response to Interrogatory No. 2 (served on June 22, 2023, months before fact discovery closed), explains:

[redacted]

ECF 128-2, Ex. 20. This same information is in Yilmaz's declaration, which states:

[redacted]

ECF 141-19 ¶ 3. Thus, Amazon provided this data to Plaintiffs ***before*** fact discovery closed.

Second, Plaintiffs did not serve any discovery requests seeking the data beyond what was in Amazon's discovery responses or at least not in any requests seeking the data with reasonable particularity. *See* Fed. R. Civ. P. 34(b)(1) (requiring that items to be produced be described with "reasonable particularity"). While Plaintiffs now argue that Amazon should have produced the total number of Illinois accounts in response to their Interrogatory No. 2, Amazon's response expressly stated that it was only providing data regarding the accounts "who had the image recognition feature enabled" (the only accounts for which Plaintiffs alleged that biometrics were captured). Plaintiffs never followed up to request data regarding other accounts—i.e., those without image recognition enabled—as they should have if that is what Plaintiffs sought. In any event, the data regarding the accounts without image recognition is a tiny sliver of Yilmaz's declaration and so even if Plaintiffs' arguments had merit (they do not) they still would not justify excluding Yilmaz's declaration entirely. Key here, nearly all of Yilmaz's declaration addresses data that Plaintiffs do not even argue was covered by their discovery requests.

Third, Amazon was not required to earlier produce the data because Rule 26(A) does not impose a clairvoyance requirement. *See, e.g., Wilson v. Kiewit Pac. Co.*, 2010 WL 5059522, at *9 (N.D. Cal. Dec. 6, 2010) (overruling plaintiff's objection to new evidence in opposition to class certification because a defendant is not required to aim at "a moving target"); *Munoz v. InGenesis STGi Partners, LLC*, 2015 WL 13559891, at *4 (S.D. Cal. Dec. 23, 2015) (holding "any failure to properly disclose [evidence] pursuant to Rule 26(a) was substantially justified" given "Plaintiff altered the class definition set forth in the complaint in her motion for class certification"). Amazon did not anticipate relying on the additional data until Plaintiffs' class certification filings raised new evidence and arguments, including: (1) two new class definitions, diverging from the class

definition in the operative complaint, and filed-for-the-first-time class certification argument; and (2) Plaintiffs' new expert report by Neil Richards, wherein he speculates about supposed lack of informed consent by Amazon Photos users who are putative class members and potential purported harms to them. Thus, the data submitted with Yilmaz's declaration provides appropriate rebuttal.

### B. Amazon Appropriately Filed Expert Reports to Oppose Class Certification.

Plaintiffs also seek to strike opinions of experts Margaret Daley and Michael Siegel. "Exclusion of critical evidence, such as an expert report . . . is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 93 (D. Del. 2016) (internal citations omitted). Such an extreme sanction is unwarranted here.

#### 1. The Expert Reports Were Timely Disclosed.

Expert opinions must be disclosed "at the times and in the sequence that the court orders." *Bellas v. Orthofix, Inc.*, 2016 WL 5848916, at *1 (N.D. Ill. Oct. 6, 2016). Here, Amazon timely served Daley's and Siegel's expert reports when they were due on June 17, 2024. ECF 138 (order that "Defendant files . . . expert reports addressing class certification and merits issues" on June 17, 2024). After their expert reports were timely disclosed, Plaintiffs deposed Daley and Siegel. Amazon agreed to Plaintiffs' request for a five-week extension of time to do so. *See* ECF 147 ¶ 8. Plaintiffs were not unfairly surprised by Daley's and Siegel's opinions or prejudiced in their ability to address the contents of their reports.

#### 2. Plaintiffs Object to Only a Fraction of What the Experts Considered.

Although Plaintiffs broadly move to strike Daley's and Siegel's opinions, Plaintiffs only object to a sliver of the mountain of evidence that the experts considered. Thus, even if the at-issue sliver of evidence should have been disclosed earlier (it need not have been), the experts' opinions

should still not be stricken given their additional support to which Plaintiffs made no objection.

Plaintiffs move to strike Daley's opinions that: (1) [redacted]; and (2) [redacted] ECF 157 at 5-6. Plaintiffs argue these opinions should be stricken because Daley cites the Calargun and Yilmaz declarations in support. These declarations, however, were timely and appropriate for all the reasons discussed above. And, in any event, Daley's opinions rest on far more information. For example, in Daley's first opinion that Plaintiffs move to strike—[redacted]"—Daley explains, among many other things, the following indicating additional bases for her opinion, independent of the objected-to declarations:

> I have examined hundreds of accounts on other photography hosting platforms as part of my work in a prior BIPA case. My experience in reviewing these accounts revealed that names assigned by users to photos of people are typically only a first name, initials ("Dave" or "TJ"), or a nickname. The names are often ambiguous ("Grandma"), jokey ("Batman"), or vague ("The Squad"). For example, my husband's friend from college is known by his group of friends as "Jonny Quest," after a character in an animated television series. My husband has named this friend's photos as "Quest" in our photo storage account. None of the names provided in our photo storage account contain both the first and last name of the person depicted in the photographs and Ms. Hogan testified that she did not provide the last names to the profiles in her account.

