**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANGELA HOGAN and B.H., a minor, by and through his guardian ANGELA HOGAN, individually and on behalf of all others similarly situated, | |
| *Plaintiffs*, | Case No. 1:21-cv-03169 |
| | Honorable John J. Tharp, Jr. |
| v. | |
| AMAZON.COM, INC., | **REDACTED** |
| *Defendant*. | |

**DEFENDANT'S OPPOSITION TO
<u>PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ................................................................................................... 1

II.    BACKGROUND .................................................................................................... 2

III.   LEGAL STANDARD ............................................................................................ 4

IV.    THE COURT SHOULD DENY PLAINTIFFS' MOTION ................................... 4

    A.     The Image Recognition Technology at Issue Is Not Covered by BIPA. ............... 4

        1.     The Technology Does Not Collect Scans of Face Geometry. ................... 4

        2.     The Image Recognition Data Does Not and Cannot Identify Anyone. ................................................................................................... 5

    B.     Amazon's Disclosures Complied with BIPA and Plaintiffs Consented. ............... 8

        1.     Amazon Disclosed What Was Collected. ................................................. 10

        2.     Amazon Disclosed the Purpose and Retention Period............................. 13

        3.     Amazon Obtained Plaintiffs' Informed Written Consent. ....................... 14

    C.     Plaintiffs' Claim Is Barred by Waiver and Ratification........................................ 16

    D.     Damages Are Discretionary................................................................................... 17

    E.     Non-User Class Members Are Not Each Entitled to $5,000. ............................... 18

V.     CONCLUSION....................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. C.L. Union v. Clearview AI, Inc.*,
  2021 WL 4164452 (Ill. Cir. Ct. Aug. 27, 2021) ...................................................7, 8

*Ambrosius v. Chicago Athletic Clubs, LLC*,
  203 N.E.3d 239 (Ill. App. Ct. 2021) ...................................................................16

*Anderson v. Holy See*,
  878 F. Supp. 2d 923 (N.D. Ill. 2012) ..................................................................16

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)...........................................................................................4

*Bayeg v. Admiral at the Lake*,
  244 N.E.3d 377 (Ill. App. Ct. 2024) ...................................................................18

*Brandenberg v. Meridian Senior Living, LLC*,
  564 F. Supp. 3d 627 (C.D. Ill. 2021) ..................................................................17

*Bryant v. Compass Grp. USA, Inc.*,
  958 F.3d 617 (7th Cir. 2020) ..............................................................................14

*Canterbury v. Spence*,
  464 F.2d 772 (D.C. Cir. 1972)............................................................................16

*Carle Found. v. Ill. Dep't of Revenue*,
  917 N.E.2d 1136 (Ill. App. Ct. 2009) .................................................................17

*Castelaz v. Estée Lauder Cos.*,
  2024 WL 136872 (N.D. Ill. Jan. 10, 2024) ..........................................................6

*Chessie Logistics Co. v. Krinos Holdings, Inc.*,
  867 F.3d 852 (7th Cir. 2017) ...............................................................................9

*Clarke v. Aveda Corp.*,
  704 F. Supp. 3d 863 (N.D. Ill. 2023) .............................................................5, 19

*Cothron v. White Castle Sys., Inc.*,
  2023 IL 128004 (Ill. 2023)...........................................................................17, 18

*Curran v. Bosze*,
  566 N.E.2d 1319 (Ill. 1990) ...............................................................................15

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Daichendt v. CVS Pharmacy, Inc.*,
    2022 WL 17404488 (N.D. Ill. Dec. 2, 2022) ..............................................................6

*DirecTV, Inc. v. Brown*,
    371 F.3d 814 (N.D. Ill. 2004) ............................................................................18

*In re Facebook Biometric Info. Priv. Litig.*,
    185 F. Supp. 3d 1155 (N.D. Cal. 2016) ...................................................................7

*G.T. v. Samsung Elecs. Am. Inc.*,
    2024 WL 3520026 (N.D. Ill. July 24, 2024)..................................................5, 7, 19

*Howe v. Speedway LLC*,
    2024 WL 4346631 (N.D. Ill. Sept. 29, 2024) .....................................................8, 18

*J. H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*,
    628 F.2d 994 (7th Cir. 1980) ............................................................................20

*Laseter v. ClimateGuard Design & Installation, LLC*,
    931 F. Supp. 2d 862 (N.D. Ill. 2013) ...................................................................12

*Martell v. X Corp.*,
    2024 WL 3011353 (N.D. Ill. June 13, 2024)......................................................6, 19

*Nat'l Prod. Workers Union Ins. Tr. v. Cigna Corp.*,
    665 F.3d 8972 (7th Cir. 2011) ...........................................................................16

*Oelze v. Score Sports Venture, LLC*,
    927 N.E.2d 137 (Ill. App. Ct. 2010) ....................................................................16

*Peritz v. Liberty Loan Corp.*,
    523 F.2d 349 (7th Cir. 1975) .............................................................................19

*Rogers v. BNSF Ry. Co.*,
    680 F. Supp. 3d 1027 (N.D. Ill 2023) ..................................................................18

*Santana v. Take-Two Interactive Software, Inc.*,
    717 F. App'x 12 (2d Cir. 2017) .........................................................................12

*Scott v. Harris*,
    550 U.S. 372 (2007).........................................................................................4

*Sherman v. AT&T Inc.*,
    2012 WL 1021823 (N.D. Ill. Mar. 26, 2012).........................................................16

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Snider v. Heartland Beef, Inc.*,
    479 F. Supp. 3d 762 (C.D. Ill. 2020) ......................................................................17

