IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGELA HOGAN and B.H., a minor, by and through his guardian Angela Hogan, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 21 C 3169 |
| *v.* | Judge John J. Tharp Jr. |
| AMAZON.COM, INC., | **REDACTED** |
| Defendant. | |

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT

## Table of Contents

I.    Introduction ................................................................................................ 1

II.   Argument ................................................................................................... 2

    A.  The Court should not consider the untimely declarations submitted by
        Amazon in support of its factual assertions. ............................................ 2

    B.  Amazon's argument that Plaintiffs are asserting a new factual theory that is a
        "de facto amendment of the complaint" is frivolous. ................................ 4

    C.  BIPA applies here because the face embeddings collected by Amazon Photos
        are biometric identifiers under the statute. .............................................. 6

        1.  Face embeddings are biometric identifiers under BIPA because the
            unrefuted evidence shows that they are scans of face geometry. ......................... 6

        2.  The face embeddings generated by Amazon's Face Processing
            Technology ███████████████████████
            ████████████████████ .......................................................... 9

    D.  Amazon neither disclosed to Class Members that it was collecting their
        biometric data nor obtained informed consent from Class Members to do so. ....... 10

        1.  Amazon did not inform Class Members that it was collecting their
            biometric identifiers or information. ................................................ 10

        2.  Amazon failed to inform Class Members of the specific purpose and
            length of term for which it was collecting, storing, and using their
            biometric data. ......................................................................... 13

        3.  Amazon failed to obtain Plaintiffs' or Class Members' informed written
            consent. ................................................................................... 15

    E.  Waiver and ratification are not valid defenses to BIPA claims. ............................. 17

    F.  The statutory damages in this case are set by BIPA and are not discretionary. ........ 18

    G.  Each Non-User Class Member is each entitled to statutory damages of
        $5,000. ................................................................................................ 19

III.  Conclusion ............................................................................................... 20

**Table of Authorities**

**Cases**

*Adams v. Emps. Ins. Co. of Wausau*,
    49 N.E.3d 924 (Ill. App. Ct. 2016) ............................................................... 18

*Am. Civ. Liberties Union v. Clearview AI, Inc.*,
    No. 20 CH 4353, 2021 WL 4164452 (Ill. Cir. Ct. Aug. 27, 2021) ...................... 7

*Anderson v. Holy See*,
    878 F. Supp. 2d 923 (N.D. Ill. 2012) ........................................................... 18

*Bank of Illinois v. Allied Signal Safety Restraint Sys.*,
    75 F.3d 1162 (7th Cir. 1996) .......................................................................... 3

*Brandenberg v. Meridian Senior Living, LLC*,
    564 F. Supp. 3d 627 (C.D. Ill. 2021) ........................................................... 17

*Bryant v. Compass Group USA, Inc.*,
    958 F.3d 617 (7th Cir. 2020) ........................................................................ 12

*Castelaz v. Estee Lauder Cos.*,
    No. 22 CV 5713, 2024 WL 136872 (N.D. Ill. Jan. 20, 2024) .......................... 10

*Clarke v. Aveda Corp.*,
    704 F. Supp. 3d 863 (N.D. Ill. 2023) ........................................................... 10

*Cothron v. White Castle Sys., Inc.*,
    216 N.E.3d 918 (Ill. 2023) ..................................................................... 18, 19

*Daichendt v. CVS Pharmacy, Inc.*,
    No. 22 CV 3318, 2023 WL 3579082 (N.D. Ill. Feb. 3, 2023) .......................... 10

*DR Distributors, LLC v. 21 Century Smoking, Inc.*,
    513 F. Supp. 3d 839 (N.D. Ill. 2021) ............................................................. 3

*G.T. v. Samsung Elecs. Am. Inc.*,
    No. 21 CV 4976, 2024 WL 3520026 (N.D. Ill. July 24, 2024) ........................ 10

*Howe v. Speedway LLC*,
    No. 1:19-CV-01374, 2024 WL 4346631 (N.D. Ill. Sept. 29, 2024) .................... 6

*In re Facebook Biometric Info. Priv. Litig.*,
    185 F. Supp. 3d 1155 (N.D. Cal. 2016) .......................................................... 7

*Johnson v. C. R. Bard, Inc.*,
    77 F.4th 641 (7th Cir. 2023) .......................................................................... 4

*Lawrence v. Regent Realty Grp., Inc.*,
    754 N.E.2d 334 (Ill. 2001) ........................................................................12

*Martell v. X Corp.*,
    No. 23 C 5449, 2024 WL 3011353 (N.D. Ill. June 24, 2024) ..............................10

*McCann v. Iroquois Mem'l Hosp.*,
    622 F.3d 745 (7th Cir. 2010) .......................................................................3

*Melzer v. Johnson & Johnson Consumer Inc.*,
    No. CV 22-3149 (MAS) (RLS), 2023 WL 3098633 (D.N.J. Apr. 26, 2023) ...........9

*People v. Reid*,
    24 N.E.3d 70 (Ill. App. Ct. 2014) ...............................................................17

*Rosenbach v. Six Flags Ent. Corp.*,
    129 N.E.3d 1197 (Ill. 2019) .......................................................................16

*Santana v. Take-Two Interactive Software, Inc.*,
    717 F. App'x 12 (2d Cir. 2017) ...................................................................12

*Sheppard v. Fantasia Trading LLC*,
    No. EDCV 23-2407 JGB (EX), 2024 WL 1916763 (C.D. Cal. Apr. 25, 2024) ........9

*Snider v. Heartland Beef, Inc.*,
    479 F. Supp. 3d 762 (C.D. Ill. 2020) ............................................................17

*Sosa v. Onfido, Inc.*,
    600 F. Supp. 3d 859 (N.D. Ill. 2022) .........................................................7, 17

