### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ANGELA HOGAN and B.H., a minor, by
and through his guardian Angela Hogan,
individually and on behalf of all others
similarly situated,

|                             |                          |
| --------------------------- | ------------------------ |
| Plaintiffs,                 | Case No. 21 C 3169       |
|                             |                          |
| *v.*                        | Judge John J. Tharp Jr.  |
|                             |                          |
| AMAZON.COM, INC.,           | **REDACTED**             |
|                             |                          |
| Defendant.                  |                          |

### PLAINTIFFS' REPLY IN SUPPORT OF THEIR OMNIBUS MOTION TO
### EXCLUDE THE TESTIMONY OF DEFENDANT'S EXPERTS
### UNDER *DAUBERT* AND THE FEDERAL RULES OF EVIDENCE

**Table of Contents**

I. Introduction...........................................................................................................1

II. Argument .............................................................................................................1

    A. Dr. Siegel's testimony should be excluded in its entirety. ...........................1

        1. Plaintiffs' *Daubert* motion is distinct from Plaintiffs' motion to exclude
           Dr. Siegel's opinions as based on untimely evidence. ..........................1

        2. As evidenced by Amazon's own filings, Dr. Siegel's opinions are
           irrelevant. .............................................................................................2

        3. Dr. Siegel's testimony is inherently unreliable and improperly serves as a
           conduit for spoon-fed facts and assertions by Amazon's counsel......................3

        4. Amazon's arguments regarding expert interviews of undisclosed
           witnesses and working with assistants are unavailing. ........................5

    B. Professor Schwartz's testimony should be excluded as improperly offered
       legal opinions...............................................................................................7

    C. Margaret Daley's testimony should be excluded because it is irrelevant and
       lacking a legitimate basis. ............................................................................9

    D. Dr. Erdem's testimony should be excluded in its entirety because it is
       irrelevant to the case, based on unreliable methodology, and likely to confuse
       the jury. .......................................................................................................13

        1. Dr. Erdem's survey does not speak to any legally relevant issue in this
           case. ....................................................................................................13

        2. Dr. Erdem's methodology is flawed and unreliable. .........................16

    E. Dr. Lambrecht's testimony should be excluded because it is irrelevant and
       fails to rebut the testimony of Plaintiffs' expert Prof. Neil Richards......................19

    F. Dr. Rossi's testimony should be excluded in its entirety.........................22

        1. Dr. Rossi's testimony rests on a flawed premise and is unhelpful to the
           Court or the trier of fact. .....................................................................22

        2. Dr. Rossi's opinions are irrelevant and unhelpful given that Plaintiffs are
           seeking only statutory damages. ........................................................23

        3. Amazon's citations of inapposite non-class cases regarding the
           Copyright Act and trademark violations demonstrate the irrelevance of
           Dr. Rossi's testimony...........................................................................25

        4. Plaintiffs properly seek to exclude all of Dr. Rossi's testimony. ......................27

G. The Court should grant Plaintiffs' motion to exclude the opinions and testimony of Mr. Schnell. ..................................................................28

H. Dr. Arndt's opinions should be excluded because they consist of improper legal conclusions, are irrelevant, and are ones that he is unqualified to offer. .........29

    1. Dr. Arndt's opinion that face embeddings are not scans of face geometry is an improper legal conclusion—one that is unreliable and that he is unqualified to offer. .......................................................................30

    2. Dr. Arndt presents no analysis of whether the face embeddings generated by Amazon Photos can be used to identify a person— ███████ ..........................................33

III. Conclusion ....................................................................................35

## Table of Authorities

**Cases**

*Am. Civ. Liberties Union v. Clearview AI, Inc.*,
No. 20 CH 4353, 2021 WL 4164452 (Ill. Cir. Ct. Aug. 27, 2021)....................................32

*Anand v. Heath,*
No. 19 CV 00016, 2019 WL 276213 (N.D. Ill. June 28, 2019) .................................. 15, 16

*Baker v. Firstcom Music*,
No. 16-cv-08931, 2018 WL 2676636 (C.D. Cal. May 8, 2018)..........................................3

*Baxter Int'l v. McGaw, Inc.*,
No. 95-cv-2723, 1996 WL 145778 (N.D. Ill. Mar. 27, 1996)..............................................5

*Bell v. DiamondIndyLimo.com*,
No. 1:13-CV-00035-TWP, 2014 WL 2747578 (S.D. Ind. June 17, 2014)........................26

*Brown v. Murphy*,
664 N.E.2d 186 (Ill. App. Ct. 1996) ..............................................................................16

*Bryant v. Compass Group USA, Inc.*,
958 F.3d 617 (7th Cir. 2020)..........................................................................................14

*Burton v. Bd. of Regents of Univ. of Wis. Sys.*,
818 F. App'x 564 (7th Cir. 2020) .....................................................................................2

*City of Rockford v. Mallinckrodt ARD, Inc.*,
No. 3:17-CV-50107, 2024 WL 1363544 (N.D. Ill. Mar. 29, 2024)..................................23

*Coach, Inc. v. Treasure Box, Inc.*,
No. 3:11CV468-PPS, 2014 WL 888902 (N.D. Ind. Mar. 6, 2014)..................................26

*Cothron v. White Castle Sys., Inc.*,
20 F.4th 1156 (7th Cir. 2021)..........................................................................................22

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ....................................................................................1, 10, 13, 35

*Dolmage v. Combined Ins. Co. of Am.*,
No. 14 C 3809, 2017 WL 1754772 (N.D. Ill. May 3, 2017)............................................21

*In re Facebook Biometric Info. Priv. Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016).........................................................................32

*In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*,
No. 14-CV-5696, 2017 WL 1196990 (N.D. Ill. Mar. 31, 2017) .......................................21

*In Re Lamictal Direct Purchaser Antitrust Litig.,*
No. 2:12-CV-0995-WHW-CLW, 2018 WL 11413414 (D.N.J. Sept. 20, 2018) .................6

*Inline Connection Corp. v. AOL Time Warner Inc.,*
470 F. Supp. 2d 435 (D. Del. 2007) ...................................................................................5

*Intel Corp. v. Future Link Sys., LLC,*
No. CV 14-377-LP, 2017 WL 2482881 (D. Del. June 1, 2017) ..........................................5

*Jimenez v. City of Chicago,*
732 F.3d 710 (7th Cir. 2013) ..............................................................................................7

*Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.,*
735 F.3d 735 (7th Cir. 2013) ............................................................................................17

*Loeffel Steel Prod., Inc. v. Delta Brands, Inc.,*
387 F. Supp. 2d 794 (N.D. Ill. 2005) ...............................................................................22

*Lyman v. St. Jude Med. S.C., Inc.,*
580 F. Supp. 2d 719 (E.D. Wis. 2008) ...............................................................................5

*Maclin v. N. Telecom, Inc.,*
No. 95 C 7485, 1999 WL 787620 (N.D. Ill. Sept. 24, 1999) ..............................................2

*Manpower, Inc. v. Ins. Co. of Pennsylvania,*
732 F.3d 796 (7th Cir. 2013) ..............................................................................................6

*Mullins v. Direct Digital, LLC,*
795 F.3d 654 (7th Cir. 2015) ....................................................................................... 11, 12

*Prac. Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.,*
301 F. Supp. 3d 840 (N.D. Ill. 2018) ...............................................................................12

*Santana v. Take-Two Interactive Software, Inc.,*
717 F. App'x 12 (2d Cir. 2017) .........................................................................................14

*Sears, Roebuck & Co. v. Menard, Inc.,*
No. 01 C 9843, 2003 WL 168642 (N.D. Ill. Jan. 24, 2003) .............................................17

*Shefts v. Petrakis,*
No. 10-CV-1104, 2013 WL 655695 (C.D. Ill. Feb. 21, 2013) ..........................................26

*Smith v. Ford Motor Co.,*
215 F.3d 713 (7th Cir. 2000) ....................................................................................... 10, 11

*Sosa v. Onfido, Inc.,*
600 F. Supp. 3d 859 (N.D. Ill. 2022) ...............................................................................32

*Spectrum Brands, Inc. v. I&J Apparel, LLC*,
   No. 16-CV-741-JDP, 2017 WL 2303577 (W.D. Wis. May 26, 2017) ...........................26

*Stollings v. Ryobi Techs., Inc.*,
   725 F.3d 753 (7th Cir. 2013) ................................................................... 11, 21

*Sullivan v. Flora, Inc.*,
   63 F.4th 1130 (7th Cir. 2023) ...............................................................................23

*Svoboda v. Amazon.com, Inc.*,
   No. 21 C 5336, 2024 WL 1363718  (N.D. Ill. Mar. 30, 2024) .................................. 24, 25

*Tapia-Rendon v. United Tape & Finishing Co.*,
   No. 21 C 3400, 2023 WL 5228178 (N.D. Ill. Aug. 15, 2023) .............................24, 25, 27

*Toney v. Quality Res., Inc.*,
   323 F.R.D. 567 (N. D. Ill. 2018) .......................................................................... 11, 12

*U.S. EEOC v. Rockwell Intl'l Corp.*,
   60 F. Supp. 2d 791 (N.D. Ill. 1999) .......................................................................5

*Zollicoffer v. Gold Standard Baking, Inc.*,
   335 F.R.D. 126 (N.D. Ill. 2020) ...........................................................................6

**Statutes**

15 U.S.C. § 1114 ...............................................................................................26

15 U.S.C. § 1117(c) ..........................................................................................26

17 U.S.C. § 504(c)(1)–(2) .................................................................................25

740 ILCS 14/10 ......................................................................................... 14, 32

740 ILCS 14/15(b) .................................................................................. passim

740 ILCS 14/15(e) ...........................................................................................2, 3

740 ILCS 14/20(a)(1)–(2) ............................................................................ 25, 26

740 ILCS 14/20(b) .............................................................................................19

**Rules**

Fed. R. Civ. P. 23(b)(3)....................................................................................10

Fed. R. Evid. 702 ...................................................................................... 1, 10, 35

Fed. R. Evid. 703 ..............................................................................................35

**Other Authorities**

BLACK'S LAW DICTIONARY (8th ed.).....................................................................16

Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 B.U.L. Rev. 593 (2024)...................................................................16

*Manual for Complex Litigation*, Fourth, § 11.493 ................................................17

# I.    INTRODUCTION

Amazon has sought to flood the zone with its expert reports—eight in total. As demonstrated by Plaintiffs' *Daubert* motion, the opinions of Amazon's proposed experts are opinions that the experts are unqualified to give; opinions that are irrelevant, unsupported, or misleading; opinions that rely on an unsound methodology; opinions that are nothing more than impermissible legal conclusions; or opinions which are deficient in *all* of the ways listed above.