ECF 141-21 ¶ 57; *see also* Fouts Decl. Ex. 1 (Hogan Tr. 38:5-16) (testifying she only named a few clusters and even then used only first names or "mom").

Also, for Daley's second opinion that Plaintiffs move to strike[redacted]—Plaintiffs' motion misleadingly cuts off the preceding portion of the sentence, which explains this is "demonstrated by [Daley's]

daughter's residency timeline." *Compare* ECF 141-21 ¶ 94, *with* Mot. at 6. For example, in the preceding paragraph, Daley explains her daughter "[redacted]." *See* ECF 141-21 ¶¶ 93-94. In total, Daley's report cites a total of 206 documents she relied on, only three of which (i.e., Calargun's declaration, Yilmaz's declaration, and the related spreadsheet) were served after the end of fact discovery. *See* ECF 141-21, Ex. 2 (Listing of Data and Documents Relied Upon). In other words, Plaintiffs object to less than two percent of the documents relied on by Daley. Additionally, Daley's opinions citing to Calargun's declaration are based on facts therein that were previously disclosed during depositions, including that Amazon does not know the identity of any individuals appearing in photos. *See* Fouts Decl. Ex. 2 (McLane Tr. 260:17-261:8). Daley's opinions also rest on her preexisting expertise, including thousands of investigations to identify individuals and her work as an expert witness regarding more than fifty class actions. *See* ECF 141-21 ¶¶ 6-9.

As to Siegel, Plaintiffs object to the entirety of his report, which explains why there is no merit to Plaintiffs' newly raised data-security-related arguments. In addition to his own preexisting expertise as a world-renowned cybersecurity expert, Siegel's opinions are based on:

i. Ninety-three publicly available sources (none of which Plaintiffs object to);

ii. Five laws, regulatory guides, and standards (none of which Plaintiffs object to);

iii. Eight interviews (which Plaintiffs object to);

iv. Eighteen produced documents (only five of which Plaintiffs object to); and

v. Three deposition transcripts (none of which Plaintiffs object to).

*See* ECF 141-27, Appendix B: Materials Considered. Thus, Plaintiffs object to only two of the five categories of materials that Siegel considered, not counting his substantial pre-existing expertise.

And, as to one of those categories, Plaintiffs only object to five out of the eighteen documents. Specifically, Plaintiffs object to: (1) Siegel's interviews of Amazon and AWS Personnel; and (2) five out of the eighteen documents produced in this case. Plaintiffs' objections are meritless.

### 3. Plaintiffs Recently Put Amazon's Data Security at Issue.

Plaintiffs' own recently-disclosed experts invited Siegel's rebuttal expert report. On March 22, 2024 (i.e., after fact discovery closed), Plaintiffs first disclosed their expert Neil Richards. His opinions hinge on erroneous assumptions of security risks. *See* ECF 128-2, Ex. 2 (Richard's Report) ¶ 18 (noting risk of "data breach"); *id.* ¶ 45 (opining that "data security" is a "concern for consumers," and noting "the well-documented problem of data breaches"); *id.* ¶ 99 (noting importance of "data security" and "security practices"); *id.* ¶ 100 (referencing "data security risks"); *id.* ¶ 101 (discussing risk of identity theft); *id.* ¶ 106 (opining that Amazon Photos creates a risk due to "data insecurity"). On the same date, Plaintiffs first disclosed their expert Atif Hashmi, who opines on a purported "security threat" posed by "bad actors." *See* ECF 128-2, Ex. 1 ¶ 43.

Amazon fairly expected security to be litigated in the state case—where Plaintiffs' Section 15(e) BIPA security claim is pending—but Plaintiffs then opened the barn door with their expert reports, injecting security into this case. It would be wildly unfair and prejudicial for Plaintiffs to offer errant opinions on Amazon's security and then deny Amazon the opportunity to defend itself—particularly when data security is a central tenant of Amazon's business practices that refutes the security threat opinions offered by Plaintiffs' experts. Plaintiffs' new security contentions are meritless, as Siegel's report properly demonstrates.[1]