*Sosa v. Onfido, Inc.*,
    600 F. Supp. 3d 859 (N.D. Ill. 2022) ........................................................................7

*Tapia-Rendon v. United Tape & Finishing Co.*,
    2024 WL 406513 (N.D. Ill. Feb. 2, 2024) .........................................................18, 19

*Taylor v. R.D. Morgan & Assocs., Ltd.*,
    563 N.E.2d 1186 (Ill. App. Ct. 1990) ......................................................................15

*Toney v. Quality Res., Inc.*,
    75 F. Supp. 3d 727 (N.D. Ill. 2014) .........................................................................17

*Uncommon, LLC v. Spigen, Inc.*,
    926 F.3d 409 (7th Cir. 2019) ...................................................................................13

*United States v. Howard*,
    968 F.3d 717 (7th Cir. 2020) .....................................................................................5

*Van Jackson v. Check 'N Go of Ill., Inc.*,
    123 F. Supp. 2d 1079 (N.D. Ill. 2000) .....................................................................12

*W. Union Co. v. Tom Kula & Paymentus Grp., Inc.*,
    2017 WL 2973584 (N.D. Ill. July 12, 2017).............................................................16

*Weaver v. Champion Petfoods USA Inc.*,
    3 F.4th 927 (7th Cir. 2021) ......................................................................................13

*Zellmer v. Meta Platforms, Inc.*,
    104 F.4th 1117 (9th Cir. 2024) ............................................................................5, 19

**Statutes**

740 ILCS 14/10......................................................................................................4, 15

740 ILCS 14/15...........................................................................................................15

740 ILCS 14/15(b) .............................................................................................. *passim*

740 ILCS 14/20..................................................................................................2, 17, 18

15 U.S.C.A. § 6501.....................................................................................................15

## TABLE OF AUTHORITIES
(continued)

Page(s)

**Rules**

16 C.F.R. § 312.3 ...................................................................................................15

Fed. R. Civ. P. 12 ...................................................................................................12

Fed. R. Civ. P. 23(c)(3) .........................................................................................20

Fed. R. Civ. P. 56(a) ...............................................................................................4

**Other Authorities**

Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in
    Privacy Law*, 104 B.U. L. REV. 593, 615 (2024)....................................15

Rest. of the L., Consumer Cont., § 6 cmt. 6(d) ............................................13

I.      **INTRODUCTION**

Plaintiffs allege that Amazon Photos' image recognition feature collected biometric identifiers in the form of scans of face geometry without consent in violation of Illinois' Biometric Information Privacy Act ("BIPA") Section 15(b). The Court should deny Plaintiffs' Motion for Summary Judgment (the "Motion") for five independent reasons.

First, BIPA Section 15(b) does not regulate the image recognition technology at issue. Plaintiffs wrongly contend that Amazon collects data through a "scan of face geometry," such that the data constitutes a "biometric identifier" under BIPA. But BIPA Section 15(b) does not regulate the mere act of scanning faces in photos; it only regulates the collection of face geometry *that can identify an individual*—as many cases confirm. Amazon Photos' image recognition technology does not collect any individual's face geometry. And, even if it did, the data does not and cannot identify any individual. Thus, BIPA does not apply.

Second, even if Amazon Photos' image recognition technology did collect a biometric identifier, Amazon complied with BIPA's consent requirements. Customers with an Illinois address who wanted to use image recognition were required to voluntarily opt in, toggle-on the feature in their app settings, and consent to Amazon's disclosures. Amazon disclosed *what* was collected, using terms like "image recognition data," "facial characteristics," and "data about the faces in the photos." While Plaintiffs now argue Amazon should have used the terms "biometric" or "scan of face geometry," BIPA does not require any specific language, and a survey of hundreds of Illinois residents shows that 92% of respondents who viewed Amazon's disclosures believed that biometric data would be collected and that adding the terms urged by Plaintiffs made no statistically significant difference in respondents' beliefs. Amazon also disclosed the *purpose*, explaining the service "use[d] image recognition technology to group together photos containing

people with similar facial characteristics, and to organize and tag your photos." Amazon also disclosed the **length of term**, stating: "We retain image recognition data, including data about the faces, in the photos you store using the Services until you disable the image recognition features or your account's access to the Services is terminated." Plaintiffs' lawyers now nitpick Amazon's disclosures in hopes of securing a payday, but none of their post hoc quibbling shows a violation of BIPA, much less one that can be decided in Plaintiffs' favor on summary judgment.

Third, Plaintiffs' claim is barred by Amazon's affirmative defenses of waiver and ratification. Ms. Hogan turned on image recognition two days **after** responding to an advertisement to be a plaintiff in this case, knowing she would later claim she didn't consent, and Plaintiffs continued using image recognition (which they enjoyed) after filing this lawsuit.

Fourth, Plaintiffs insist that damages are mandatory. But the Illinois Supreme Court held the opposite last year. Even after a recent amendment, BIPA still says a prevailing party "may" be entitled to "at most, one recovery." 740 ILCS 14/20. Thus, any damages are discretionary.

Fifth, Plaintiffs request that the Court award $5,000 to each member of the uncertified "Non-User Class" because they allegedly did not consent. Plaintiff Angela Hogan's minor son, B.H.—who used the technology multiple times a week after this lawsuit was filed—is the sole proposed representative for the "Non-User Class." But Ms. Hogan consented on his behalf as his mother and legally authorized representative, which BIPA expressly allows.

For each of these five independent reasons, the Court should deny Plaintiffs' Motion.

## II.  BACKGROUND

Amazon Photos is a free, secure, online storage service for photos. ECF 194-20 ¶ 2. Amazon Photos includes an optional tool called "image recognition" to help users search and organize their own photos. *Id*. ¶ 3. Image recognition was never automatically enabled for users

with an Illinois address, including Plaintiffs, and instead was set in the "off" position until toggled "on" by the user. ASF[1] 1. When enabled, image recognition involves three steps.