*Toney v. Quality Res., Inc. et al.*,
    75 F. Supp. 3d 727 (N.D. Ill. 2014) .............................................................18

*Trahanas v. Nw. Univ.*,
    No. 15 C 11192, 2020 WL 7641293 (N.D. Ill. Dec. 23, 2020) ...........................5

*Whitaker v. Milwaukee Cnty., Wisconsin*,
    772 F.3d 802 (7th Cir. 2014) .......................................................................5

*Wilk v. Brainshark, Inc.*,
    631 F. Supp. 3d 522 (N.D. Ill. 2022) .............................................................9

*Zellmer v. Meta Platforms, Inc.*,
    104 F.4th 1117 (9th Cir. 2024) ...................................................................10

**Statutes**

410 ILCS 305/3 ..........................................................................................16

740 ILCS 14/10 ................................................................................. 9

740 ILCS 14/15(b) ..................................................................... passim

740 ILCS 14/15(c) ........................................................................... 6

740 ILCS 14/20 .............................................................................. 19

**Regulations**

21 C.F.R. § 813.66 (1993) .............................................................. 16

**Rules**

Fed. R. Civ. P 37(c)(1) .................................................................. 4

Fed. R. Civ. P. 26(a) ...................................................................... 4

Fed. R. Civ. P. 56 ....................................................................... 3, 6

N.D. Ill. L.R. 56.1 ........................................................................... 2

**Other Authorities**

Black's Law Dictionary Eighth Edition .......................................... 16

Merriam-Webster.com Dictionary, Merriam-Webster,
   https://www.merriam-webster.com/dictionary/informed%20consent (accessed Jan. 24,
   2025) ........................................................................................... 16

Omri Ben-Shahar & Lior Jacob Strahilevitz, *Interpreting Contracts Via Surveys and Experiments*,
   92 N.Y.U. L. Rev. 1753 (2017) ................................................... 12

# I.   INTRODUCTION

Instead of squarely confronting Plaintiffs' arguments and evidence in support of summary judgment, Amazon has doubled down on its smoke-and-mirrors approach to litigating this case. The Court has rejected Amazon's gamesmanship before by denying Amazon's request to stay or dismiss Plaintiffs' motion for summary judgment, and Plaintiffs respectfully request that the Court reject it again now.

Amazon's sharp practices are perhaps best illustrated by its continued attempts to manufacture factual disputes by introducing untimely and inadmissible evidence into the record. For example, Amazon denies in whole or in part 43 of Plaintiffs' statements of material fact and cites untimely factual declarations in support of *36 of those denials* (83%).

Amazon's attempts to muddle the record with ill-timed and inadmissible evidence should be rejected. But even if these declarations are considered, Plaintiffs' motion should still be granted because they consist of assertions that either contradict the declarant's prior statements, have no foundation at all, or do not actually provide probative input that is helpful to the jury.

The undisputed facts and law demonstrate that Amazon violated § 15(b) of BIPA and Plaintiffs respectfully request that their motion for summary judgment be granted in full.

## II. ARGUMENT

**A. The Court should not consider the untimely declarations submitted by Amazon in support of its factual assertions.**[1]

When Amazon first began its attempts to interject new and untimely evidence into this action with its class-certification opposition filings, it was clear that "if Amazon's gamesmanship is allowed now, it will come up again at summary judgment and at every stage of trial preparation and trial itself." Dkt. No. 176, Pls.' Reply in Supp. of Mot. to Exclude Untimely Evid. and Related Ops. of Amazon's Experts at 14 n.4.

Plaintiffs were prescient. In opposing summary judgment, Amazon again relies primarily on untimely declarations—just as it did to oppose class certification and to justify moving for summary judgment on its own behalf. Specifically, Amazon relies extensively on the previously submitted untimely declarations of Canku Calargun, Bahri Yilmaz, and Josh McLane—as well as a new (*second*) untimely declaration from Mr. McLane. *See* Dkt. No. 226-8, Decl. of Josh McLane in Opp'n to Pls.' Mot. for Summ. J.

Amazon has responded to Plaintiffs' statement of material facts by denying in whole or in part 43 of Plaintiffs' factual statements. *See* Dkt. No. 226-1 at 1–50, Def.'s Resp. to Pls.' Statement of Material Facts [hereinafter "Amazon's Resp. to Pls.' SOMF"]. Amazon cites untimely factual declarations in support of 36 of those denials (83%). *See id.* Fewer than a *fifth* of Amazon's denials rely solely on evidence other than challenged improper declarations. As for Amazon's additional statement of facts, untimely evidence is cited in

---

[1] "If a party contends that its opponent has included objectionable or immaterial evidence or argument in a LR 56.1 submission, the party's argument that the offending material should not be considered should be included in its response or reply brief." N.D. Ill. L.R. 56.1(e)(2).

support of 21 of Amazon's 36 factual assertions (58%). *See* Dkt. No. 226-1 at 50–57, Defs.'
Additional Statement of Facts [hereinafter "Amazon's ASF"].

Amazon's reliance on declarations produced more than a year after the close of fact
discovery is neither substantially justified nor harmless. *See DR Distributors, LLC v. 21 Century
Smoking, Inc.*, 513 F. Supp. 3d 839, 960 (N.D. Ill. 2021) ("Untimely disclosures and discovery
responses and supplements to them are generally not substantially justified or harmless.").
Indeed, Amazon is using these declarations to do an end-run around the undisputed and
unrefuted evidence in Plaintiffs' favor. *See* Dkt. No. 214, Pls.' Resp. in Opp'n to Amazon's
Mot. for Summ. J. at 2–5. For example, the most recent declaration of Mr. Calargun (on
which Amazon heavily relies) directly contradicts his deposition testimony. Mr. Calargun
states in his declaration that ███████████████████████████████████
████████████████████████████████████████ Dkt. No. 194-20, Third Calargun
Decl. ¶ 7; Dkt. No. 226-1, Amazon's ASF No. 6; Dkt. No. 226, Amazon's Mot. 3. Thus,
Mr. Calargun's *third* untimely declaration directly contradicts his prior sworn deposition
testimony that ██████████████████████████████████████
████████████████████████████████████████
████████ Pls.' Resp. to Amazon's Additional Statement of Fact No. 6. [hereinafter "Pls.' Resp.
to Amazon's ASF"]. Mr. Calargun's declaration is inadmissible. *See Bank of Illinois v. Allied
Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996) (describing "long followed . . .
rule that parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with
affidavits that contradict their prior depositions" (citations omitted)); *McCann v. Iroquois
Mem'l Hosp.*, 622 F.3d 745, 751 (7th Cir. 2010).