Amazon's response to Plaintiffs' omnibus *Daubert* motion fails to adequately address these myriad problems with the opinions of Amazon's proposed experts. Accordingly, Plaintiffs respectfully request that the Court limit or exclude entirely the testimony of each of those eight experts under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702.

# II.    ARGUMENT

## A.  Dr. Siegel's testimony should be excluded in its entirety.

### 1.  Plaintiffs' *Daubert* motion is distinct from Plaintiffs' motion to exclude Dr. Siegel's opinions as based on untimely evidence.

Amazon raises the spurious argument that Plaintiffs' motion to exclude Dr. Siegel's testimony should be denied because it is duplicative of a previously filed motion. Dkt. No. 227, Def.'s Opp'n to Pls.' Omnibus *Daubert* Mot. to Exclude Test. of Defs.' Experts at 2 [hereinafter "Amazon's Opp'n"] (citing Dkt. No. 157, Pls.' Mot. to Exclude Untimely Evid. and Related Ops. of Amazon's Experts). But Plaintiffs' prior motion seeks to exclude Dr. Siegel's testimony because it was based on untimely evidence that was improperly introduced after the close of fact discovery, whereas the present motion seeks exclusion under *Daubert* and Federal Rule of Evidence 702. As such, these motions are based on different

legal theories that are subject to discrete legal standards and reflect distinct, independent reasons why Dr. Siegel's testimony should be excluded. The contention that these motions are duplicative of one another is disingenuous, and the cases Amazon cites are inapposite.[1]

### 2. As evidenced by Amazon's own filings, Dr. Siegel's opinions are irrelevant.

It is apparent from Amazon's briefing on class certification, summary judgment, and *Daubert* motions that Dr. Siegel's testimony is irrelevant to this action. In opposing class certification, Amazon cites Dr. Siegel's report only once, in support of a proposition that has nothing to do with his proposed opinions.[2] And Amazon has failed to even mention Dr. Siegel in its summary judgment filings. Moreover, although his opinions are purportedly offered in "rebuttal" to Plaintiffs' proposed experts Dr. Hashmi and Prof. Richards, Amazon does not mention Dr. Siegel in either its motion to exclude certain testimony of Dr. Hashmi (Dkt. No. 196) or its motion to exclude the testimony of Prof. Richards (Dkt. No. 197). The reason for this is readily apparent: as Amazon acknowledges, Dr. Siegel's opinions relate to the security of "the ***storage*** of biometric data," Dkt. No. 227, Amazon's Opp'n 2 (emphasis added), whereas Plaintiffs' claim under BIPA Section 15(b) pertains to Amazon's ***collection*** of biometric information without notice or informed consent.[3]

---

[1] *See Burton v. Bd. of Regents of Univ. of Wis. Sys.,* 818 F. App'x 564, 565 (7th Cir. 2020) (litigant made three attempts to set aside judgment for the same reason); *Maclin v. N. Telecom, Inc.,* No. 95 C 7485, 1999 WL 787620, at *1 (N.D. Ill. Sept. 24, 1999) (litigant filed a second motion for summary judgment that sought "to relitigate issues that had already been resolved").

[2] *See* Dkt. No. 141, Def. Amazon.com, Inc.'s Opp'n to Pls.' Mot. for Class Certification at 3 (citing Siegel report in support of the statement that "Amazon Photos is a free, secure, online storage system for photos and videos").

[3] *See* 740 ILCS 14/15(b) (it is unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information" without informed consent). In contrast, § 15(e) of BIPA—the subject of Plaintiffs' related state court action—relates to the "***stor[age]***, transmi[ssion], and protect[ion]

Although Plaintiffs did not obtain fact discovery in this action action regarding Amazon's data security practices—because Amazon refused to produce such discovery[4]— Amazon argues now that it is entitled to introduce evidence about its data security through Dr. Siegel because Plaintiffs' experts purportedly "injected security into this case." Dkt. No. 227, Amazon's Opp'n 4. But as Plaintiffs have explained, "[n]either Prof. Richards nor Dr. Hashmi offer expert opinions on the specific data security of Amazon Photos; they passingly reference 'data security' in very generalized terms." Dkt. No. 190, Pls.' Omnibus Mot. to Exclude the Test. of Def.'s Experts Under *Daubert* and the Fed. R. Evid. at 4 [hereinafter "Pls.' *Daubert* Mot."]. In this regard, Amazon's only purported basis for its assertion that "Plaintiffs' experts injected security into this case" (Dkt. No. 227, Amazon's Opp'n 4) are portions of Dr. Hashmi's and Dr. Richards's reports that reference data security in general terms that are not specific to Amazon. *See* Dkt. No. 190, Pls.' *Daubert* Mot. 4 & n.1. Tellingly, Amazon does not even attempt to refute Plaintiffs' argument in this regard.

3. **Dr. Siegel's testimony is inherently unreliable and improperly serves as a conduit for spoon-fed facts and assertions by Amazon's counsel.**

Dr. Siegel's testimony is unreliable because he failed to "verify the reliability of the data underlying [his] conclusions independently instead of simply adopting the representations of an interested party." *See Baker v. Firstcom Music*, No. 16-cv-08931, 2018 WL 2676636, at *2 (C.D. Cal. May 8, 2018) (citation omitted). Dr. Siegel testified that, with respect to the interviews he conducted, he simply "accepted as true the statements of Amazon

---

from disclosure" of biometric identifiers and biometric information. 740 ILCS 14/15(e) (emphasis added).

[4] *See, e.g.*, Dkt. No. 157, Pls.' Mot. to Exclude Untimely Evid. and Related Ops. of Amazon's Experts at 9.

Photos employees and AWS employees" without requiring any documents supporting those statements. Dkt. No. 190-1, Ex. J – Excerpts from Tr. of Dep. of Michael D. Siegel 157:2–10, 162:16–163:9, 163:21–25 [hereinafter "Siegel Dep."]. Likewise, Amazon's counsel appear to have prepared the questions that were asked during the interviews, as Amazon's counsel instructed Dr. Siegel not to reveal who prepared the questions that were asked during these interviews on the basis of attorney work product. *See id.* at 244:13–21.

Amazon argues that Dr. Siegel's purported review of ███████████████ ███████ and interviews of ████████████ reflects "the opposite of a report based on 'spoon-[fed]' and 'lawyer-orchestrated facts.'" Dkt. No. 227, Amazon's Opp'n 5. But the volume of information that Dr. Siegel purportedly reviewed has no bearing on whether that information was spoon-fed by counsel—and Amazon does not even attempt to argue that Dr. Siegel played a meaningful role in selecting the information that he reviewed.

Moreover, Dr. Siegel's opinions are unreliable because Amazon's counsel not only spoon-fed him information but also appear to have played a significant role in drafting his report. For instance, Dr. Siegel testified that, despite his admittedly "bad memory for these names and meetings," he didn't take any notes from the interviews that he conducted, nor did he review any such notes. *See* Dkt. No. 190-1, Ex. J – Siegel Dep. 87:24–88:9, 101:4–22. Yet those interviews are cited more than 65 times in support of detailed factual assertions in the Siegel Report. When Plaintiffs questioned the discrepancy between Dr. Siegel's admittedly "bad memory" of the interviews and his detailed citations of those interviews, Amazon's counsel instructed him not to answer on the basis of attorney work product. *See id.* at 241:24–242:3, 247:23–248:7 (objecting to question "Who verified the accuracy of

the citations of the interviews in your report?"). Dr. Siegel also admitted that he "wouldn't know for sure" whether Amazon's counsel drafted any part of his report. *Id.* at 239:16–240:3.

As such, Plaintiffs do not merely challenge "the thoroughness of Siegel's review," as Amazon misleadingly asserts to suggest that Plaintiffs' arguments "go to the weight, not admissibility, of his testimony." *See* Dkt. No. 227, Amazon's Opp'n 5. Instead, the exclusion of Dr. Siegel's testimony is warranted here because Dr. Siegel "did not independently prepare his expert report, allowing himself to be a 'mouthpiece' for [the opposing party's] attorneys." *Baxter Int'l v. McGaw, Inc.*, No. 95-cv-2723, 1996 WL 145778, at *4 (N.D. Ill. Mar. 27, 1996); *see also U.S. EEOC v. Rockwell Intl'l Corp.*, 60 F. Supp. 2d 791, 797 (N.D. Ill. 1999) (excluding expert who allowed opposing party's counsel to draft significant portion of his report); *Lyman v. St. Jude Med. S.C., Inc.*, 580 F. Supp. 2d 719, 726–27 (E.D. Wis. 2008) (excluding expert who failed to verify reliability of data and merely accepted assurances from counsel).