---

[1] Plaintiffs also assert that Siegel testified "he doesn't even know who wrote the report." Mot. at 10-11. But that blatantly misrepresents his testimony. Siegel testified the report was drafted "under my direction" and "represents my opinion and only my opinions," but that he had the support of, "to the best of my knowledge," three persons he identified at the Keystone expert consulting firm who were involved in an interactive process to prepare the report. Fouts Decl. Ex. 3 (Siegel Tr. 32:8-16). He further testified he was not aware of anyone else who drafted any sections of his report. *Id.* at 32:17-22. There is nothing unusual

### 4. Expert Witnesses Are Allowed to Conduct Interviews.

Plaintiffs object to Siegel conducting interviews of Amazon and AWS personnel, which he references in his report. The identities of the individuals Siegel interviewed were disclosed to Plaintiffs before they deposed Siegel, and Plaintiffs were free to ask Siegel questions about the interviews, as they did. There is nothing improper about experts incorporating information they obtain from interviews in forming their opinions. *See, e.g., PSN Illinois, LLC v. Abbott Labs.*, 2012 WL 5381278, at *3 (N.D. Ill. Oct. 31, 2012) (admitting opinion based on expert's interviews of defendant's employees); *Pogorzelska v. VanderCook Coll. of Music*, 2023 WL 3819025, at *13 (N.D. Ill. June 5, 2023) (holding "that [expert's] knowledge of the facts was obtained via interviews is not, without more, a basis for exclusion" because "[i]nterviews with parties are a permissible factual basis for expert testimony").

Moreover, courts routinely deny motions to strike experts' opinions based on interviews of previously undisclosed witnesses. *See, e.g., In Re Lamictal Direct Purchaser Antitrust Litig.*, 2018 WL 11413414, at *3-4 (D. N.J. Sept. 20, 2018) (denying motion to strike expert opinion based on interview of previously undisclosed witness); *Inline Connection Corp. v. AOL Time Warner Inc.*, 470 F. Supp. 2d 435, 442-43 (D. Del. 2007) (denying motion to exclude experts testimony based on interviews with unidentified individuals); *Intel Corp. v. Future Link Sys., LLC*, 2017 WL 2482881, at *5 (D. Del. June 1, 2017) (denying motion to exclude expert testimony based on interviews with undisclosed employees); *see also Gaspar v. DS Waters of Am.*, 2013 WL 2355994, at *2 (N.D. Ill. May 22, 2013) (denying motion to strike an undisclosed witness's declaration because there was no surprise or prejudice). Plaintiffs' request that this Court exclude Siegel's opinions because he conducted employee interviews is meritless.

---

or untoward about an expert working interactively with a team under his direction to prepare a report that then represents the expert's opinions "and only [his] opinions." *Id.* at 32:11-12.

### 5. Siegel Appropriately Considered Amazon's Policies and Procedures.

Plaintiffs object that Siegel considered five "Data Handling" documents produced by Amazon after the fact discovery cut-off.[2] Amazon did not previously produce these documents because they did not appear relevant until Plaintiffs' recent expert reports injected security issues into this action. Amazon previously objected in this case to Plaintiffs' requests for documents concerning data security on multiple grounds, including that Plaintiffs are litigating their 15(e) security claim in state court and security issues did not appear to be relevant here, Plaintiffs' definition of "Amazon" was unduly broad, and the documents sought were not specifically Amazon Photos' documents. Plaintiffs never challenged those objections or moved to compel. At the same time, Amazon has been producing documents regarding data security in the related state court case, including the five documents that Siegel relied on (along with many other documents requested by Plaintiffs), which Plaintiffs now argue were untimely produced, even though: (1) fact discovery is ongoing in the state court case; and (2) the Court ordered that any evidence produced in the state court case can be used in this case and vice-versa. Fouts Decl. ¶ 5; ECF 88, at 3 n.2.

In *LiiON, LLC v. Vertiv Group Corp.*, 2020 WL 6894668, at *4 (N.D. Ill. Nov. 24, 2020), the court denied a motion to strike expert opinions. There, defendants challenged the expert's reliance on never-produced tax returns from plaintiff's CEO. *Id.* The court noted that defendants had requested the documents in discovery, and plaintiffs had objected to their disclosure. *Id.* Plaintiffs' expert, however, subsequently sought to review the documents when drafting his report. *Id.* at *5. Plaintiff had no reason to anticipate the tax returns would be relevant, but upon review by its expert witness, discovered that the documents in fact were relevant. *Id.*

---

[2] Plaintiffs' own motion for class certification and their expert reports rely on documents produced after the discovery cut-off. *See, e.g.,* ECF 128 at 10 (citing AMZN-209971); ECF 128-2, Ex. 1 at 39, n.138 (citing AMZN-209581-590; AMZN-209598-607); ECF 156-01, Ex. 24 at 19 (citing AMZN-209504). What's good for the goose is good for the gander.