First, algorithms detect images of objects and faces in photos. ECF 194-20 ¶ 5. Second, ████████████████████████████████████████████ numerical representation ████████████ ████████████████████████████████████████ Embeddings are not scans of face geometry, nor do the ███████████████████████████████████████ An embedding neither reveals ████████████ nor ████████████████████ Embeddings are meaningless outside the image recognition model that generated the embedding. ASF 5. ███████████████ ██████████████████████████████████████████████████████████ Even for the same image, ████████████████████████████████████████ ██████████████████ Embeddings are also ████████████████████████████████ objects. ASF 8. Third, after embeddings are generated, algorithms use ████████████████ ████████████████████████████████████████████████—a sophisticated ██████████████████████████████████████████████████████████████ ECF 194-20 ¶ 9.

Amazon Photos' image recognition feature only works ████████████████████████ ████████ Even within a single account, ██████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████ ASF 9. The technology does not and cannot identify an unknown person or otherwise determine or verify a person's identity. ASF 10. In short, the technology is a photo management tool—not a biometric identification system. ECF 141-20 ¶¶ 53-54.

---

[1] Defendant's Additional Statements of Fact ("ASF"), Defendant's Responses to Statements of Fact ("RSF"), and Plaintiffs' underlying Statements of Fact ("SF") are all included in Defendant's Response to Plaintiffs' Statement of Material Facts and Statement of Additional Facts, which is being concurrently filed.

### III.   <u>LEGAL STANDARD</u>

Summary judgment is only allowed "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be denied if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### IV.   <u>THE COURT SHOULD DENY PLAINTIFFS' MOTION</u>

#### A.   The Image Recognition Technology at Issue Is Not Covered by BIPA.

BIPA Section 15(b) only applies where a defendant collects a person's "biometric identifier or biometric information." 740 ILCS 14/15(b). "Biometric identifier" is defined as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry," and "biometric information" means "information … based on an individual's biometric identifier used to identify an individual." *Id*. at 14/10. Although BIPA does not define "scan of face geometry," the statute only covers "unique identifiers" that are "biologically unique to the individual" and that "once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.* at 14/5(c). BIPA excludes "photographs" from the definitions of "biometric identifier" and "biometric information." *See id.* at 14/10.

Here, BIPA does not regulate Amazon Photos' image recognition technology for two independent reasons. First, the technology does ***not*** collect scans of an individual's face geometry. Second, the technology does not and cannot identify an individual.

#### 1.   The Technology Does Not Collect Scans of Face Geometry.

Plaintiffs contend that the "embeddings" are biometric identifiers because the embeddings allegedly are generated through a process that scans face geometry in photos. *See* ECF 187 at 4-5.

But BIPA Section 15(b) does not apply merely because technology scans faces in photos. Instead, Section 15(b) only applies if a defendant "collects" a "biometric identifier." 740 ILCS 14/15(b). While the definition of "biometric identifier" includes a "scan of … face geometry," the statutory context shows this is used as a noun (i.e., a thing)—*not* a verb (i.e., an act). *See United States v. Howard*, 968 F.3d 717, 722 (7th Cir. 2020) (explaining words in a statute "must be construed in context"). Thus, Plaintiffs' focus on whether the technology scans faces in photos misses the mark. Instead, the question is whether the embeddings constitute a biometric identifier. They do not.

The embeddings are *not* scans of face geometry. ASF 2. An embedding neither reveals



See ASF 4. An embedding is meaningless outside the image recognition model that generated the embeddings. ASF 5.

ASF 8. Given that embeddings are not scans of face geometry, they are not biometric identifiers.

### 2. The Image Recognition Data Does Not and Cannot Identify Anyone.

BIPA only covers "scan[s] of … face geometry *that are capable of identifying an individual*. Therefore, the fact that the App performs face scans is not dispositive." *G.T. v. Samsung Elecs. Am. Inc.*, 2024 WL 3520026, at *7 (N.D. Ill. July 24, 2024) (emphasis added). The technology must "connect the biometrics to an individual; a facial scan is meaningless if there is no way to determine who it belongs to." *Id.*; *see also Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1125-26 (9th Cir. 2024) (holding that because face signatures cannot identify, they are not biometric identifiers or biometric information as defined by BIPA); *Clarke v. Aveda Corp.*, 704 F.

Supp. 3d 863, 866 (N.D. Ill. 2023) ("Plaintiffs allege that Aveda … 'scanned and collected … facial geometry,'" but plaintiffs "provide no allegations demonstrating Aveda was capable of identifying them from this data"); *Martell v. X Corp.*, 2024 WL 3011353, at *4 (N.D. Ill. June 13, 2024) ("Without allegations that PhotoDNA uses facial geometry to identify individuals, Plaintiff failed to allege that the hashes are biometric identifiers."); *Castelaz v. Estée Lauder Cos.*, 2024 WL 136872, at *6-7 (N.D. Ill. Jan. 10, 2024) (dismissing BIPA claim where technology was not "capable of determining Plaintiffs and members of the Illinois class members' identities by using the collected facial scans"); *Daichendt v. CVS Pharmacy, Inc.*, 2022 WL 17404488, at *5 (N.D. Ill. Dec. 2, 2022) (dismissing BIPA claim where plaintiffs failed to allege that defendant "connect[ed] the voluntary scans of face geometry with their identities").