If Amazon or Mr. Calargun believed that his deposition testimony was erroneous, they had plenty of opportunities to correct the error during discovery. *See* Dkt. No. 214, Pls.' Resp. in Opp'n to Amazon's Mot. for Summ. J. at 3–4. Instead, Amazon has chosen to submit new factual evidence over a year after the close of fact discovery.[2] Because Amazon has not—and cannot—show that the untimely declaration submissions from Mr. Calargun, Mr. Yilmaz, and Mr. McLane are justified or harmless, exclusion is automatic and mandatory. *See, e.g.*, *Johnson v. C. R. Bard, Inc.*, 77 F.4th 641, 646 (7th Cir. 2023) ("Rule 37(c)(1)'s 'sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless.'" (citation omitted)).

## B. Amazon's argument that Plaintiffs are asserting a new factual theory that is a "de facto amendment of the complaint" is frivolous.

Amazon contends that Plaintiffs' motion for summary judgment on their § 15(b) claim "impermissibly changes the complaint's factual theory as to why Amazon's disclosures purportedly were inaccurate." Dkt. No. 226, Amazon's Opp'n 9. According to Amazon, "[t]he complaint alleges Amazon's disclosures were inadequate *solely* because users were not informed that their data was used to train Amazon's 'Rekognition' technology." *Id.* at 9 (emphasis in original).

Amazon's contention is specious. Plaintiffs filed the operative Complaint in this case three and a half years ago. Dkt. No. 23, First Am. Class Action Compl. Plaintiffs unambiguously allege in the Complaint that the inadequacy of Amazon's disclosures was *not*

---

[2] Amazon has refused to make the untimely declarants available to Plaintiffs either at a deposition or trial so, as it stands now, Plaintiffs cannot question them about their unsupported and contradictory statements and have had no due process to test the belated testimony Amazon that Amazon seeks to present to the jury. Ex. 36, Email Correspondence between J. Boley and B. Herrington (Oct. 17–8, 2024).

limited to the ███████████████████████████████████████████████

███████████ Indeed, the allegations in Plaintiffs' Complaint are *identical* to the factual and legal theories that Plaintiffs raise in their motion for summary judgment. Those allegations include (among others):

    i.    "Neither Plaintiff Angela Hogan nor her daughter ever received or saw any information from Amazon stating how long the biometric data obtained from Ms. Hogan's Amazon Photos account would be retained by Amazon. Nor did they receive or see any guidelines for when or how the biometric data collected from the Amazon Photos account would be destroyed by Amazon." *Id.* ¶¶ 72–73.

    ii.    "Amazon never informed Plaintiff Angela Hogan or her daughter of the specific purpose or length of time that the biometric data collected from the images in the Amazon Photos account would be collected, stored, or used." *Id.* ¶ 74.

    iii.    "Amazon systematically and automatically collected, stored, and used Plaintiffs' and Class Members' biometric identifiers and information *without providing the notice required by § 15(b)* data was being used for the 'specific purpose' of training Amazon's Rekognition technology." *Id.* ¶ 97 (emphasis added).

*See also id.* ¶¶ 55, 84, 97.

As these allegations illustrate, Plaintiffs' motion for summary judgment is proper; it does not add new claims or new theories of factual liability. *See, e.g., Trahanas v. Nw. Univ.*, No. 15 C 11192, 2020 WL 7641293, at *10 (N.D. Ill. Dec. 23, 2020) (Tharp, J.) (explaining that "plaintiffs are not required to plead legal theories" but "cannot add additional claims" or new factual theories of liability at summary judgment").[3]

---

[3] Even if Plaintiffs' motion for summary judgment arguably changed Plaintiffs' factual theory of liability (and it doesn't), denial of Plaintiffs' motion on that basis would still be inappropriate because Amazon does not "profess any undue surprise or prejudice" resulting from the purported changes. *Whitaker v. Milwaukee Cnty., Wisconsin*, 772 F.3d 802, 807–09 (7th Cir. 2014) (rejecting district court's conclusion that plaintiff had improperly attempted to amend her complaint through argument at summary judgment because plaintiffs' "new characterization[s]" did not "offer[ ] any unfair surprise"). Amazon has been on notice for at

**C. BIPA applies here because the face embeddings collected by Amazon Photos are biometric identifiers under the statute.**

Amazon contends that BIPA does not apply here because Amazon's "technology does ***not*** collect scans of an individual's face geometry" and "the technology does not and cannot identify an individual." Dkt. No. 226, Amazon's Opp'n 4. Amazon is wrong on both counts.[4]

**1. Face embeddings are biometric identifiers under BIPA because the unrefuted evidence shows that they are scans of face geometry.**

In their opening brief, Plaintiffs explain in detail why the face embeddings collected by Amazon's Face Processing Technology are biometric identifiers under BIPA. *See* Dkt. No. 187, Mem. of Law in Supp. of Pls.' Mot. for Summ. J. at 4–5 (citing cases showing that "the data that is used to generate face embeddings—and the information about the face that face embeddings represent—is similar, if not identical, to information that courts have ruled to be a scan of face geometry" (citations omitted)). Amazon asserts that those cases are "inapposite" because "Amazon Photos' image recognition technology did not and cannot identify anyone." Dkt. No. 226, Amazon's Opp'n 7. This is both false and

---

least *two years*—since Plaintiffs abandoned their claim under § 15(c) of BIPA in the related state action—that Plaintiffs' claims were not premised on the factual theory that Amazon was using Users' biometric data to train Rekognition.