### 4. Amazon's arguments regarding expert interviews of undisclosed witnesses and working with assistants are unavailing.

The few out-of-circuit cases that Amazon cites in support of its assertion that "[c]ourts routinely deny motions to strike experts' opinions based on interviews of previously undisclosed witnesses" are inapplicable to the facts at issue here—and in fact demonstrate that experts may rely on such evidence only in rare circumstances. In *Inline Connection Corp. v. AOL Time Warner Inc.,* 470 F. Supp. 2d 435, 441–42 (D. Del. 2007), the party seeking exclusion had the opportunity during fact discovery to depose employees about the information at issue in the expert report, whereas here Amazon denied Plaintiffs discovery into its cybersecurity practices. Similarly, in *Intel Corp. v. Future Link Sys., LLC,* No. CV 14-377-LP, 2017 WL 2482881, at *5 (D. Del. June 1, 2017), the challenged expert "supported his opinions independent of any information he may have derived" from the

– 5 –

employees he interviewed, whereas Dr. Siegel's report contains more than 65 instances in which interviews with undisclosed witnesses are the *only* sources cited in support of specific factual assertions. And in *In Re Lamictal Direct* Purchaser *Antitrust Litig.,* No. 2:12-CV-0995-WHW-CLW, 2018 WL 11413414, at *2–3 (D.N.J. Sept. 20, 2018), the witness at issue was previously disclosed because his relevant work at the company began "'two years after the agreed upon window for discovery'" and was identified only later because the opposing party's expert had relied on facts that were "'outside the discovery time period.'" Here, no such facts are at issue.

Likewise, the cases cited by Amazon in support of its proposition that it is not "unusual or untoward" for an expert to "work[ ] with a team under his direction to prepare a report" bear no resemblance to the facts at issue here. Dkt. No. 227, Amazon's Opp'n 7. For instance, in *Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 809–10 (7th Cir. 2013), the Seventh Circuit dismissed a minor argument that an expert "unduly relied upon a French-speaking associate to understand . . . expenses and other reports," finding "nothing remarkable about a paid expert preparing a report with the assistance of staff, especially when interpretation of foreign documents is required." And in *Zollicoffer v. Gold Standard Baking, Inc.*, 335 F.R.D. 126, 149 (N.D. Ill. 2020), the court considered an expert's reliance on a consultant "to do coding work" and perform certain calculations, determining that "[e]xperts can rely on assistants to formulate an opinion."

Plaintiffs do not argue that there are *no* rare circumstances under which it might be appropriate for an expert to rely on interviews of previously undisclosed witnesses or that an expert may not rely on assistants. Rather, Plaintiffs argue that, under the facts at issue here, there is no justification for Dr. Siegel's reliance on the testimony of previously undisclosed

witnesses. Moreover, Dr. Siegel did not "work[ ] with a team under his direction" as Amazon asserts. Dkt. No. 227, Amazon's Opp'n 7. Rather, Dr. Siegel appears to have worked under the direction of a team led by Amazon's counsel, who appear to have spoon-fed him information, orchestrated and scripted interviews, and drafted significant portions of his expert report while denying Plaintiffs the documents, time, and opportunity to contest the proffered evidence. As such, Dr. Siegel's testimony should be excluded in its entirety.

## B. Professor Schwartz's testimony should be excluded as improperly offered legal opinions.

Amazon does not seriously dispute that Prof. Schwartz offers legal opinions. Instead, of the roughly three pages it spends defending these opinions, Amazon spends two pages describing Prof. Schwartz's qualifications. Dkt. No. 227, Amazon's Opp'n 8–9. But Plaintiffs don't contest Prof. Schwartz's qualifications generally; rather, Plaintiffs argue that Prof. Schwartz is prohibited from offering legal opinions because only the Court can explain the law to the jury. *See, e.g., Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) ("It is the role of the judge, not an expert witness, to instruct the jury on the applicable principles of law, and it is the role of the jury to apply those principles of law to the facts in evidence.").

In the remainder of its brief, Amazon essentially concedes that the statements contained in paragraphs 5, 97, 98, 107, and 120 of Prof. Schwartz's report are legal opinions, although Amazon seeks to limit the damage stemming from this concession.
*See* Dkt. No. 227, Amazon's Opp'n 8 (conceding that these paragraphs "might be construed as legal"). Specifically, Amazon argues that the *remainder* of the paragraphs that Plaintiffs identified in their opening brief are not legal opinions and should not be excluded.
*Id.* at 9–10. But many of these paragraphs *also* contain legal opinions, or they provide the foundation for other admittedly legal opinions contained in Prof. Schwartz's report.

For example, Amazon describes the opinions in paragraphs 85 through 93 of Prof. Schwartz's report as being about how privacy policies favor consumer choice, but this section also provides Prof. Schwartz's legal analysis to explain how he believes BIPA should be interpreted in light of these policies and his legal analysis. *See, e.g.*, Dkt. No. 190-1, Ex. B – Expert Report of Professor Paul Schwartz ¶ 86 [hereinafter "Schwartz Report"] ("[I]n the United States, the law generally does not block or forbid technologies. It regulates technologies as is necessary."); *id.* ¶ 87 ("U.S. law generally envisions a 'privacy consumer.' The privacy consumer of the United States can choose to participate in a series of free exchanges of her personal data, or not."); *id.* ¶ 93 ("In Illinois, and in BIPA, this policy is reflected in a statute that generally allows consumers to opt-in to using a wide variety of digital technology that they desire.").

Amazon also incorrectly characterizes paragraphs 99 through 107 of the Schwartz report as merely describing how Prof. Richards analyzed Amazon's disclosures. These paragraphs largely critique segments of an article that Prof. Richards wrote, which Prof. Schwartz concedes is *not* incorporated into his report, and which is all a lead up to Prof. Schwartz's interpretation of BIPA's consent process. *Id.* ¶ 107 (stating that differences between privacy scholars "should not be the point here. Rather, it is what BIPA requires . . . BIPA provides a largely unspecified consent process").

Moreover—and contrary to Amazon's assertion—paragraphs 108 through 119 of Prof. Schwartz's report *do* contain his legal opinions, including opinions about how consumers can consent to contracts as a legal matter. *See, e.g.*, *id.* ¶ 115 (opining that click-wrap agreements are "sufficient to be a binding a contract under applicable law"); *id.* ¶ 116 (citing and interpreting the Restatement of Law, Consumer Contracts to support his

opinion about consent to click-wrap agreements); *id.* ¶ 117 (offering opinion that "the law is not generally concerned with the subjective requirements of individuals"); *id.* ¶ 118 (offering opinion that "consent should be reasonable based on consideration of the technology at issue").

Amazon also characterizes the opinions in paragraphs 133 through 145 of Prof. Schwartz's report as being about balancing interests, but Amazon never mentions that the basis for those opinions is Prof. Schwartz's legal analysis. *See, e.g.*, Dkt. No. 190-1, Ex. B – Schwartz Report ¶ 134 ("[P]rivacy law has long contemplated trade-offs and balancing and denied the existence of harm in many instances."); *id.* ¶ 139 ("A data processor in the United States . . . does not, however, require a 'legal basis' in the European legal sense before collecting and processing personal data.").

Finally, as to the opinions that Amazon concedes are legal opinions (Dkt. No. 190-1, Ex. B – Schwartz Report ¶¶ 5, 97–98, 107, 120), Amazon argues that Prof. Schwartz should be allowed to offer them to respond to Prof. Richards's opinions. Dkt. No. 227, Amazon's Opp'n 10. But Amazon cites no authority for the proposition that an expert can offer a legal opinion—and usurp the Court's role—in order to respond to another expert's opinions.

The legal opinions contained in paragraphs 5 and 85 through 132 of Professor Schwartz's report should therefore be excluded.

## C. Margaret Daley's testimony should be excluded because it is irrelevant and lacking a legitimate basis.

Amazon oddly argues that Plaintiffs have already sought to exclude portions of Ms. Daley's expert report in Plaintiffs' Motion to Exclude Untimely Evidence and Related Opinions of Amazon's Experts (Dkt. 160), and that any new arguments made in Plaintiffs' *Daubert* motion are waived. Dkt. No. 227, Amazon's Opp'n 11. This argument is a red

herring. After Amazon submitted new evidence and declarations with its opposition to class certification, Plaintiffs moved to exclude those portions of Ms. Daley's expert report where she admitted at deposition that her opinion was based on this new evidence and declarations from experts that had not been disclosed before Amazon's opposition filing. Doing so certainly did not waive Plaintiffs' right to have Ms. Daley's testimony excluded pursuant to *Daubert* and Federal Rule of Evidence 702. *See supra* § II.A.1.