Similarly, here, Amazon objected to each of the RFPs that Plaintiffs point to when arguing Amazon failed to timely disclose the Data Handling documents. If Plaintiffs believed that the five Data Handling documents were relevant in this case, Plaintiffs should have moved to compel production.[3] Plaintiffs knew these documents existed, *see, e.g.,* RFP No. 2 (requesting Data Handling documents), but never challenged Amazon's objections—presumably because, before serving their expert reports, Plaintiffs (like Amazon) were litigating security issues in the state action. Further, Amazon only relied on Siegel's report and the evidence cited therein ***after*** Plaintiffs' experts opined on data security in this case. Thus, Siegel's report is appropriate rebuttal. *See Green v. Kubota Tractor Corp.*, 2012 WL 1416465, at *3 (N.D. Ill. Apr. 24, 2012) (explaining rebuttal reports "contradict, impeach, or defuse the impact of the evidence offered by an adverse party"). Plaintiffs are not allowed to inject new expert opinions falsely maligning Amazon's security and then deny Amazon the opportunity to correct the record.

### C. In Any Event, the Extreme Sanction of Exclusion Is Unwarranted.

This Court has broad discretion to determine the necessity of discovery sanctions, and the severity of those sanctions should be proportionate to the seriousness of the discovery violation, if any. *See James v. Hyatt Regency Chicago*, 707 F.3d 775, 784 (7th Cir. 2013) (noting "district courts have broad discretion in discovery matters"); *Collins v. Illinois*, 554 F.3d 693, 696 (7th Cir. 2008) ("sanction imposed must be proportionate to the circumstances").

Here, the only alleged "prejudice" Plaintiffs cite is the purported inability to conduct additional discovery. Yet, Plaintiffs identify no additional discovery they seek that they were foreclosed from conducting, nor is there any. Fact discovery is ongoing in the state court case, and

[3] Courts consider a party's lack of a motion to compel when determining whether to exclude evidence. *See, e.g.*, *Heller Fin. Leasing, Inc. v. Gordon*, 2006 WL 1650339, at *5 (N.D. Ill. June 13, 2006) (denying motion to bar testimony of expert who relied on an unproduced document when plaintiff filed no motion to compel).

the parties stipulated and the court ordered that any evidence obtained there can also be used here. Fouts Decl. ¶ 5; ECF No. 88, 3 n.2. Were the Court to deem any remedy necessary, the appropriate remedy would be more time to conduct discovery, rather than the extreme sanction of exclusion. *See, e.g., Uddin v. RadioShack Corp.*, 2012 WL 13054701, at *5 (C.D. Cal. July 2, 2012) (rejecting plaintiff's motion to strike undisclosed evidence because plaintiff could have sought to re-open discovery, but did not); *Wilson*, 2010 WL 5059522, at *10 (rejecting objections to defendants' declarants in opposition to class certification and reasoning that plaintiffs could have sought time to depose them); *Doe 1 v. City of Chicago*, 2019 WL 5290899, at *9 (N.D. Ill. Oct. 18, 2019) (holding that exclusion is "an extreme and harsh remedy" and declining to exclude evidence).

The cases that Plaintiffs cite are readily distinguishable because they involved evidence newly introduced ***on the eve of trial***. *See, e.g.*, *Santiago v. Franklin*, 2021 WL 929100, at *3 (N.D. Ill. Mar. 11, 2021) (barring testimony from witnesses first disclosed in proposed pretrial order two weeks before the start of trial). In contrast, here, no trial date has been set. Plaintiffs had ample opportunity to analyze the evidence relied on by Amazon's experts, including the opportunity to depose those experts, and fact discovery remains ongoing in the parallel state case. Plaintiffs chose to offer expert opinions on security—and so it's only fair to allow rebuttal.

Amazon requested that Plaintiffs "please let us know" if they needed additional time (or evidence) and stated that "we are willing to consider such a request." ECF 157-1, Ex. A at 13. No such request was forthcoming.

## IV. CONCLUSION

For all these reasons, the Court should deny Plaintiffs' motion.

Date: September 20, 2024

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Elizabeth B. Herrington*
Elizabeth B. Herrington
Gregory T. Fouts
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
T: (312) 324-1445
F: (312) 324-1001
beth.herrington@morganlewis.com
gregory.fouts@morganlewis.com

J. Warren Rissier (*pro hac vice*)
300 South Grand Avenue, Twenty-Second Floor
Los Angeles, CA 90071-3132
T: (213) 680-6860
F: (213) 612-2501
warren.rissier@morganlewis.com

Raechel K. Kummer (*pro hac vice*)
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
T: (202) 373-6235
F: (202) 739-3001
raechel.kummer@morganlewis.com

*Counsel for Defendant Amazon.com, Inc.*