Here, unlike biometric identification technology, Amazon Photos' image recognition technology cannot identify an unknown person or otherwise determine a person's identity. ASF 10. This is necessarily true because Amazon does not know the identity of people appearing in users' private photos. ASF 11. While a user has the option to label face clusters in their account, ████████ of Amazon Photos users assign a label to clusters. ASF 12. Plaintiffs did not label, or at least do not recall labeling, any face cluster in Amazon Photos. ASF 15. If Plaintiff Angela Hogan labeled her face cluster, she input "Mom" or "Angela" without any last name. ASF 16. If she labeled B.H.'s face cluster, she input his first name only—not his full name or last name. ASF 17. Other than any label (e.g., "Mom") input by a user for a cluster potentially being a name, no name or identifying information traceable to an individual was ever associated with any embedding or photo. ASF 18. Amazon Photos does not ████████████████████████████ ████████████████████████████████████████████ Plaintiffs' own expert conceded that Amazon "may not have any ████████████████████████████

6

███████████████████████████████████████████████

████████████████████████ BIPA, however, does not regulate Amazon Photos because it merely "groups unidentified faces together, and it is the Device user who (has the option to) add names to the faces." *G.T.*, 2024 WL 3520026, at *8 (dismissing BIPA claim).

*G.T. v. Samsung*, addressed a technology similar to Amazon Photos and is illustrative. The plaintiffs alleged that Samsung collected biometric data through a photo application. *See* 2024 WL 3520026, at *1. Samsung's application allegedly scanned "unique facial geometry" in photos and created a "face template" purported to be a "unique digital representation" of faces in photos. *Id.* The application allegedly converted extracted facial features into "numerical vectors" and compared the vectors against other faces in the user's application to group similar faces together. *Id.* The court held that the extracted data was not a biometric identifier because it did not identify any specific person. *Id.* at *7. Here, the Court should find the same.

Plaintiffs cite inapposite cases about technologies that can identify an unknown person or verify a person's identity. One concerned software to "verify a consumer's identity" requiring the consumer to upload "a photograph of his driver's license." *Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 865 (N.D. Ill. 2022). In another, the technology was "used to verify a person's identity," by cross referencing faces in photos with websites including "additional information about the person identified." *Am. C.L. Union v. Clearview AI, Inc.*, 2021 WL 4164452, at *1 (Ill. Cir. Ct. Aug. 27, 2021). In another, the technology identified people by name—without input from the user—by cross referencing faces in the user's photos with external data to "suggest … individual's names." *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1158 (N.D. Cal. 2016). In contrast, Amazon Photos' image recognition technology did not and cannot identify anyone. ASF 10. Plaintiffs have not cited a single case—and Amazon is not aware of any—where a court ruled

on summary judgment that image recognition technology for photos collected biometric identifiers.[2] This Court should not be the first, especially given the mountain of evidence that the "embedding" data at issue here does not and cannot identify a person, which at the very least creates a material dispute of fact. *See* ASF 2-11.

Tellingly, in seeking class certification, Plaintiffs' expert recognized that Amazon's technology cannot identify a person, instead suggesting that Amazon should use "its engineering and financial resources … [to] scrape the Internet" to "set up a system similar to [third-party] Clearview AI that can receive a face image and provide information about a person for identification purposes." ASF 20. But this and Plaintiffs' other proposals for Amazon to change its technology to identify class members are speculative, impracticable, and likely illegal, as previously explained. *See* ECF 171 at 3-7. That Plaintiffs propose resorting to such extreme and hypothetical measures to try to identify putative class members—because Amazon Photos "as currently configured" cannot do so (ASF 20)—reinforces that Amazon Photos does not generate biometric identifiers, and thus is not regulated by BIPA.

### B. Amazon's Disclosures Complied with BIPA and Plaintiffs Consented.

Even if Amazon Photos generated biometric identifiers (it does not), Plaintiffs' claim still fails because Amazon complied with BIPA's notice and consent requirements. BIPA Section 15(b) requires disclosing (1) that biometric data is being collected; (2) the purpose of the collection; and (3) the length of term for which it will be stored. 740 ILCS 14/15(b).

---

[2] Plaintiffs argue the Court can decide on summary judgment whether the embeddings are biometric identifiers, citing *Howe v. Speedway LLC*, 2024 WL 4346631 (N.D. Ill. Sept. 29, 2024). There, the issue was whether the term "fingerprint" as used in BIPA covered a "partial" fingerprint "sufficient to be unique to a particular individual and is capable of being used to identify a particular person." *Id.* at *7. The defendant used the data "to identify a particular individual." *Id.* at *9. Even then, that court did not rule in the plaintiff's favor. *Id.* Here, in contrast, embeddings do not and cannot identify an individual. ASF 2-11.

While Amazon Photos does not generate biometric identifiers, ███████████

████████████████████████████████████████████████████████████████

████████████████████████████ ASF 21. Image recognition was enabled by default in

most states, but was disabled by default in Illinois. ASF 1. Illinois users who voluntarily enabled

image recognition were provided with disclosures, both during the initial sign-up process and again

when completing the further steps required to enable image recognition. *See* SF 29-31, 34, 40-46.

As explained below, these disclosures explained: (1) what data was collected; (2) the purpose; and

(3) how long it would be retained. After Amazon provided these disclosures, Plaintiff Angela

Hogan provided her written consent—on behalf of herself and her minor son, Plaintiff B.H.—not

only when they began using Amazon Photos in December 2020, but also again in April 2021 when

Ms. Hogan enabled image recognition two days after communicating with her attorneys regarding

becoming a class representative in this case. ASF 25, 33. Amazon did not violate BIPA's disclosure

requirement.