[4] Amazon also suggests that this Court should deny Plaintiffs' motion because Amazon is unaware of any case "where a court ruled on summary judgment that image recognition technology for photos collected biometric identifiers" and "[t]his Court should not be the first." Dkt. No. 226, Amazon's Opp'n 7–8. But whether another court has previously issued such a ruling at summary judgment is immaterial. The Court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Howe v. Speedway LLC*, No. 1:19-CV-01374, 2024 WL 4346631, at *4 (N.D. Ill. Sept. 29, 2024) (explaining that whether the relevant captured data is a biometric identifier "is a question of statutory interpretation for the Court to decide, because no underlying constituent facts are disputed").

irrelevant. The image-recognition technology employed by Amazon Photos ███████
███████. *See* Pls.' Resp. to Amazon's ASF No. 10. But more importantly, the relevant

question ████████████████████████████████████

████████████████████████ *See infra* § II.C.2.

Amazon also fails to address the opinions of Plaintiffs' technical expert, Dr. Atif

Hashmi, that face embeddings *are* scans of face geometry. Specifically, Dr. Hashmi states,

among other things, that after reviewing Amazon source code, he has determined:



████████ Dkt. No. 188, Pls.' Statement of Material Facts Nos. 8–9 [hereinafter "Pls.'

SOMF"].

Dr. Hashmi's descriptions of what face embeddings are and how they are generated is

indistinguishable from the descriptions of data that courts have previously ruled constitute a

scan of face geometry. *See* Dkt. No. 187, Mem. of Law in Supp. of Pls.' Mot. for Summ. J.

at 5 (citing *Am. Civ. Liberties Union v. Clearview AI, Inc.*, No. 20 CH 4353, 2021WL 4164452,

at *1, *5 (Ill. Cir. Ct. Aug. 27, 2021); *Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 871 (N.D. Ill.

2022); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1171 (N.D. Cal. 2016)).

Amazon's own expert found no fault with the above opinions from Dr. Hashmi's

opening report. *See* Pls.' SOMF No. 8. In contending that a face embedding is not a scan of

face geometry, Amazon ignores its own expert's endorsement of Dr. Hashmi's analysis and

opinions, and instead offers one paragraph of argument and seven misplaced additional statements of fact. *See* Dkt. No. 226, Amazon's Opp'n 5 (citing additional statements of fact 2, 3, 4, 5, 6, 7, and 8, filed at Dkt. No. 226-1). As Plaintiffs' responses to these additional statements of fact show, Amazon's new statements do not support its argument because, among other things:

a. They present legal conclusions rather than factual statements. *See* Dkt. No. 226-1, Amazon's Additional Statement of Fact at No. 2 [hereinafter "Amazon's ASF"] (The embeddings generated by Amazon Photos' image recognition feature are not scans of face geometry . . . .); Pls.' Resp. to Amazon's ASF No. 2.

b. They rely on the untimely and inadmissible declaration of Canku Calargun, *see* Pls.' Resp. to Amazon's ASF Nos. 3, 4, 5, 6—a declaration in which Mr. Calargun directly contradicts his deposition testimony, *see supra* § II.A; Pls.' Resp. to Amazon's ASF No. 6.

c. All except one of the statements are irrelevant to the question whether a face embedding is a scan of face geometry.

d. The only additional statement that ostensibly speaks to the relevant issue—"[a]n embedding neither reveals ▮▮▮▮▮▮▮▮▮ nor ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ Dkt. No. 226, Amazon's ASF No. 3—is based on the untimely declaration of Mr. Calargun and the report of Amazon's expert Dr. Craig Arndt. But Mr. Calargun's declaration is inadmissible and Dr. Arndt's report cannot be credited because, among other things, it (1) is inconsistent with the opening report of Dr. Hashmi, which Dr. Arndt testified was accurate, and (2) Dr. Arndt is simply not qualified to render an opinion on this issue given that he is not an expert in the relevant technologies. *See* Dkt. No. 190, Pls.' Omnibus Mot. to Exclude the Test. of Defs.' Experts Under *Daubert* and the Fed. R. Evid. at 38–44; Pls.' Reply in Support of Their Omnibus Mot. to Exclude the Test. of Def.'s Experts Under *Daubert* and the Fed. R. of Evid. at 29–35.

In short, Dr. Hashmi's opinions regarding face embeddings are undisputed and those opinions support the conclusion that face embeddings are scans of face geometry.

**2. The face embeddings generated by Amazon's Face Processing Technology can be**

███████████████████████████████████████████████████████████████

Amazon contends that BIPA does not apply because "Amazon Photos' image recognition technology cannot identify an unknown person or otherwise determine a person's identity." Dkt. No. 226, Amazon's Opp'n 6. This assertion is false and misleading because the question—as Amazon has ██████████████ █ █████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████[6] The answer to this question is *yes*.

Dr. Hashmi explains several ways in which ████████████████████████

███████████████████████████████████ Dkt. No. 188, Pls.' SOMF

Nos. 26–28. Indeed, ████████████████████████████████████████

██████████████████████████████████████████████

---

[5] *See* Dkt. No. 194, Def.'s Mem. of Law in Supp. of Its Mot. for Summ. J. at 8–9 ("BIPA only applies to scans of face geometry that can be used to identify an individual . . . .").