Amazon contends that Ms. Daley's opinion as to "whether it is possible to identify potential Class Members absent individual inquiry" is relevant and must be included because it will "assist the court in determining key fact[s] at issue in the case." Dkt. No. 227, Amazon's Opp'n 12 (citing *Smith v. Ford Motor Co.*, 215 F.3d 713, 721 (7th Cir. 2000) (internal citations omitted)). According to Amazon, the "key facts" clarified by Ms. Daley's opinions relate to the practicability of identifying Class Members. *Id.* However, as Plaintiffs explain in their opening *Daubert* brief, "[t]he Seventh Circuit has unequivocally rejected the argument that plaintiffs must provide a methodology for identifying class members at the class-certification stage." Dkt. No. 190, Pls.' *Daubert* Mot. 19 (citation omitted)

Courts in the Seventh Circuit likewise are directed to refrain from conducting an "examin[ation] [of] the potential difficulty of identifying particular members of the class," or to "evaluat[e] the validity of claims [class members] might eventually submit," where a denial of class certification on these bases would "upset th[e] balance" sought by Federal Rule of Civil Procedure 23(b)(3)'s ascertainability requirement by "giv[ing] one factor in the balance absolute priority, with the effect of barring class actions where class treatment is often most needed: in cases involving relatively *low-cost goods or services*, where *consumers are*

*unlikely to have documentary proof of purchase.*" *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658 (7th Cir. 2015) (emphasis added).

This action is precisely the type of case described in *Mullins,* in which class treatment is most needed: Class Members are unlikely to have any accessible record reflecting whether and when Amazon's facial recognition feature was enabled within their account during the relevant time period. Dkt. No. 141, Def. Amazon.com, Inc.'s Opp'n to Pls.' Mot. for Class Certification at 1 ██████████████████████████████████ ████████████████████████████████████████████████████ ████████████████; Ex. Z, Excerpts from Tr. of Dep. of Stacie Buckingham 179:4–6 (testifying that, ████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████); Ex. AA, Excerpts from Tr. of Dep. of Angela Hogan 74:16–19 (testifying that she does not know when or whether Amazon ever disabled the facial recognition technology within her account). Thus, Ms. Daley's "expert" testimony about the impracticability of identifying Class Members should not be considered.

In addition to directing the Court to its sur-reply in opposition to class certification, Amazon offers four cases in support of its argument that *Mullins* does not render Ms. Daley's opinion irrelevant to the issue of class certification. Dkt. No. 227, Amazon's Opp'n 12–13. But the cited cases—*Smith v. Ford Motor Co.*, 215 F.3d 713 (7th Cir. 2000), and *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753 (7th Cir. 2013)—were decided before the Seventh Circuit's opinion in *Mullins* and therefore are immaterial to both ascertainability and the relevance of an expert opinion which bears solely on the feasibility of identifying potential class members *after* certification. *Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 582 (2018).

– 11 –

One of Amazon's two remaining cases undermines the argument Amazon advances, stating:

> The *Mullins* court made clear that class member identification issues [ ] must be assessed in the context of "the likely difficulties of managing a class action" prong of the superiority requirement, which involves a relative assessment of the "costs *and benefits* of the class device." And the *Mullins* court explained that manageability is almost never a bar to class certification.

*Prac. Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 857-59 (N.D. Ill. 2018) (emphasis in original) (granting class certification in a TCPA case alleging Amazon unlawfully sent faxes to Plaintiff and the class members where the plaintiff set forth "a starting point for identifying potential class members" rather than a precise methodology, rejecting defendant's argument that the absence of fax transmission records which could have been used to verify potential class members' claims rendered the class unmanageable, and explaining that "a contrary holding denying class certification based on the absence of records would create perverse incentives").

The final case cited by Amazon is likewise inapplicable. In *Toney v. Quality Res., Inc.*, the plaintiff alleged that the defendants illegally called her and the potential class members in violation of the TPCA. 323 F.R.D. 567, 572 (N.D. Ill. 2018). The court declined to exclude the *plaintiff's* expert, explicitly rejecting the defendants' argument that the "proposed class is not ascertainable because [the plaintiff's] expert . . . fails to reliably identify the persons" encompassed by the plaintiff's class definition. *Id.* at 577, 580. The Court instead granted the plaintiff's motion for class certification, noting that, "if [the plaintiff] and class counsel cannot, down the road, propose a feasible solution for managing the litigation or for identifying and providing notice to class members, Defendants can move to decertify the class." *Id.* at 593.

Amazon fails to cite any authority in support of its argument that Ms. Daley's opinion regarding the feasibility of identifying Class Members is relevant to class certification. Since Ms. Daley's opinion bears no relevance to any issue that is properly before the Court, it must be excluded.

**D. Dr. Erdem's testimony should be excluded in its entirety because it is irrelevant to the case, based on unreliable methodology, and likely to confuse the jury.**

Amazon should not be permitted to rely on the unreliable survey and opinions of Dr. Tülin Erdem to argue to the trier of fact that the "large majority of respondents asked believe that Amazon collects biometric data when image recognition features are enabled" and that adding the phrase "biometric data (a scan of face geometry from the photos)" to Amazon Photos disclosures does not significantly increase the proportion of survey respondents that believe Amazon collects biometric data. Dkt. No. 190-1, Ex. D – Expert Report of Tülin Erdem ¶¶ 19–21. Dr. Erdem's survey and opinions should be excluded because they are irrelevant and unhelpful to evaluating any question in this case and the methodology employed by Dr. Erdem is so flawed that it is unreliable. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–593 (1993) (stating that testimony given by expert must be "not only relevant, but reliable").

**1. Dr. Erdem's survey does not speak to any legally relevant issue in this case.**

The fundamental questions to be resolved to determine Amazon's liability in this case are whether the disclosures in Amazon Photos complied with the requirements of § 15(b) to inform users in writing that their "biometric identifier" or "biometric information" was being collected, and whether Amazon obtained written consent in the form of a written release from Amazon Photos Users. Obtaining informed written consent required Amazon to ensure

that Users read and understood that Amazon collected their biometric data Dr. Erdem's survey and opinions are not relevant or helpful to these issues.

Amazon argues that the survey is relevant because it "confirms that Amazon met its goal" of making its terms "easy to understand by using plain language." Dkt. No. 227, Amazon's Opp'n 19–20. First, Dr. Erdem's survey confirms no such thing. Due to numerous critical flaws described in Plaintiffs' *Daubert* motion,[5] Dr. Erdem's survey and her opinions derived from it are not reliable. Second, whether Amazon has "met its goal" of "easy to understand" language is not the test of compliance under § 15(b). Statutory construction rules require courts to give defined terms their statutory definitions, and here, "biometric identifier" and "biometric information" are defined terms in the statute. 740 ILCS 14/10. Amazon does not dispute that its disclosures used none of the terms specified in the statutory definitions. *See* Dkt. No. 226-1, Defs.' Resp. to Pls.' Statement of Material Facts, Resp. No. 36. Amazon cannot use Dr. Erdem's opinion to confuse the jury into drawing an incorrect inference that Amazon came close enough to satisfying the requirements of § 15(b).[6]

---

[5] Dkt. No. 190, Pls.' Omnibus Mot. To Exclude the Test. Of Def.'s Experts ("Pls.' *Daubert* Mot."), 23-29.

[6] In support of its argument that BIPA does not require particular words in disclosures and that Amazon's disclosures were close enough, Amazon relies on *Santana v. Take-Two Interactive Software, Inc.*, 717 F. App'x 12, 15–16 (2d Cir. 2017). But *Santana* is a non-precedential Second Circuit decision which does not stand for that proposition. It concerns Article III standing, and the court found in the unique factual circumstances of that case, that the consumer had agreed to a scan of their face by sitting still for fifteen minutes while the face scan took place and using it to create an in-game avatar and where the game informed them that it required a "face scan." The Seventh Circuit has declined to follow *Santana*'s reasoning on Article III standing. *Bryant v. Compass Group USA, Inc.*, 958 F.3d 617, 623 (7th Cir. 2020).

Amazon also argues that it does not matter that Dr. Erdem's survey does nothing to test whether Amazon Photos Users actually looked at Amazon's disclosures because "it was not her assignment." Dkt. No. 227, Amazon's Opp'n 20–21. But that is precisely Plaintiffs' point: that Dr. Erdem was given an irrelevant assignment. That is part of what makes her opinion inadmissible. Whether consumers provided informed written consent is central to this case, and if consumers did not even view the terms of the disclosure, they could not have provided informed written consent. Dr. Erdem's survey will not be useful to the trier of fact because it cannot be used to draw conclusions about whether Class Members read or understood the disclosures or gave informed consent to have their biometric data collected.

Dr. Erdem's failure to recreate real-world conditions in designing her survey also undermines the survey's relevance and reliability. As Amazon admits, "[h]ad the survey been designed to provide the original and revised disclosure language through links, respondents may not have clicked on the links and might not have seen the added phrase." Dkt. No. 227, Amazon's Opp'n 21. Amazon tries to defend this flawed survey design as "eliminat[ing] . . . risk," *id.*, but Amazon's *actual* disclosures did nothing to eliminate the very real risk that Users may not have even clicked on—let alone *read*—Amazon's disclosures. This mismatch between the survey conditions and real-world conditions is too critical to ignore.