Additionally, Plaintiffs' Motion impermissibly changes the complaint's factual theory as

to why Amazon's disclosures purportedly were inadequate. The complaint alleges Amazon's

disclosures were inadequate ***solely*** because users were not informed that their data was used to

train Amazon's "Rekognition" technology. *See* ECF 23 ¶¶ 8, 10, 31-32, 45, 59, 62, 97. Amazon

did not disclose this alleged training because it never happened. *See* ASF 32. Thus, Plaintiffs

rightly abandoned that theory. But now their Motion asserts new theories that do not appear in in

the complaint. This de facto amendment of the complaint should be rejected at this late stage. *See*

*Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017) (where summary

judgment briefing "changes the complaint's factual theory … the district court has discretion to

deny the *de facto* amendment and to refuse to consider the new factual claims"). Yet, even if the

Court considers Plaintiffs' new theories, they still fail to show lack of BIPA-compliant disclosures.

### 1. Amazon Disclosed What Was Collected.

Before using Amazon Photos, users must first accept the Amazon Photos Terms of Use ("TOUs") by entering their login credentials and then tapping "Sign-In" or "Continue," after being told that by doing so they agreed to the TOUs available via hyperlink, as shown below:



SF 29; *see also* ASF 22 (Plaintiff Hogan accepted TOUs by tapping "Continue" after being informed "By tapping 'Continue' or 'Start Here,' you agree to Amazon's Conditions of Use and the other terms found here," which hyperlinked to TOUs).

The TOUs state: "When enabled, you agree that the Services may use image recognition technology to group together photos containing people with similar facial characteristics, and to organize and tag your photos." *Id.* The TOUs also explain that the technology collected "image recognition data, including data about the faces, in the photos you store." *Id.*

10

Additionally, before image recognition was enabled, Amazon displayed the screens below, and the user had to toggle a switch from "off" to "on."

 

SF 40-41.

As shown above, Amazon informed users that "Image Recognition" would "group together photos of the same people." SF 41. Amazon further informed users that "by turning on image recognition features" they were agreeing to "important legal information," which hyperlinked to a "Notice to Illinois Residents" stating that "Illinois state law may require the informed written consent from an Illinois resident before performing image recognition on photos that include his or her face" and that "[b]y enabling image recognition features for your account, you understand that image recognition analysis will be performed on the photos stored in your account." RSF 44.

Thus, Amazon repeatedly disclosed *what* was collected, using terms like "image recognition data," "facial characteristics," and "data about the faces in the photos." SF 34, 44; ASF 22. Plaintiffs now argue Amazon's disclosures should have contained the terms "biometric," "scan of face geometry," "face embedding," or "facial recognition." But Plaintiffs cite no authority—and Amazon is aware of none—requiring those particular words for a disclosure to comply with

BIPA.[3] BIPA does not require companies to use complicated terminology to describe the information being collected, as opposed to more common, easy-to-understand language. Indeed, the law disfavors legalese or technical jargon in consumer disclosures.[4]

Plaintiffs' arguments are also contradicted by Ms. Hogan's own deposition testimony. She understands the plain language in Amazon's disclosures. ASF 26-27. By contrast, she did not know the meaning of the term "biometrics"—the term that Plaintiffs contend Amazon should have used. ASF 28. Ms. Hogan further testified that "Amazon should have informed [her] that it was using image recognition technology on the faces in [her] photographs," as this would have allowed her to decide whether to use the technology. RSF 70. But that *is exactly what Amazon prominently disclosed*, including on the screen when she voluntarily turned on the feature. *Id.*; ASF 22; SF 40.

Contrary to Plaintiffs' assertion, the Court has not already "found" Amazon's disclosures insufficient. In its motion to dismiss ruling, the Court analyzed Amazon's disclosures in light of Plaintiffs' (false) allegation that Amazon should have disclosed it would use Plaintiffs' data to train the "Rekognition" technology. *See* ECF 49 at 3-4, 21; *see also* ASF 32 (Rekognition never trained using Plaintiffs' data). Moreover, the Court's conclusion that "[t]he statement in the TOUs that Amazon retains data about the faces is not clear enough to notify a party that Amazon is collecting a biometric identifier," *id.*, was made under the liberal Rule 12 standard and without the benefit of fact development. The evidence now shows that the vast majority of consumers understood Amazon's disclosures to mean it collected biometrics when image recognition was

---

[3] *Santana v. Take-Two Interactive Software, Inc.*, 717 F. App'x 12, 15-16 (2d Cir. 2017) rejected an argument that BIPA required using the statutory phrase "scan of face geometry" in disclosure. While the plaintiff's claims were dismissed for lack of standing, the opinion remains persuasive for the commonsense observation that BIPA does not mandate particular language in disclosures.

[4] *See, e.g., Laseter v. ClimateGuard Design & Installation, LLC*, 931 F. Supp. 2d 862, 868 (N.D. Ill. 2013) ("legalese" violated statutory disclosure requirements); *Van Jackson v. Check 'N Go of Ill., Inc.*, 123 F. Supp. 2d 1079, 1084 (N.D. Ill. 2000) ("legalistic jargon" did not comply with disclosure requirements).

enabled and that Ms. Hogan herself would have understood this if she had read those disclosures.

A survey of Illinois consumers shows that **92% percent** of hundreds of respondents who viewed Amazon Photos' disclosures believed that the image recognition feature collected their biometric data.[5] ASF 29. The survey also showed that adding the phrases "biometric data" and "scan of face geometry" to the existing disclosures **made no statistically significant difference** to the respondents' beliefs. ASF 30. This is no surprise: Plaintiffs' own expert testified that "'a scan of face geometry' sounds precisely like an 'image recognition feature enabled.'" ASF 31.