[6] The entire premise behind Amazon's legal position on this point is incorrect because a scan of face geometry is a biometric identifier *regardless* of whether or not it can be used to identify anyone. *See* Dkt. No. 214, Pls.' Resp. in Opp'n to Amazon's Mot. for Summ. J. at 5–6 (citing *Wilk v. Brainshark, Inc.*, 631 F. Supp. 3d 522, 530 (N.D. Ill. 2022); *Sheppard v. Fantasia Trading LLC*, No. EDCV 23-2407 JGB (EX), 2024 WL 1916763, at *7 (C.D. Cal. Apr. 25, 2024); *Melzer v. Johnson & Johnson Consumer Inc.*, No. CV 22-3149 (MAS) (RLS), 2023 WL 3098633, at *3 (D.N.J. Apr. 26, 2023)). This is because BIPA's definition of the term "biometric identifier" (1) explicitly includes scans of face geometry and (2) does *not* include the requirement that scans of face geometry be "used to identify an individual," unlike BIPA's definition of the term "biometric *information*," which does contain this qualifier. *See* 740 ILCS 14/10 (defining "biometric identifier" and "biometric information").

Nonetheless, the issue whether face embeddings can be used to identify a person would be relevant if the Court disagrees with Plaintiffs and rules that a scan of face geometry is a biometric identifier only if it is capable of being used for that purpose. The Court need not resolve this question here, however, because—notwithstanding the parties' disagreement on the law—the unrefuted evidence in this case establishes ███████████████████ █████████████████████████████

████████████████████████████████████ *Id.* at No. 27.

██████████████████████████████████████████

██████████████████████████████████████

██████████████ *Id.*

Amazon's cited cases are inapplicable. *See* Dkt. No. 226, Amazon's Opp'n 5–6. Five of Amazon's six cited cases were decided at the pleading stage and the dismissals were without prejudice and with leave to replead. *See G.T. v. Samsung Elecs. Am. Inc.*, No. 21 CV 4976, 2024 WL 3520026, at *9 (N.D. Ill. July 24, 2024); *Clarke v. Aveda Corp.*, 704 F. Supp. 3d 863, 866 (N.D. Ill. 2023); *Martell v. X Corp.*, No. 23 C 5449, 2024 WL 3011353, at *5 (N.D. Ill. June 24, 2024); *Castelaz v. Estee Lauder Cos.*, No. 22 CV 5713, 2024 WL 136872, at *7 (N.D. Ill. Jan. 20, 2024); *Daichendt v. CVS Pharmacy, Inc.*, No. 22 CV 3318, 2023 WL 3579082, at *1 (N.D. Ill. Feb. 3, 2023). *Zellmer* does not help Amazon either; there, the Ninth Circuit recognized that "even if a company *does not* use face scans to identify a person, BIPA applies if it *could*[.]" *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1125 (9th Cir. 2024) (emphasis added).

Face embeddings generated by Amazon Photos are biometric identifiers.

**D. Amazon neither disclosed to Class Members that it was collecting their biometric data nor obtained informed consent from Class Members to do so.**

**1. Amazon did not inform Class Members that it was collecting their biometric identifiers or information.**

Amazon does not dispute the evidence showing that it failed to inform Non-Users that it collected and stored their biometric data. *See* Dkt. No. 226-1, Amazon's Resp. to Pls.' SOMF ¶ 51. Thus, Non-Users are entitled to summary judgment on their § 15(b) claim.

As to Users like Plaintiff Angela Hogan, Amazon does not dispute that none of Amazon's disclosures uses the terms "biometric," "biometric data," "biometric identifier," "biometric information," "scan of face geometry," "face embedding," or "facial recognition." *See* Dkt. No. 226-1, Amazon's Resp. to Pls.' SOMF Nos. 36–37, 47. Instead, Amazon continues to assert that vague and ambiguous terms like "image recognition features," "image recognition technology," "image recognition analysis," "image recognition data," and "data about the faces in the photos you store" satisfy the requirements of § 15(b)(1). Dkt. No. 226, Amazon's Opp'n 10–11. But these terms do not inform Users that Amazon collects biometric identifiers, nor are these terms defined in Amazon's disclosures or on any Amazon website that is available to the public. Dkt. No. 188, Pl.'s SOMF ¶¶ 35, 37, 50. Indeed, the Court has already ruled that Amazon's disclosure regarding its collection of "data about the faces" failed to provide notice to Plaintiffs: "The statement in the [Terms of Use] that Amazon retains data about the faces is not clear enough to notify a party that Amazon is collecting a biometric identifier." Dkt. No. 49, Mem. Op. and Order at 21.

Amazon argues that summary judgment in Plaintiffs' favor is not warranted because, despite the Court's prior ruling, it has now commissioned a *survey* for this litigation that "shows that 92% of hundreds of respondents who viewed Amazon Photos' disclosures believed that the image recognition feature collected their biometric data." Dkt. No. 26, Amazon's Opp'n 13.

As explained by Plaintiffs' expert Dr. Joseph Turow, Amazon's "survey is so overwhelmingly flawed that the results are entirely unreliable for reaching this conclusion." *See* Pls.' Resp. to Amazon's ASF No. 29. Amazon's own survey expert, Dr. Tülin Erdem,

conceded during her deposition that her results cannot be used to extrapolate whether Class Members read or understood Amazon's disclosures. *See id.*

Even if Amazon's survey was not deeply flawed (and it is), Amazon is still wrong to rely on it to try and create a dispute of fact because courts do not look to "survey evidence" to interpret terms in a contract. Indeed, the law review article that Amazon's survey expert relies on as a basis for conducting the survey notes that such use would be "a radical departure" from the norm.[7]

Amazon also argues that its disclosure need not include the terms "biometric," "scan of face geometry," "face embedding," or "facial recognition" because those words are not required "for a disclosure to comply with BIPA."[8] Dkt. No. 226, Amazon's Opp'n 11–12. But "[w]here a statute is clear and unambiguous . . . the court should not look to extrinsic aids for construction. The statute must be enforced as written, and a court may not depart from its plain language by reading into it exceptions, limitations, or conditions not expressed by the legislature." *Lawrence v. Regent Realty Grp., Inc.*, 754 N.E.2d 334, 339 (Ill. 2001). BIPA unambiguously provides that a private entity that obtains a person's biometric identifier or

---

[7] Omri Ben-Shahar & Lior Jacob Strahilevitz, *Interpreting Contracts Via Surveys and Experiments*, 92 N.Y.U. L. REV. 1753, 1753 (2017); *see also id.* at 1755–56 (noting that the "[t]he question of what a consumer contract means" is not determined by surveying representative consumers but rather by courts); *id.* at 1758 ("The survey interpretation method might appear to be a radical departure from the procedures governing existing contract litigation[.]"); *id.* at 1802 (same).