Amazon next argues that Dr. Erdem's assignment was "consistent with applicable law" relating to "click wrap" agreements. *Id.* at 21–22. This argument fails because Amazon's disclosures are not "click wrap" agreements,[7] and in any event, the law regarding click wrap

---

[7] Click wrap agreements require the user to at least scroll through the text of the disclosure and expressly manifest assent, which Amazon's disclosures do not do here. At best, the disclosures at issue in this case are "hybridwrap" agreements (a hybrid of clickwrap and "browsewrap" agreements), which offer less effective notice and require less of a manifestation of intent than clickwrap agreements. *See* , *e.g., Anand v. Heath*, No. 19 CV

agreements is irrelevant here. Compliance with § 15(b) requires "informed written consent," which requires more than making available a notice that the consumer is not required to read.[8]

### 2. Dr. Erdem's methodology is flawed and unreliable.

In addition to Dr. Erdem's opinions being irrelevant to the factual and legal issues in the case, her survey contains serious flaws in its design, execution, and recording of results, rendering the opinions based on the survey unreliable and misleading.

Amazon again contends that there is nothing wrong with the fact that Dr. Erdem's survey design does not accurately recreate real-world conditions with respect to the consent flow that Amazon Photos Users experience. Dkt. No. 227, Amazon's Opp'n 22. Amazon mischaracterizes the survey as "mimicking the user flow through which Illinois residents proceed to enable image recognition features for their Amazon Photos account, but without requiring users to click on links to see the disclosures." *Id.* at 18. But the survey does *not* "mimic" the actual User flow because it does not at all resemble the actual way in which Users encounter the disclosures. As discussed above, this is a fatal flaw in the survey design.

---

00016, 2019 WL 276213, at *3 (N.D. Ill. June 28, 2019) (Tharp, J.) (describing the differences between clickwrap, browsewrap, and hybridwrap agreements).

[8] *See* Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 B.U.L. Rev. 593, 615 (2024) ("Informed consent goes far beyond merely posting privacy notices, lengthy terms and conditions, or some other documents, which is typical of most instances of consent in privacy law. . . . To be informed, people must truly understand the choices they are making."); *Brown v. Murphy*, 664 N.E.2d 186, 195 (Ill. App. Ct. 1996) ("[I]nformed consent is that given by a reasonable person who receives sufficient information to make an intelligent choice. . . ."); BLACK'S LAW DICTIONARY (8th ed.) (defining "informed consent" as "a person's agreement to allow something to happen, made with full knowledge of the risks involved and the alternatives").

Amazon attempts to factually distinguish the cases cited by Plaintiffs. *Id.* at 23. As Plaintiffs have previously noted, courts do not look to survey evidence to interpret terms in a contract,[9] so trademark and false advertising cases may have different facts. Nonetheless, the cases support Plaintiffs' argument that failing to recreate accurate marketplace conditions is grounds for excluding a survey expert's testimony. Here, Dr. Erdem utilized a User flow in her survey that was in fact a "radically different" experience from the real Amazon Photos user experience and therefore should be excluded. *See Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741–42 (7th Cir. 2013); *Sears, Roebuck & Co. v. Menard, Inc.*, No. 01 C 9843, 2003 WL 168642, at *2–3 (N.D. Ill. Jan. 24, 2003) (survey excluded where it "distorted marketplace conditions" by taking advertisements out of context and using only portions).

Amazon mischaracterizes Plaintiffs' argument that Dr. Erdem's survey design is unreliable because of the use of leading questions. Amazon defends Dr. Erdem's use of the leading questions by arguing again that they somehow prove Amazon's disclosures were close enough to be compliant with § 15(b). Dkt. No. 227, Amazon's Opp'n 23–24. This argument fails to address Prof. Turow's criticism is that Dr. Erdem designed the phrasing and sequencing of the survey questions in a way that led the survey participants to the answer that supports her conclusion. *See, e.g.*, Dkt. No. 190-2, Ex. T – Turow Report ¶¶ 46, 49–51. That is a fundamental error in survey design. *Manual for Complex Litigation*, Fourth, § 11.493, pp. 102–03.[10]

---

[9] Dkt. No. 190, Pls.' *Daubert* Mot. 23 n.6; Dkt. No. 219, Pls.' Resp. in Opp'n to Def.'s Mot. to Exclude Ops. of Pls.' Proffered Expert Witness Joseph Turow at 11.

[10] Amazon claims that Dr. Erdem designed her survey in accordance with the standards set forth in the Manual for Complex Litigation; however, knowing that there are

Plaintiffs' criticism of Dr. Erdem's method of coding her survey results is not—as Amazon asserts—that Amazon "destroyed" the data. Dkt. No. 227, Amazon's Opp'n 24. What makes Dr. Erdem's methodology unreliable and her results irrelevant is that Dr. Erdem instructed the coders to lump together in one coding category all answers reflecting respondents' belief that Amazon was collecting "data on face geometry from photos, data to facilitate image recognition, and biometric data"—without differentiating among these three types of answers. Without coding the answers separately, it cannot be determined what percentage of people responded with "face geometry" or "biometric data," which Amazon claims it was attempting to determine. Amazon cites only a cover letter in support of its position that it produced the raw data, but either way, whether Amazon produced the raw data does not resolve the problem of Dr. Erdem's coding her results in a way that renders those results unreliable.

With respect to Dr. Erdem's lack of knowledge or control over her survey administration, Amazon attempts to limit the issues to a lack of recall during her deposition. Dkt. No. 227, Amazon's Opp'n 24. But Dr. Erdem did not specify in her report or have knowledge of how survey respondents were compensated or recruited or the identities or qualifications of the coders or her contacts at Prodege. *See, e.g.,* Dkt. No. 190-2, Ex. Q – Excerpts from Tr. of Dep. of Tülin Erdem 48:23–50:4, 63:8–69:23, 100:19–102:19.

For the reasons stated above and in Plaintiffs' *Daubert* Motion, the opinions of Amazon's expert Dr. Erdem should be excluded.

---

standards is not the same as following them properly. *See* Dkt. No. 190, Pls.' *Daubert* Mot. 22–23.

**E. Dr. Lambrecht's testimony should be excluded because it is irrelevant and fails to rebut the testimony of Plaintiffs' expert Prof. Neil Richards.**

Amazon contends that Dr. Lambrecht's opinions on whether putative Class Members "value" and "enjoy" using Amazon Photos is relevant to the damages analysis because damages under BIPA are "discretionary." Dkt. No. 227, Amazon's Opp'n 27. But as Plaintiffs have previously explained, statutory damages under BIPA are fixed at $1,000 per person for a negligent violation of Section 15(b), or $5,000 for a reckless violation. *See* Dkt. No. 187, Mem. of Law in Supp. of Pls.' Mot. for Summ. J. at 12–14. And the amended language of the statute specifically states that a person aggrieved by a violation of Section 15(b) "*is entitled to*" one recovery under that section. 740 ILCS 14/20(b) (emphasis added). Again, Plaintiffs seek only statutory damages, and Dr. Lambrecht's opinions as to whether Users enjoy and appreciate Amazon Photos are therefore irrelevant.

Amazon goes on to argue that Dr. Lambrecht's report and testimony is relevant because it rebuts that of Plaintiffs' expert Prof. Neil Richards. According to Amazon, Plaintiffs "opened the door to questions regarding whether Amazon Photos users were harmed by Amazon Photos' image recognition," thus necessitating Dr. Lambrecht's review and analysis of "online reviews of Amazon Photos left by consumers on Google's app store Google Play and on Apple's App Store" as well as internal documents from Amazon regarding "customers' attitudes towards Amazon Photos." Dkt. No. 227, Amazon's Opp'n 28–29; *see* Dkt. No. 190-1, Ex. E – Expert Report of Anja Lambrecht ¶. But Prof. Richards's opinion to that Amazon's disclosures are not clear, transparent, or informative in a way that would provide *informed* consent as required by BIPA stem from his analysis of Amazon's actual disclosures regarding its image-recognition feature. Dkt. No. 190-2, Ex. L – Expert Report of Prof. Neil Richards ¶ 5. In other words, his testimony was offered to

address and rebut *Amazon*'s evidence and arguments. *See, e.g.*, Ex. BB, Excerpts from Tr. of 30(b)(6) Dep. of Josh McLane 160:3–5; 163:7–19; 256:19–22 (testifying that Amazon designed its disclosures to be clear and transparent about the types of information Amazon collects); Dkt. No. 106, Third Am. Answer, Eleventh Affirmative Defense ("Plaintiff has sustained no injury-in-fact and therefore lacks Article III standing . . . .").

Regardless, Dr. Lambrecht's testimony fails to rebut either of Prof. Richards's chief opinions. Dr. Lambrecht's report does not analyze any of Amazon's disclosures, and she offers no opinion regarding the relationship between Amazon's biometric data policy and the harms or benefits experienced by Class Members. Ex. CC, Excerpts from Tr. of Dep. of Anja Lambrecht 48:13–16, 49:10–21 [hereinafter "Lambrecht Dep."] (responding "I don't – my report does not look at – I'm quoting you – biometric data policy. I don't know what a biometric data policy is, but I am not using those terms in my report . . . I have not even thought about the possible definition [of the meaning of the term, 'biometric data policy']," when asked whether she offers any opinion as to the existence of a biometric data policy or the disclosures contained therein in this case). Dr. Lambrecht could offer no such opinion because, as she readily admits, whether a particular Amazon Photos user may also have derived some benefit from the facial recognition technology has no effect on the harm that that user experiences as a result of Amazon's implementation of the technology:

> Q: Are you saying here that the harm a consumer suffers from a breach of privacy is dependent on the consumer's awareness of how the technology itself works?
>
> A: I do not make any statement about harm that consumers may have suffered.

Ex. CC, Lambrecht Dep. 79:12–20.