### 2. Amazon Disclosed the Purpose and Retention Period.

Amazon disclosed that enabling "image recognition technology" would "group together photos containing people with similar facial characteristics … to organize and tag your photos." ASF 22. This is what the feature did, and Plaintiffs submit no evidence to the contrary. While Plaintiffs argue Amazon should have disclosed "it was collecting face embeddings used for clustering" (ECF 187 at 9), this is a distinction without a difference, other than urging technical language in place of the easier-to-understand language that Amazon used. Plaintiffs also argue that Amazon created ███████████████ that was not used for clustering. *Id.* But this was the result of ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████

Regarding retention, the TOUs explain that Amazon "retain[s] image recognition data, including data about the faces, in the photos you store using the Services until you disable the

---

[5] Courts consider survey evidence when deciding on summary judgment whether a reasonable consumer would understand contested language. *See, e.g.*, *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934-35 (7th Cir. 2021) (granting defendant's summary judgment motion and noting plaintiff's lack of survey evidence supporting his claim that consumers were likely to be misled); *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 414, 424-25 (7th Cir. 2019) (holding survey evidence proved meaning of word to consumers). As explained in the comments to the Restatement of the Law of Consumer Contracts: "Of course, a business may demonstrate that a term does affect consumers' contracting decision with appropriate evidentiary support, for example, by survey evidence[.]" Rest. of the L., Consumer Cont., § 6 cmt. 6(d).

image recognition features or your account's access to the Services is terminated." ASF 22. Amazon also disclosed that "files" in abandoned accounts—those that have not been active in the prior 2 years—will be deleted. SF 57. The Motion does not argue that Amazon failed to comply with these policies, nor can Plaintiffs make such an argument given they never disabled image recognition and never abandoned their account. *See* ASF 34. Instead, Plaintiffs argue that Amazon should have defined the term "files" and explained what happens if a user deletes a photo without disabling image recognition. ECF 187 at 9. But Amazon's disclosures ***did*** cover this information. *See* RSF ¶¶ 58-61. Amazon's disclosures did not use the precise language crafted now by Plaintiffs' lawyers for purposes of this litigation, but BIPA does not require predicting and using the precise language (and innumerable variations) that plaintiffs' lawyers may urge. Rather, BIPA's "purpose" is to have companies disclose "how th[e] information will be used, who will have access to it, and for how long it will be retained." *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020). Amazon disclosed all that information.

### 3.     Amazon Obtained Plaintiffs' Informed Written Consent.

After Amazon gave sufficient disclosures, Plaintiffs repeatedly provided their informed written consent. Plaintiffs used Amazon Photos exclusively on two Amazon Fire Tablets. SF 63. Before using the Tablets, Plaintiffs were required to agree to the Amazon Photos TOUs containing the disclosures discussed above. ASF 22. Ms. Hogan on behalf of herself and her minor son, B.H., agreed to the TOUs when she registered the first Fire Tablet in December 2020 and again in April 2021 when she registered the second Fire Tablet. ASF 25. Ms. Hogan had authority to accept the TOUs on B.H.'s behalf, as he is a minor, she is his parent and guardian, and he only used Amazon Photos under her account. ASF 23-24. Additionally, Ms. Hogan again provided informed written consent when she toggled-on image recognition on April 29, 2021, just two days after she

responded to a Facebook solicitation from her lawyers, who were seeking a plaintiff for this case. ASF 33. When she toggled-on image recognition, she received and accepted in writing the "important legal information" and Notice to Illinois Residents, which stated, among other things, that "[b]y enabling image recognition features for your account, . . . you represent to us that you have obtained the consent of the individuals in the photos stored in your account permitting us to use image recognition analysis on photos of them." SF 41-52.[6]

BIPA explicitly contemplates that consent may be provided by a legally authorized representative. 740 ILCS 14/15. Here, Ms. Hogan—as B.H.'s mother—is B.H.'s legally authorized representative because he is a minor.[7] ASF 23. BIPA also expressly provides that the "written release" can be an electronic signature. 740 ILCS 14/10. Ms. Hogan provided her electronic signature both when she: (1) accepted the TOUs during the Fire tablet registration process by tapping "Continue" after being informed: "By tapping 'Continue' or 'Start Here,' you agree to Amazon's Conditions of Use and the other terms found here" (ASF 22); and (2) when she toggled-on image recognition, after being informed "by turning on image recognition features, you agree

---

[6] Plaintiffs cite a law review article by Daniel Solove for the proposition that informed consent goes beyond "merely posting privacy notices, lengthy terms and conditions, or some other documents, which is typical of most instances of privacy law." ECF 187 at 11. However, Solove's article is a policy piece that did not describe controlling law—just the opposite, as Solove argues for something different than existing law. *See* Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 B.U. L. REV. 593, 615 (2024). Solove's argument about "lengthy" disclosure documents is inapposite here, where there is optional, add-on functionality, and the "How Does Image Recognition Work?" webpage available at the "Learn more" link and the "Notice to Illinois Residents" webpage available at the "important legal information" link, provided disclosures in a concise 315 and 145 words, respectively. *See* ECF 188-3, Ex. 19; ECF 188-4, Ex. 24. Likewise, the "Find People Places, and Things" webpage was a concise 74 words. *See* ECF 188-3, Ex. 18, at AMZ-206423. This webpage informs users that, by turning on image recognition, Amazon Photos would "group together photos of the same people" and let the user search for people. *Id.*