[8] Amazon relies on *Santana v. Take-Two Interactive Software, Inc.*, 717 F. App'x 12, 15–16 (2d Cir. 2017) in support of its argument that BIPA does not require particular words in disclosures and that Amazon's disclosures are sufficient. *Santana* is a non-precedential Second Circuit decision which concerns Article III standing and the Seventh Circuit has declined to follow *Santana*'s reasoning. *Bryant v. Compass Group USA, Inc.*, 958 F.3d 617, 623 (7th Cir. 2020). The decision is contrary to BIPA, which defines specific terms that must be disclosed.

biometric information must first "inform[ ] the subject or the subject's legally authorized representative in writing that *a biometric identifier or biometric information* is being collected or stored." 740 ILCS 14/15(b)(1) (emphasis added).

As explained above (*see* § C) and in Plaintiffs' opening brief, Amazon collected biometric identifiers (face embeddings) through its Amazon Photos service. BIPA therefore required Amazon to disclose in writing that it was collecting and storing Class Members' "biometric identifiers."[9] Amazon did not do so.

### 2. Amazon failed to inform Class Members of the specific purpose and length of term for which it was collecting, storing, and using their biometric data.

Amazon contends that it adequately disclosed the purpose of its collection of biometric identifiers, despite failing to disclose that ███████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████ Dkt. No. 226, Amazon's Opp'n 13; Dkt. No. 188, Pls.' SOMF No. 56. Amazon again contradicts the deposition testimony of Mr. Calargun—the manager of the Computer Vision Team at Amazon Photos—by asserting that ████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ ███████████ Dkt. No. 226, Amazon's Opp'n 13. This assertion is incorrect and nonsensical. Amazon contends that ██████████████████████████████████████████

---

[9] Amazon fails to address *any* of the case law cited in Plaintiffs' opening brief, which holds that courts decide, as a matter of law, whether a notice satisfies statutory requirements. Dkt. No. 187, Mem. of Law in Supp. of Pls.' Motion for Summ. J. at 7.



*See, e.g.*, Dkt. No. 188, Pls.' SOMF No. 8.

In short, Amazon offers no explanation why— ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ —Amazon did not ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Instead, Amazon ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[10]

Finally, Amazon points out that Amazon's File Retention Policy generally explains
that "files" in abandoned accounts—those that have not been active in the prior two years—
will be deleted. Dkt. No. 226, Amazon's Opp'n 14. But Amazon does not deny that this
Policy does not state that the term "files" applies to biometric information or identifiers.
Dkt. No. 189, Pls.' SOMF ¶ 58. Amazon instead contends that Plaintiffs "do[ ] not argue that
Amazon failed to comply with" the File Retention Policy, but that is incorrect. Dkt. No. 226,
Amazon's Opp'n 14. As Plaintiffs note: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. No. 188, Pls.' SOMF

No. 59. Amazon maintains that this statement from its *own document* is irrelevant and taken
out of context, but the evidence Amazon cites does not refute the document's point that

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*See* Dkt. No. 226, Amazon's Resp. to Pls.' SOMF No. 59. Accordingly, there is no genuine

---

[10] Regarding the specific length of term for which Amazon Photos stores biometric
identifiers, although Users were able to delete a photo stored in their Account, neither the
File Retention Policy nor any Amazon website informs Users whether their biometric data
are deleted along with the photo and, if so, when such data are deleted. Dkt. No. 188, Pl.'s
SOMF No. 60. Amazon fails to address this in its opposition brief, and the material that
Amazon cites in its responses to Plaintiffs' statement of facts does not refute Plaintiffs'
evidence on this point. Dkt. No. 226 1, Amazon's Resp. to Pls.' SOMF No. 60.

dispute that Amazon did not truthfully and adequately inform Plaintiffs or Class Members how long Amazon would maintain their biometric identifiers.

### 3. Amazon failed to obtain Plaintiffs' or Class Members' informed written consent.

Amazon contends that it obtained Ms. Hogan's informed written because she "agreed to the [Amazon] TOUs" when she registered her Fire Tablets and "toggled-on image recognition" that had a hyperlink to Notice to Illinois Residents. Dkt. No. 226, Amazon's Opp'n 14–15.[11] But as explained in Plaintiffs' opening brief, a person cannot give informed consent when they are provided with inadequate disclosures. Dkt. No. 187, Mem. of Law in Supp. of Pls.' Mot. for Summ. J. at 10. Amazon does not argue otherwise. Amazon's disclosures were inadequate for the reasons discussed above in § II.D.1, and the Notice to Illinois Users suffers the same defects (vague references to undefined terms). Dkt. No. 188, Pl.'s SOMF Nos. 44, 50–51.

Second, Amazon argues that it presented Ms. Hogan with these disclosures "in part, via hyperlink" and whether she read them is irrelevant because, "[u]nder Illinois law, a party's decision to read an agreement is not a defense to enforceability." Dkt. No. 226, Amazon's Opp'n 16. This argument conflates the standard that applies generally when analyzing the enforceability of online consumer contracts—and which is discussed in the cases that Amazon cites—with the standard that applies to obtaining *informed consent*.