Amazon cites *Stollings v. Ryobi Technologies, Inc.,* 725 F.3d 753 (7th Cir. 2013), in support of its contention that, despite the "serious flaws" in Dr. Lambrecht's methodology, her report and testimony should be admitted because any questions of reliability "go to weight, not admissibility." Dkt. No. 227, Amazon's Opp'n 30. In *Stollings,* the trial court "agreed that [the expert] correctly employed a valid methodology," but disagreed with the value the expert initially assigned to one of the method variables, and therefore excluded the expert's report and testimony. *Stollings,* 725 F.3d at 766. The Seventh Circuit found this improper, because "the judge should have let the jury determine how the uncertainty about the [value assigned to the variable] affected the weight of [the expert]'s testimony." *Id.* at 767. Unlike in *Stollings,* Dr. Lambrecht has presented no valid methodology. Rather than a single flaw in the value of a variable, Dr. Lambrecht's report fails to account for entire categories of data (for example, Illinois Amazon Photos Users and Amazon Photos Users during the relevant time period).

Finally, Amazon cites *Dolmage v. Combined Ins. Co. of Am.*, No. 14 C 3809, 2017 WL 1754772, at *7 (N.D. Ill. May 3, 2017), and *In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, No. 14-CV-5696, 2017 WL 1196990, at *7–8 (N.D. Ill. Mar. 31, 2017), in support of its contention that "expert opinions regarding the ability to prove damages on a class-wide basis, such as Dr. Lambrecht's opinion here, are routinely admitted." As explained above, however, Dr. Lambrecht does not opine that a consumer's privacy expectations have any correlation with the harm they suffer as a result of Amazon's use of the facial recognition feature. Therefore, Dr. Lambrecht's opinion and testimony are irrelevant to Plaintiffs' ability to prove classwide damages. Because Dr. Lambrecht's testimony neither

provides clarity on issues introduced by Plaintiffs, nor rebuts either of the opinions presented by Prof. Richards, it must be excluded.

**F. Dr. Rossi's testimony should be excluded in its entirety.**

**1. Dr. Rossi's testimony rests on a flawed premise and is unhelpful to the Court or the trier of fact.**

Central to Dr. Rossi's engagement and proposed opinions in this action is the flawed premise that the injury to Plaintiffs and putative Class Members must be an "economic injury." Dkt. No. 227, Amazon's Opp'n at 31.[11] But as this Court and the Seventh Circuit have made clear, "[t]he deprivation of informed consent is a particularized injury-in-fact" sufficient to confer Article III standing for claims pursuant to § 15(b) of BIPA. Dkt. No. 49, Mem. Op. and Order at 20; *see Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1161 (7th Cir. 2021) (concluding that violation of § 15(b) "is a concrete and particularized harm" that "inflicts an Article III injury"). Amazon does not even attempt to address this argument, failing to even mention the word "injury" in its opposition brief. As such, Dr. Rossi's opinions "are inadmissible" because they are "contrary to the law" and "cannot be said to be scientific, to be reliable, or to be helpful to the trier of fact." *Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 806 (N.D. Ill. 2005).

---

[11] Dkt. No. 190-1, Ex. F – Decl. of Peter E. Rossi ¶ 7 [hereinafter "Rossi Report"] (stating that Amazon engaged Dr. Rossi in order to, among other things, "ascertain whether putative class members have suffered any economic harm"); *id.* ¶ 18 (opining that "a standard economic analysis indicates that at least a large portion of putative class members are not injured," and that "an individualized analysis is necessary to determine if any economic injury occurred").

**2. Dr. Rossi's opinions are irrelevant and unhelpful given that Plaintiffs are seeking only statutory damages.**

Despite BIPA's statutory-damages provision, Amazon asserts there is no viable methodology to award class-wide damages in this matter. Dkt. No. 227, Amazon's Opp'n 31.[12] Amazon's assertion is incorrect. Plaintiffs propose a simple and straightforward methodology for determining the amount of statutory damages to which Plaintiffs are entitled if Amazon is determined to have violated § 15(b) of BIPA on a classwide basis— $1,000 per Class Member if Amazon's violation was negligent or $5,000 per Class Member if Amazon's violation was intentional or reckless. *See* Dkt. No. 190, Pls.' *Daubert* Mot. 30–31 (explaining that "Plaintiffs do not seek 'actual damages' but rather, statutory damages" under BIPA); *see also* Dkt. No. 187, Mem. of Law in Support of Pls.' Mot. for Summ. J. at 13 ("Plaintiffs here seek only statutory damages.").

Far from helping the trier of fact, Dr. Rossi's opinions regarding actual damages would be impermissibly confusing and misleading. *See, e.g.*, *Sullivan v. Flora, Inc.,* 63 F.4th 1130, 1143 (7th Cir. 2023) (concluding that district court erred by relying on expert's testimony as to actual damages in case involving statutory damages). Instead of withdrawing Dr. Rossi's opinions regarding actual damages, Amazon is seeking to influence the trier of fact with such irrelevant and impermissible opinions. *See, e.g.*, Dkt. No. 227, Amazon's Opp'n 31–32 ("Rossi's economic framework would also assist any jury in considering discretionary damages (whether statutory or actual) . . . ."); *id.* at 35 (citing cases involving copyright violations for the misleading propositions that "statutory damages 'should be

---

[12] In support of this proposition, Amazon inexplicably cites *City of Rockford v. Mallinckrodt ARD, Inc.,* No. 3:17-CV-50107, 2024 WL 1363544 (N.D. Ill. Mar. 29, 2024), a pharmaceutical antitrust case in which statutory damages were not available and a complicated regression overcharge damages model was at issue.

woven out of the same bolt of cloth as actual damages'" and "the court should award statutory damages that represent at least 'some approximation of actual damages'").

In Dr. Rossi's own words, actual damages are at the core of his analysis, because "if it was held by the Court that statutory damages, ***and only statutory damages***, are appropriate measure of damages," that "would remove the need for a perceptions analysis" that is the foundation of his report. Dkt. No. 190-2, Ex. V – Excerpts from Tr. of Dep. of Peter Rossi 44:3–23 (emphasis added).[13] Although Amazon attempts to rehabilitate this statement by arguing that it was predicated on the assumption that "damages were not discretionary and were mandatory," Dkt. No. 227, Amazon's Opp'n 35, Dr. Rossi's admission encompasses statutory damages regardless of whether they are discretionary. As such, Dr. Rossi's testimony is fundamentally about actual damages, reflecting Amazon's misleading and improper argument that damages under BIPA are limited to actual damages.

Moreover, statutory damages under BIPA are mandatory. *See* Dkt. No. 187, Mem. of Law in Support of Pls.' Mot. for Summ. J. at 12–14. But even if statutory damages were discretionary under BIPA, this would not make Dr. Rossi's opinions admissible because the measure of statutory damages—*even if discretionary*—would be assessed on a classwide basis. *See, e.g.*, *Tapia-Rendon v. United Tape & Finishing Co.*, No. 21 C 3400, 2023 WL 5228178 at *6 (N.D. Ill. Aug. 15, 2023) (granting class certification where "the class is not seeking actual damages," but instead "the request is for liquidated damages under the statute, and there is every reason to believe that these will be assessed on a common per-scan basis across the class"); *Svoboda v. Amazon.com, Inc.*, No. 21 C 5336, 2024 WL 1363718, at *12 (N.D. Ill.

---

[13] *See also* Dkt. No. 190-1, Ex. F – Rossi Report ¶ 16 ("[O]nly the Users for which an altered disclosure might change perceptions can be thought to have possibly suffered economic injury").

Mar. 30, 2024) (granting class certification and rejecting Amazon's argument that it "has unique defenses to every member of the putative class because damages are 'discretionary rather than mandatory' under BIPA").

### 3. Amazon's citations of inapposite non-class cases regarding the Copyright Act and trademark violations demonstrate the irrelevance of Dr. Rossi's testimony.

It is telling that Amazon fails to address *Tapia-Rendon*'s determination that statutory damages could be "assessed on a common per-scan basis across the class" and *Svoboda*'s rejection of the identical argument it advances here. *See* Dkt. No. 190, Pls.' *Daubert* Mot. 34–36; Dkt. No. 227, Amazon's Opp'n 34 n.11. Instead, Amazon ignores the holdings of BIPA cases and attempts instead to argue that this Court should be persuaded by non-class cases pertaining to the Copyright Act in support of its proposition that "courts consistently consider each plaintiff's conduct, whether each plaintiff experienced economic harm, and if so, the extent of that economic harm, when determining discretionary statutory damages." *See* Dkt. No. 227, Amazon's Opp'n 34–36.

As a preliminary matter, the Copyright Act expressly provides for a *range* of "statutory damages . . . in a sum of *not less than* $750 *or more than* $30,000 as the court considers just" and, in cases of willful infringement, statutory damages of "*not more than* $150,000." 17 U.S.C. § 504(c)(1)–(2) (emphasis added). This stands in stark contrast to BIPA, which provides for "liquidated damages of $1,000" for negligent violations or "liquidated damages of $5,000" for intentional or reckless violations—not "liquidated damages of *up to* $1,000" or "liquidated damages of *up to* $5,000" as Amazon attempts to read the statute. 740 ILCS 14/20(a)(1)–(2). And BIPA provides for liquidated damages "or actual damages, *whichever is greater*"—which would be an absurd provision if liquidated damages could be any amount "up to the statutory maximum" as Amazon suggests (*see* Dkt. No. 227,

Amazon's Opp'n 35)—because there would be no way to determine whether a fixed amount of actual damages (such as $100) would be greater or lesser than a range liquidated damages (such as $1 to $1,000). *See* 740 ILCS 14/20(a)(1)–(2) (emphasis added).