[7] Under the Children's Online Privacy Protection Rule, a parent has the authority, and indeed is required, to provide consent on behalf of a child. *See* 16 C.F.R. § 312.3; 15 U.S.C.A. § 6501. Similarly, under Illinois law, the "power to consent" on behalf of a child "ordinarily rests exclusively with the custodial parent." *Taylor v. R.D. Morgan & Assocs., Ltd.*, 563 N.E.2d 1186, 1192 (Ill. App. Ct. 1990); *see also Curran v. Bosze*, 566 N.E.2d 1319, 1339 (Ill. 1990) (noting "usual presumption" is that a parent is legally authorized to provide consent on behalf of a minor child).

to this important legal information," which was a hyperlink to the Notice to Illinois Residents. SF 41-44; RSF 44; *see also W. Union Co. v. Tom Kula & Paymentus Grp., Inc.*, 2017 WL 2973584, at *5 (N.D. Ill. July 12, 2017) (holding that clicking "Accept" is "valid means of expressing assent" in online transactions). The fact that Amazon's disclosures were presented, in part, via hyperlinks does not invalidate Plaintiffs' consent. *See Sherman v. AT&T Inc.*, 2012 WL 1021823, at *3 (N.D. Ill. Mar. 26, 2012) (clicking "a box next to hyperlinked terms generally provides adequate notice").

Ms. Hogan cannot elude her consent by claiming she does "not recall" reading Amazon's disclosures. RSF 66. Under Illinois law, a party's decision not to read an agreement is not a defense to its enforceability. *See, e.g.*, *Ambrosius v. Chicago Athletic Clubs, LLC*, 203 N.E.3d 239, 251-52 (Ill. App. Ct. 2021) ("[T]hat plaintiffs may not have clicked on the hyperlink or read through the terms of service before signing up for the rewards program does not preclude the formation of a contract or mean that [the defendant] acted deceptively."); *Oelze v. Score Sports Venture, LLC*, 927 N.E.2d 137, 146 (Ill. App. Ct. 2010) (holding that failure to read agreement before manifesting assent to it does not invalidate the agreement). Further, courts "must evaluate mutual assent based on the objective conduct of the parties," so Ms. Hogan cannot avoid her consent based on her "subjective intentions." *Nat'l Prod. Workers Union Ins. Tr. v. Cigna Corp.*, 665 F.3d 897, 901-02 (7th Cir. 2011). Ms. Hogan was in touch with her lawyers about this lawsuit ***before*** she toggled on image recognition (ASF 33), reinforcing that she consented. *See Canterbury v. Spence*, 464 F.2d 772, 788 (D.C. Cir. 1972) (consent shown by already-known facts).

### C. Plaintiffs' Claim Is Barred by Waiver and Ratification.

Plaintiffs' claim is also barred by Amazon's affirmative defenses of waiver and ratification. Waiver is the voluntary relinquishment of a known right. *Anderson v. Holy See*, 878 F. Supp. 2d 923, 933 (N.D. Ill. 2012). Ratification is "the affirmance of a prior act done by another, whereby

16

the act is given effect as if done by an agent acting with actual authority." *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 745 (N.D. Ill. 2014).[8] Here, Plaintiffs enabled image recognition two days after Ms. Hogan saw a Facebook advertisement to be a plaintiff in this case and spoke to Plaintiffs' counsel. ASF 33. Thus, Plaintiffs voluntarily relinquished their right to challenge Amazon's collection of their alleged biometrics when Ms. Hogan consented to that collection, having already communicated with Plaintiffs' lawyers. Further, Plaintiffs never disabled image recognition (as they easily could have done by toggling off the feature just as they had toggled it on), and instead continued to frequently use, enjoy, and benefit from image recognition, even after filing this lawsuit. ASF 34-35. Thus, Plaintiffs' claims are barred by waiver and ratification because they intentionally opted-in to collection of their alleged biometrics and chose to continue benefitting from image recognition, knowing that Amazon was collecting their alleged biometrics.

### D. Damages Are Discretionary.

Plaintiffs assert the Illinois Supreme Court's recent instruction in *Cothron v. White Castle Sys., Inc.*—that "damages under the Act are discretionary rather than mandatory," 216 N.E.3d 918, 929 (Ill. 2023)—is no longer good law following BIPA's amendment. ECF 187 at 12-14. Not so. The Supreme Court held that BIPA damages are discretionary because 740 ILCS 14/20 (2018) stated that a "prevailing party *may* recover" statutory damages. *Cothron*, 216 N.E.3d at 929 (emphasis in original). The "*may* recover" phrase that the Supreme Court construed in *Cothron* remains unchanged after the amendment. *See* 740 ILCS 14/20 (2024) ("prevailing party *may*

---

[8] The Court should not follow erroneous conclusions of two other courts that BIPA abrogates common-law defenses. *See Snider v. Heartland Beef, Inc.*, 479 F. Supp. 3d 762, 772 (C.D. Ill. 2020); *Brandenberg v. Meridian Senior Living, LLC*, 564 F. Supp. 3d 627, 635 (C.D. Ill. 2021). It is well-established that common law defenses remain unless expressly abrogated by statute. *Carle Found. v. Ill. Dep't of Revenue*, 917 N.E.2d 1136, 1146 (Ill. App. Ct. 2009). Nothing in BIPA expressly abrogates common law defenses like waiver or ratification.

recover") (emphasis added); *see also DirecTV, Inc. v. Brown*, 371 F.3d 814, 818 (N.D. Ill. 2004) ("term 'may' is plain and means that an award of [statutory] damages … is discretionary").

In addition to retaining that "***may*** recover" phrase, the Legislature added language underscoring that BIPA damages are discretionary. The amended statute says an "aggrieved person is entitled to, ***at most***, one recovery under this Section," 740 ILCS 14/20 (emphasis added). The phrase "at most" would make no sense and be superfluous if a fixed sum of damages were mandated in every case. Moreover, even after the amendment became effective on August 2, 2024, the Northern District of Illinois held that "courts have discretion to fashion appropriate awards under the statute." *Howe*, 2024 WL 4346631, at \*14.