---

[11] Amazon once again alleges that Plaintiff enabled image recognition days after speaking to counsel, to file this lawsuit. Amazon Mem. at 13–14. Amazon's assertions are false. The undisputed evidence demonstrates that image recognition was enabled for Ms. Hogan's account on January 4, 2020—16 months before this case was initiated. Dkt. No. 188, Pls.' SOMF No. 71. There is simply no evidence to suggest Ms. Hogan purposely toggled image recognition off and on again in order to bring claims against Amazon for BIPA violations, and—in fact—she consistently testified that she did not even know how to do so. *See* Ex. 37, Excerpts from Tr. of Dep. of Angela Hogan, at 29:11–19; 81:18–21; 138:19–22; 151:20–151:2; 188:18-20.

Amazon's use of what it characterizes as "clickwrap" agreements is not sufficient to obtain the informed written consent required by BIPA. While Defendants argue that the law review article cited by Plaintiff—which states that informed consent requires more than making notices available—is a "policy piece" that does not "describe controlling law," Amazon fails to articulate how the article departs from existing law on informed consent.[12] Nor does Amazon address the authority cited by Plaintiffs setting forth an informed-consent standard. *See* Dkt. No. 187, Mem. of Law in Supp. of Pls.' Mot. for Summ. J. 10–11,

Finally, Amazon fails to come forward with evidence demonstrating that any Class Member understood—or even read— its disclosures, or that ███████████████

████████████████████████████████████████████████

Dkt. No. 188, Pl.'s SOMF Nos. 33, 49. This precludes Amazon from obtaining informed

---

[12] "Informed written consent" is not defined in BIPA. Accordingly, the Court should give the term its popularly understood meaning. *Rosenbach v. Six Flags Ent. Corp.,* 129 N.E.3d 1197, 1205 (Ill. 2019) ("Where, as here, a statutory term is not defined, we assume the legislature intended for it to have its popularly understood meaning. Likewise, if a term has a settled legal meaning, the courts will normally infer that the legislature intended to incorporate that established meaning into the law."). The concept of informed consent is derived from medical-malpractice law and requires evidence that the subject evaluated the risks described in the notice, and that they consented to these risks. *See, e.g.*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/informed%20consent (accessed Jan. 24, 2025) (defining "informed consent" as "consent to surgery by a patient or to participation in a medical experiment by a subject after achieving an understanding of what is involved"); Black's Law Dictionary Eighth edition, (defining "informed consent" as "a person's agreement to allow something to happen, made with full knowledge of the risks involved and the alternatives"); 410 ILCS 305/3 (defining "informed consent" as "a process by which an individual or their legal representative receives pre-test information, has an opportunity to ask questions, and consents verbally or in writing to the test without undue inducement or any element of force, fraud, deceit, duress, or other form of constraint or coercion"); 21 C.F.R. § 813.66 (1993) (in connection with biomedical studies, defining "informed consent" as "the method of obtaining consent properly [that] informs the human subject of the significant aspects of the study in accordance with Part 50 of this chapter," which requires that "each subject be provided with the information").

*written* consent because ████████████████████████████████

████████████████ *See, e.g.*, *Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 884 (N.D. Ill. 2022)

("[BIPA's] 'in writing' requirement guarantees that there is a record of the required

disclosures and release should the consumer's biometric data later become compromised, or

some other dispute between the consumer and the collector arises."). Amazon does not

dispute that it did not even *attempt* to provide disclosures to or obtain informed written

consent from Non-Users. *See* Dkt. No. 226-1, Amazon's Resp. to Pls.' SOMF No. 51.

**E. Waiver and ratification are not valid defenses to BIPA claims.**

Contrary to Amazon's contentions, waiver and ratification are not legitimate defenses

to BIPA claims. *See Snider v. Heartland Beef, Inc.*, 479 F. Supp. 3d 762, 772 (C.D. Ill. 2020)

(explaining that "[t]he Court hesitated to read a common law defense [such as assumption of

the risk] into a statute [BIPA] that plainly appears to abrogate"—namely, by requiring notice

and obtaining informed consent); *Brandenberg v. Meridian Senior Living, LLC*, 564 F. Supp. 3d

627, 635 (C.D. Ill. 2021) (explaining that BIPA's "statutory language"—which requires

disclosure and informed consent—"makes clear that the assumption of the risk defense is not

available").

Neither the legislature nor the Illinois Supreme Court has left room for the notion that

a private entity may comply with BIPA through means, measures, or mechanisms other than

the obtainment of informed written consent from an individual before collecting biometric

identifiers and biometric information. *See People v. Reid*, 24 N.E.3d 70, 73 (Ill. App. Ct. 2014)

(waiver of constitutional or statutory right "is valid only when it is clear that there has been

an intentional relinquishment or abandonment of a known right" (citations omitted)). Equity

simply does not allow courts to ignore the statute's plain text and fashion a whole new

consent procedure such as "passive consent by conduct." *See Adams v. Emps. Ins. Co. of Wausau*, 49 N.E.3d 924, 929 (Ill. App. Ct. 2016).

Regardless, Amazon's suggestion that Ms. Hogan *first* enabled image recognition in 2021—days after speaking to counsel—in order to file a lawsuit is unsupported and false. The record evidence shows that image recognition was first enabled for Ms. Hogan's account on January 4, 2020—16 months before this lawsuit was filed. Dkt. No. 188, Pls.' SOMF No. 71.