As the cases cited by Amazon make clear, the Copyright Act expressly provides district courts with the discretion to award a specific range of statutory damages. For instance, in *Bell v. DiamondIndyLimo.com*, No. 1:13-CV-00035-TWP, 2014 WL 2747578, at *1 (S.D. Ind. June 17, 2014)—an individual copyright action—the court stated that, "[i]n exercising its discretion to determine statutory damages, the Court considers six specific factors, including: . . . the revenue lost by the copyright holder" and "the conduct and attitude of the parties." Likewise, in *Shefts v. Petrakis*, No. 10-CV-1104, 2013 WL 655695, at *4 (C.D. Ill. Feb. 21, 2013)—another individual copyright action—the court stated that a "lack of actual damages was merely one factor" considered by another court in determining not to award statutory damages.

Amazon again turns to non-class cases brought under statutes that expressly provide for discretionary *ranges* of statutory damages when it argues that "whether [Plaintiffs] were economically damaged remains relevant to a discretionary statutory damages award." Dkt. No. 227, Amazon's Opp'n 35. For instance, *Coach, Inc. v. Treasure Box, Inc.*, No. 3:11CV468-PPS, 2014 WL 888902, at *1 (N.D. Ind. Mar. 6, 2014), involves non-class claims for trademark infringement under 15 U.S.C. § 1114, *et seq.*, which provides for statutory damages of "***not less than*** $1,000 ***or more than*** $200,000" or for willful violations "***not more than*** $2,000,000." 15 U.S.C. § 1117(c) (emphasis added). Similarly, *Spectrum Brands, Inc. v. I&J Apparel, LLC*, No. 16-CV-741-JDP, 2017 WL 2303577, at *1 (W.D. Wis. May 26,

2017) is an individual action involving claims of trademark infringement and copyright infringement.

Dr. Rossi's opinions are irrelevant and unhelpful in the BIPA context, where "the request is for liquidated damages under the statute, and there is every reason to believe that these will be assessed on a common per-scan basis across the class." *See Tapia-Rendon v. United Tape & Finishing Co.*, No. 21 C 3400, 2023 WL 5228178 at *6 (N.D. Ill. Aug. 15, 2023).

### 4. Plaintiffs properly seek to exclude all of Dr. Rossi's testimony.

Plaintiffs have sufficiently justified their request for the exclusion of Dr. Rossi's testimony in its entirety, and Amazon's argument that they "do not even address many of his opinions" rings hollow. Dkt. No. 227, Amazon's Opp'n 36. Of the four purported "opinions" that Amazon references in this regard, only one even cites a paragraph in Dr. Rossi's report that summarizes his opinions (paragraphs 11–18). *See* Dkt. No. 227, Amazon's Opp'n 36 (citing Rossi Report ¶ 15). This opinion—that "Dr. Erdem's survey evidence strongly suggests that a large portion of the proposed classes did not incur any economic damages"— is of course squarely addressed by Plaintiffs' arguments, including that Dr. Rossi's opinions regarding economic injury are unrelated to Article III standing, and that his opinions regarding actual damages and individualized damages are irrelevant, unhelpful, and misleading. Likewise, Plaintiffs have sufficiently justified the exclusion of the other opinions described by Amazon.[14]

_____

[14] *See* Dkt. No. 227, Amazon's Opp'n 36. For instance, the opinion that Plaintiffs' expert Prof. Richards "fail[s] to provide any evidence" that class members "were materially affected by privacy harms in an economic sense" is simply a rehashed version of Dr. Rossi's improper opinion that economic injury is required for Article III standing and should be rejected for the same reason. Likewise, Plaintiffs have given numerous reasons to exclude Dr, Rossi's opinion that "no class-wide damages model is feasible," including that it improperly recites the opinions of other proposed experts with respect to issues such as

**G. The Court should grant Plaintiffs' motion to exclude the opinions and testimony of Mr. Schnell.**

Regardless of his qualifications, the opinions of Ron Schnell in his expert report (Dkt. No. 190-1, Ex. G) and declaration (Dkt. No. 191, Ex. Y) serve as nothing more than factual assertions. Aside from his not offering any analysis, the basis for Mr. Schnell's opinions consists of straightforward publicly available information that does not require an expert's explanation to the jury.

Amazon repeatedly relies on Mr. Schnell's factual assertions throughout its response that offer no bearing on whether Amazon (1) stored biometric information of Users or Non-Users, or (2) provided notice of that storage to Users or Non-Users. Mr. Schnell's statements are merely factual assertions and speak to what Amazon Photos itself purportedly does, as opposed to what the face embeddings generated by Amazon Photos *can* be used to do—namely, identifying an individual. Mr. Schnell's statement that he ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is irrelevant because he did not review all of the Amazon Photos code. *See* Dkt. No. 190-1, Ex. G – Expert Report of Ron Schnell ¶ 24. As for Amazon's argument that BIPA only covers "scan[s] of . . . face geometry that are capable of identifying an individual," ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ *See* Dkt. No. 215, Pls.' Resp. to Def.'s Local Rule 56.1(a)(2) Statement of Material Facts in Supp. of Def.'s Mot. for Summ. J. Nos. 8, 13, 24.

---

"there is no method to determine the number of class members, identify the Class Members, or determine the number of alleged violations." And Dr. Rossi's opinion that "Plaintiffs fail to provide evidence of economic harm to users" is directly addressed by the reasons Plaintiffs give to exclude Dr. Rossi improper attempts to conflate "economic injury" with injury for purposes of Article III standing.

Amazon argues that Mr. Schnell's opinion regarding developing code to identify Class Members is relevant but provides no basis for why ████████ of code is the minimum necessary. Dkt. No. 191, Ex. Y – Schnell Decl. ¶ 15. Moreover, Amazon continues to simply not address the fact that it has access to technologies that can be used to identify Class Members. *See id.* ¶ 7. The testimony is irrelevant to Plaintiffs' class certification motion and accordingly, Mr. Schnell's opinions should be excluded.

## H. Dr. Arndt's opinions should be excluded because they consist of improper legal conclusions, are irrelevant, and are ones that he is unqualified to offer.

Amazon's arguments why Dr. Arndt's opinions should not be excluded only further underscore why those opinions *must* be excluded. As Amazon correctly states: "Amazon engaged Arndt to opine on whether, from a scientific and technical perspective, Amazon Photos image recognition technology constitutes a ***biometric identity system***." Dkt. No. 227, Amazon's Opp'n 41 (emphasis added). The answer to this question is irrelevant. There is no reference to "biometric identity systems" in BIPA because BIPA liability does not hinge on whether Amazon Photos is a "biometric identity system" (whatever that even means).

The only arguably relevant scientific and technical questions in this case addressed by Dr. Arndt (as Amazon has previously acknowledged[15]) are whether the face embeddings are (1) scans of face geometry that (2) can be used to identify a person,[16] but Dr. Arndt cannot

---

[15] *See* Dkt. No. 194, Def.'s Mem. of Law in Supp. of Its Mot. for Summ. J. at 8–9 ("BIPA only applies to scans of face geometry that can be used to identify an individual . . . .").

[16] Plaintiffs do not concede that whether face embeddings can be used to identify a person is relevant. Plaintiffs' position is that a face embedding is a biometric identifier even if it *cannot* be used to identify a person. *See* Dkt. No. 214, Pls.' Resp. in Opp'n to Amazon's Mot. for Summ. J. at 5–6. Nonetheless, the issue whether face embeddings are a biometric identifier would be relevant if the Court disagrees with Plaintiffs and rules that a scan of face geometry is a biometric identifier only if it can be used to identify a person.

– 29 –

offer admissible answers to either question. As evidenced by Plaintiffs motion for summary judgment, the answer to these questions is *yes*, and arriving at that answer does not require any discussion of "biometric identity systems"—a term that is a red herring hung up by Amazon in an attempt to mischaracterize the actual issues in this case.

As Plaintiffs explained in their *Daubert* motion, Dr. Arndt is not qualified to opine on the relevant scientific and technical issues: whether face embeddings are scans of face geometry that can be used to identify a person. He offers only baseless conclusions on these issues. His opinions on these matters are therefore irrelevant and would serve only to confuse and mislead the jury. Accordingly, Dr. Arndt's testimony should be excluded in its entirety.

1. **Dr. Arndt's opinion that face embeddings are not scans of face geometry is an improper legal conclusion—one that is unreliable and that he is unqualified to offer.**

There is no dispute in this action that Amazon (1) ███████████████████ ████████████████████████████████████████████ ████████████████ and (2) ████████████████████████████ ████████████████████████████████████████

*See* Dkt. No. 226-1, Def.'s Resp. to Pls.' Statement of Material Facts, Resp. Nos. 6, 12. To determine whether those face embeddings are scans of face geometry, the relevant questions are: What data about the face are used to generate a face embedding? What information about the face is stored in the form of a face embedding?