Plaintiffs have not cited a single case—and it appears there is none—supporting their argument that BIPA damages are mandatory. This Court should reject that meritless and counter-textual argument, which cannot be squared with the Illinois Supreme Court's opinion in *Cothron* and the numerous other decisions recognizing that BIPA damages are discretionary. *See, e.g.*, *Rogers v. BNSF Ry. Co.*, 680 F. Supp. 3d 1027, 1041 (N.D. Ill 2023) ("Court concludes damages under BIPA section 20 are discretionary"); *Bayeg v. Admiral at the Lake*, 244 N.E.3d 377, 391 (Ill. App. Ct. 2024) ("[D]amages in a claim under [BIPA] are discretionary."); *Tapia-Rendon v. United Tape & Finishing Co.*, 2024 WL 406513, at \*3 (N.D. Ill. Feb. 2, 2024) ("BIPA's damages are discretionary," "the parties are entitled to have a jury exercise that discretion," and "the jury would be permitted to consider factors such as the harm suffered by the class members.").

### E. Non-User Class Members Are Not Each Entitled to $5,000.

Plaintiffs argue that the Court should award each member of the Non-User Class $5,000 on the grounds that Amazon allegedly violated their rights under Section 15(b), either recklessly or intentionally. The Court should reject this argument for four independent reasons.

First, Amazon reasonably believes that it did not collect any "biometric identifiers" within the meaning of BIPA because Amazon did not collect any "scans of face geometry" and did not, and cannot, identify any individual based on the embeddings it did collect. *See* ASF 10-11. That belief is supported by numerous court decisions. *See, e.g.*, *G.T.*, 2024 WL 3520026, at *7; *Zellmer*, 104 F.4th at 1125-26; *Clarke*, 704 F. Supp. 3d at 866; *Martell*, 2024 WL 3011353, at *4. So, even if this Court were to reach a different result (which it should not), there is no basis to find that Amazon intentionally or recklessly violated BIPA.

Second, BIPA damages are discretionary, as explained above. "In federal court, the parties are entitled to have a jury exercise that discretion" and "the jury would be permitted to consider factors such as the harm suffered by the class members and the proportionality of any damages award in relation to the severity of the defendant's misconduct." *Tapia-Rendon*, 2024 WL 406513, at *3. Given that a reasonable jury may award less (and possibly nothing given the facts in this case[9]), Plaintiffs fail to show that each member of the Non-User Class is now entitled to $5,000 as a matter of law.

Third, the one-way intervention rule precludes the Court from adjudicating Plaintiffs' summary judgment motion on behalf of the Non-User Class before the class is certified, notice is given to the members, and they are given an opportunity to opt-out. *See Peritz v. Liberty Loan Corp.*, 523 F.2d 349, 354 (7th Cir. 1975). But identifying members of the putative Non-User Class is impossible for many reasons, which Amazon detailed in its opposition to class certification, including that many could not self-identify as class members because they have no way of knowing whether they appear in someone else's photos. *See* ECF 141 at 9-10; *see also* ECF 171 at 3 (explaining why plaintiffs' proposed methods for identifying class members are speculative,

---

[9] Plaintiffs admit they were not harmed. ASF 36. Instead, they enjoyed the image recognition feature and continued using it after filing this lawsuit. ASF 34-35.

impracticable, and likely illegal). Accordingly, because class members cannot be given notice or an opportunity to opt-out, the Court is precluded from entering judgment in their favor.

Fourth, Plaintiff B.H. is the sole proposed class representative for the Non-User Class. *See* ECF 177 at 1 (defining B.H. as "Non-User"). As discussed above, however, his mother provided informed written consent on his behalf, as his legally authorized representative, when she accepted the TOUs and toggled on image recognition. *See* ASF 23-25, 33. After that, B.H. (with his mother's permission) continued to use image recognition after filing the case. ASF 34. Plaintiffs chose not to disable the feature even though they could have done so. *Id.* Thus, B.H. cannot show any BIPA violation, much less an entitlement to the maximum discretionary amount of $5,000 for an intentional or reckless violation. Because B.H. is not entitled to $5,000, neither are the members of the putative Non-User Class, given B.H. is their sole proposed representative: either B.H.'s facts are dispositive for the class (i.e., their claims fail for the same reasons as his) or class treatment is inappropriate because he is not representative of the putative Non-User Class. *See* Fed. R. Civ. P. 23(c)(3); *J. H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980) ("[E]ven an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation.").

For each of these reasons, the Court should not award $5,000 to the Non-User Class.

## V.     **CONCLUSION**

The Court should deny Plaintiffs' summary judgment motion and instead grant summary judgment in favor of Amazon for the reasons set forth in its motion (ECF 194).

Date: January 10, 2025                        **MORGAN, LEWIS & BOCKIUS LLP**

/s/ *Elizabeth B. Herrington*

Elizabeth B. Herrington
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
T: (312) 324-1445
F: (312) 324-1001
beth.herrington@morganlewis.com

J. Warren Rissier (*pro hac vice*)
300 South Grand Avenue, Twenty-Second Floor
Los Angeles, CA 90071-3132
T: (213) 680-6860
F: (213) 612-2501
warren.rissier@morganlewis.com

*Counsel for Defendant Amazon.com, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on January 10, 2025, I caused a copy of the foregoing ***Defendant's Opposition to Plaintiffs' Motion for Summary Judgment*** to be served upon all counsel of record via electronic filing using the CM/ECF system and via email.


 */s/ Elizabeth B. Herrington*
*Attorney for Defendants*