The two cases Amazon cites in support of its argument severely miss the mark, as neither involves the application of waiver and ratification as affirmative defenses to statutory BIPA claims. Dkt. No. 226-1, Amazon's Opp'n 16–17. In *Anderson v. Holy See*, the court analyzed plaintiffs' waiver of the statutes of limitations and repose at the motion to dismiss stage in a sexual-assault case against Catholic priests. 878 F. Supp. 2d 923, 933 (N.D. Ill. 2012). And in *Toney v. Quality Res., Inc. et al.*, the court rejected plaintiff's argument that one defendant had ratified another's conduct by knowingly obtaining sales through unauthorized automated calls in violation of the TCPA, because plaintiff had failed to allege that she had done any business with the defendants as a result of the calls. 75 F. Supp. 3d 727, 745 (N.D. Ill. 2014). Amazon's arguments relying on concepts of waiver or ratification run contrary to the relevant case law and the intent of the Illinois legislature and must be rejected.

**F. The statutory damages in this case are set by BIPA and are not discretionary.**

Relying on dicta from the Illinois Supreme Court's decision in *Cothron v. White Castle Sys., Inc.*, 216 N.E.3d 918, 921 (Ill. 2023), Amazon insists that damages for BIPA violations are entirely discretionary. Dkt. No. 226, Amazon's Opp'n 17–18. Plaintiffs have already explained in their opening brief why this contention fails. Dkt. No. 187, Mem. of Law in Supp. of Pls.' Mot. for Summ. J. at 12–14.

Yet Amazon argues that statutory damages under BIPA must be discretionary because Plaintiffs have not cited case law to the contrary. Dkt. No. 226, Amazon's Opp'n 18. This argument misses the point. Statutory damages under BIPA are *not* discretionary because the Illinois legislature recently amended BIPA in response to the ruling in *Cothron* confirms that the *only* options for statutory damages are those specified in the statute—namely, $1,000 per Class Member for a negligent violation and $5,000 to each Class Member for an intentional or reckless violation. Dkt. No. 187, Mem. in Supp. of Pls.' Mot. for Summ. J. 13–14. That there may not yet be a decision that expressly states this proposition is not surprising given that the relevant BIPA amendment became law only nine months ago. Moreover, Amazon cites no case in which Plaintiffs' argument was raised and rejected.

Accordingly, the Court should apply BIPA as written and rule on summary judgment that the jury does not have the discretion to refuse to award statutory damages of any kind or otherwise modify the statutory amount awardable per violation expressly designated by statute.

## G. Each Non-User Class Member is each entitled to statutory damages of $5,000.

Section 20 of BIPA provides that "a private entity that intentionally or recklessly violates a provision of the Act" must pay the aggrieved party the greater of actual damages or liquidated damages of $5,000. 740 ILCS 14/20. The evidence shows that Amazon intentionally violated § 15(b) with respect to Non-Users by knowingly ███████████ ████████████████████ without informing them that it was doing so. Dkt. No. 188, Pls.' SOMF ¶ 51.

Amazon misrepresents the facts by stating that Plaintiff B.H. cannot show any BIPA violation and that his mother, Ms. Hogan, provided "informed written consent on his behalf,"

as his legally authorized representative when she purportedly accepted the Terms of Use and toggled on image recognition. This argument fails because Amazon's disclosures were inadequate, so Ms. Hogan could not have provided *informed* consent based on the alleged provided disclosures even if she had read them. *See supra* § II.D.3.

As for the Non-User Class, Amazon has made clear there was never an attempt to provide notice and obtain consent from Non-Users because, in Amazon's words, "that would frankly be impossible." Dkt. No. 188, Pls.' SOMF ¶ 54. But Amazon makes no attempt to explain why, if it is impossible to obtain consent from Non-Users—and therefore impossible for the Amazon Photos facial-recognition technology to comply with BIPA—Amazon didn't simply disable the facial-recognition features of Amazon Photos in Illinois. Amazon certainly had the capability to do so, as demonstrated by Amazon's disabling the facial-recognition features for Illinois accounts in January 2023, while this lawsuit was pending. Dkt. No. 188, Pls.' SOMF No. 77.

There is no question that Amazon's conduct was intentional or reckless as Amazon continued to ███████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████ Accordingly, each member of the Non-User Class is entitled to statutory damages of $5,000.

## III. CONCLUSION

Plaintiffs respectfully request that, for the foregoing reasons—as well as the reasons stated in Plaintiffs' opening brief—the Court grant Plaintiffs' motion for summary judgment.

Dated: February 7, 2025

Respectfully submitted,

 /s/ *Justin N. Boley*

Kenneth A. Wexler
Justin N. Boley
Zoran Tasić
Margaret Shadid
WEXLER BOLEY & ELGERSMA LLP
311 S. Wacker Dr., Suite 5450
Chicago, IL 60606
Tel: (312) 346-2222
Fax: (312) 346-0022
kaw@wbe-llp.com
jnb@wbe-llp.com
zt@wbe-llp.com
ms@wbe-llp.com

Daniel E. Gustafson
Karla M. Gluek
David A. Goodwin
GUSTAFSON GLUEK PLLC
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
kgluek@gustafsongluek.com
dgoodwin@gustafsongluek.com

Ryan F. Stephan
James B. Zouras
Catherine Mitchell Duffy
STEPHAN ZOURAS, LLC
222 W. Adams St., Suite 2020
Chicago, Illinois 60606
Tel: (312) 233-1550
Fax: (312) 233-1560
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com

Dean Kawamoto
Derek Loeser
Gretchen Freeman Cappio
Felicia Craick

– 21 –

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900
Fax: (206) 623-3384
dkawamoto@kellerrohrback.com
dloeser@kellerrohrback.com
gcappio@kellerrohrback.com
fcraick@kellerrohrback.com

Christopher L. Springer
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

Kevin Landau
Archana Tamoshunas
TAUS, CEBULASH & LANDAU, LLP
123 William St., Ste. 1900A
New York, NY 10038
Tel: (212) 931-0704
Fax: (212) 931-0703
klandau@tcllaw.com
atamoshunas@tcllaw.com

*Attorneys for Plaintiffs and
Proposed Class*