One cannot answer these questions without being an expert in the ██████ that generate face embeddings. Plaintiffs' expert Dr. Hashmi is an expert in such ██████; Dr. Arndt is not. As Dr. Hashmi explained in his **opening** report, a face embedding generated by Amazon Photos are ██████████████████████████████ ████████████████████████████████████████████

██████—specifically, by ██████████████████████████████

████████████████████████████████████████████████████

██████████████████ Dkt. No. 190-2, Ex. K – Expert Report of Dr. Atif Hashmi

Regarding Operations of Amazon Photos Face Processing Algorithms and Models ¶¶ 12(b),

79–80, 82–83, 86–87 [hereinafter "Hashmi Opening Report"].

As Amazon acknowledges, Dr. Arndt "did not find anything in that *opening* report to

be inaccurate." Dkt. No. 227, Amazon's Opp'n 44 (citation and internal quotation marks

omitted); *see also* Ex. DD, Excerpts from Tr. of Dep. of Dr. Craig Arndt 87:2–3 [hereinafter

"Arndt Dep."] ("I [Dr. Arndt] did not find anything in his [Dr. Hashmi's] report that I found

to be inaccurate.").

In his **reply** report, Dr. Hashmi further explained, consistent with his opening report,

that a face embedding is generated by ████████████████████████████

████████████████████████████████████████████████

██████████████████████████████ Dkt. No. 190-2, Ex. P

– Expert Reply Report of Dr. Atif Hashmi Regarding Operations of Amazon Photos Face

Processing Algorithms and Models ¶ 36 [hereinafter "Hashmi Reply Report"].

Dr. Arndt did not submit a second report to dispute this analysis in Dr. Hashmi's

reply report, as he could have when Amazon submitted its sur-reply opposing Plaintiffs'

motion for class certification. Instead, Dr. Arndt submitted with Amazon's sur-reply a

declaration that does not even mention Dr. Hashmi's analysis of this issue; Dr. Arndt opines

only on the cost and feasibility of what he mischaracterizes as "[a] biometric system of the

type that Dr. Hashmi proposes" to identify Class Members. Dkt. No. 190-1, Ex. I – Decl. of

Dr. Craig Arndt ¶ 30 [hereinafter "Arndt Decl."]. The opinions of Dr. Hashmi on this matter

are therefore unrefuted. ███████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████ *See, e.g.*, *Am. Civ. Liberties Union v. Clearview AI, Inc.*, No. 20 CH

4353, 2021 WL 4164452, at *1, *5 (Ill. Cir. Ct. Aug. 27, 2021) (concluding that

"faceprints"—which defendant Clearview generated by "scan[ning] the photo, measur[ing]

and record[ing] data such as the shape of the cheekbones and the distance between eyes,

nose, and ears, and assigns that data a numerical value"—were scans of face geometry); *Sosa*

*v. Onfido, Inc.*, 600 F. Supp. 3d 859, 871 (N.D. Ill. 2022) (concluding that "scans [of]

identification cards and photographs to locate facial images and extract[ ] a unique numerical

representation of the shape or geometry of each facial image" were scans of face geometry);

*In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1171 (N.D. Cal. 2016)

(concluding that "unique digital representation of the face . . . based on geometric

relationship of their facial features" is a "scan of face geometry" under BIPA).

Dr. Arndt's unsupported opinion that "[t]he Amazon Photos technology does not

work by scanning face geometry" is nothing more than an inappropriate legal conclusion.[17]

_____

[17] Dr. Arndt goes even further in his report, offering the legal opinion that face
embeddings ███████████████████████ Dkt. No. 190-1, Ex. H – Expert Report of Dr.
Craig Arndt Arndt Report ¶ 70 [hereinafter "Arndt Report"]. Aside from the impropriety of
offering a legal opinion on this ultimate legal question, Dr. Arndt's testimony demonstrates
that this opinion lacks any legitimate basis, as Dr. Arndt's understanding of the term
"biometric identifier" is inconsistent with the statutory definition. He testified, for example,
that a fingerprint is "not a biometric identifier until it is positively linked to the identity of the
individual" (Ex. DD, Arndt Dep. 229:15–17), despite the fact that BIPA unambiguously
provides that a biometric identifier "means a retina or iris scan, **fingerprint**, voiceprint, or
scan of hand or face geometry," and says nothing about a fingerprint needing to be

Even if Dr. Arndt's opinion were *not* a legal conclusion but instead a scientific or technical

opinion, it is an opinion that Dr. Arndt is not qualified to offer given his lack of expertise in

the relevant technology in this case ███████. Contrary to Amazon's representations that

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████████ *See, e.g.*, Ex. DD, Arndt Dep. 27:13–16

(████████████████████████████████████████████████████████████

████████████████████████████████████████████████); *id.* at 188:15–19

(█████████████████████████████████████████████████████████████████

█████████████████████████). The unrefuted fact that "Dr. Arndt

conflates ████████████████████████████████████████████████████

used by Amazon Photos with older and outdated ████████████████████████████

██████ that are not used by Amazon Photos" further underscores Dr. Arndt's lack of

expertise in the relevant technologies. Dkt. No. 190-2, Ex. P – Hashmi Reply Report ¶ 5(a);

*see also id.* ¶¶ 14–27. Accordingly, Dr. Arndt's opinions on this issue must be excluded.

2. **Dr. Arndt presents no analysis of whether the face embeddings generated by Amazon Photos can be used to identify a person—**████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████

In his reply report, Plaintiffs' expert Dr. Hashmi explains in detail how ████████████

███████████████████████████████████████████████████████████████████

██████████████████ Dkt. No. 190-2, Ex. P – Hashmi Reply Report ¶ 48. In other words, the

---

"positively linked" to an individual in order to qualify as a biometric identifier. 740 ILCS
14/10 (emphasis added).

█████████████████████████████████████████████████████████████

████████ including Class Members. *Id.* And because they are scans of face geometry that ████████

██████████████████████████ the face embeddings generated by Amazon Photos are biometric

identifiers under BIPA. *See* Dkt. No. 187, Mem. of Law in Supp. of Pls.' Mot. for Summ. J.

at 4–5; Dkt. No. 214, Pls.' Resp. in Opp'n to Amazon's Mot. for Summ. J. at 5–8.

As with the other matters in Dr. Hashmi's reports on which Amazon maintains

Dr. Arndt is an expert, Dr. Arndt does not dispute Dr. Hashmi's opinion that ████████████████

████████████████████████ Indeed, █████████████████████████

████████████████████ *Compare* Dkt. No. 190-2, Ex. P – Hashmi Reply Report ¶ 48

(explaining how ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████ ), *with* Dkt. No. 190-1, Ex. H – Arndt Report

¶ 40 (██████████████████████████████████████████████████████

████████████████████████████████████████████ ).

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████ *See, e.g.*, Dkt. No. 190-1, Ex. H – Arndt Report ¶¶ 1(a), 9, 32, 36, 42, 54–55, 73, 75;

Dkt. No. 190-1, Ex. I – Arndt Decl. ¶ 26.

But again, whether Amazon Photos is a "biometric identity system" (however one defines that term) is irrelevant. The term "biometric identity system" does not appear in BIPA, nor in *any* decision of *any* court that has presided over a BIPA case.[18]

What *is* potentially relevant is whether the face embeddings generated by Amazon Photos can be used to identify a person.



*See, e.g.*, Ex. DD, Arndt Dep. 139:10–141:25

In sum, Dr. Arndt's opinions consist of improper legal conclusions and irrelevancies. Because Dr. Arndt's opinions would serve only to confuse the jury and muddle the issues in this case, his opinions should be excluded in their entirety.

## III.   CONCLUSION

For the above reasons—and those contained in their *Daubert* motion—Plaintiffs respectfully request that the Court grant their motion to limit or exclude entirely the testimony of each of Amazon's eight experts under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and Federal Rules of Evidence 702 and 703.

---

[18] Running the search term **("biometric information privacy act" OR BIPA) AND "biometric identity system"** on Westlaw across all state and federal courts returns zero results.

Dated: February 7, 2025

Respectfully submitted,

 /s/ *Justin N. Boley*

Kenneth A. Wexler
Justin N. Boley
Zoran Tasić
Margaret Shadid
WEXLER BOLEY & ELGERSMA LLP
311 S. Wacker Dr., Suite 5450
Chicago, IL 60606
Tel: (312) 346-2222
Fax: (312) 346-0022
kaw@wbe-llp.com
jnb@wbe-llp.com
zt@wbe-llp.com
ms@wbe-llp.com

Daniel E. Gustafson
Karla M. Gluek
David A. Goodwin
GUSTAFSON GLUEK PLLC
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
kgluek@gustafsongluek.com
dgoodwin@gustafsongluek.com

Ryan F. Stephan
James B. Zouras
Catherine Mitchell Duffy
STEPHAN ZOURAS, LLC
222 W. Adams St., Suite 2020
Chicago, Illinois 60606
Tel: (312) 233-1550
Fax: (312) 233-1560
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com

Dean Kawamoto
Derek Loeser
Gretchen Freeman Cappio
Felicia Craick

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900
Fax: (206) 623-3384
dkawamoto@kellerrohrback.com
dloeser@kellerrohrback.com
gcappio@kellerrohrback.com
fcraick@kellerrohrback.com

Christopher L. Springer
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

Kevin Landau
Archana Tamoshunas
TAUS, CEBULASH & LANDAU, LLP
123 William St., Ste. 1900A
New York, NY 10038
Tel: (212) 931-0704
Fax: (212) 931-0703
klandau@tcllaw.com
atamoshunas@tcllaw.com

*Attorneys for Plaintiffs and
Proposed Class*