**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANGELA HOGAN and B.H., a minor, by and through his guardian ANGELA HOGAN, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> AMAZON.COM, INC., <br><br> *Defendant*. | Case No. 1:21-cv-03169 <br><br> Honorable John J. Tharp, Jr. <br><br> **PUBLIC REDACTED VERSION** |

<u>**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**</u>

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    AMAZON'S SUMMARY JUDGMENT MOTION SHOULD BE GRANTED. ............. 1

    A.    Plaintiffs' Objections to Amazon's Declarations Are Meritless............................ 1

    B.    Embeddings Are Not Biometric Identifiers. ......................................................... 3

        1.    Embeddings Must Be Capable of Identifying an Individual to Qualify as Biometric Identifiers.................................................................. 3

        2.    The Embeddings Do Not and Cannot Identify a Person............................ 6

    C.    Amazon's Disclosures Complied with BIPA and Plaintiffs Consented. ............... 8

        1.    Amazon Disclosed What Was Collected. .................................................. 8

        2.    Amazon Disclosed the Purpose and Retention Period............................. 11

        3.    Amazon Obtained Plaintiffs' Informed Written Consent. ....................... 12

    D.    Plaintiffs' Claim Is Barred by Waiver and Ratification....................................... 13

III.    CONCLUSION................................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambrosius v. Chicago Athletic Clubs, LLC*,
203 N.E.3d 239 (Ill. App. Ct. 2021) ...................................................................................12

*Brandenberg v. Meridian Senior Living, LLC*,
564 F. Supp. 3d 627 (C.D. Ill. 2021) ..................................................................................14

*Canterbury v. Spence*,
464 F.2d 772 (D.C. Cir. 1972) ............................................................................................13

*Carle Found. v. Ill. Dep't of Revenue*,
917 N.E.2d 1136 (Ill. App. Ct. 2009) .................................................................................14

*Castelaz v. Estée Lauder Cos., Inc.*,
2024 WL 136872 (N.D. Ill. Jan. 10, 2024) ...........................................................................6

*Clarke v. Aveda Corp.*,
704 F. Supp. 3d 863 (N.D. Ill. 2023) .................................................................................5, 6

*Craig v. Wrought Washer Mfg., Inc.*,
108 F.4th 537 (7th Cir. 2024) ...............................................................................................2

*Daichendt v. CVS Pharm., Inc.*,
2022 WL 17404488 (N.D. Ill. Dec. 2, 2022) .........................................................................6

*Fuesting v. Uline, Inc.*,
30 F. Supp. 3d 739 (N.D. Ill. 2014) .......................................................................................4

*G.T. v. Samsung Electronics America Inc.*,
2024 WL 3520026 (N.D. Ill. July 24, 2024) ..................................................................5, 6, 8

*Hopkins v. McDonough*,
2024 WL 707223 (N.D. Ill. Feb. 21, 2024) .......................................................................1, 2

*Keller v. United States*,
58 F.3d 1194 (7th Cir. 1995) ...............................................................................................14

*Martell v. X Corp.*,
2024 WL 3011353 (N.D. Ill. June 13, 2024) .....................................................................4, 6

*Melzer v. Johnson & Johnson Consumer Inc.*,
2023 WL 3098633 (D.N.J. Apr. 26, 2023) ............................................................................5

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Nat'l Prod. Workers Union Ins. Tr. v. Cigna Corp.*,
  665 F.3d 8972 (7th Cir. 2011) ...............................................................................................13

*Ng v. Lahood*,
  952 F. Supp. 2d 85 (D.D.C. 2013) ...........................................................................................2

*Oelze v. Score Sports Venture, LLC*,
  927 N.E.2d 137 (Ill. App. Ct. 2010) .......................................................................................12

*Patton v. MFS/Sun Life Fin. Distribs., Inc.*,
  480 F.3d 478 (7th Cir. 2007) ...................................................................................................3

*Riemensnyder v. Paragon Sys.*,
  2022 WL 1123187 (M.D. Pa. Apr. 14, 2022) ...........................................................................2

*Santana v. Take-Two Interactive Software, Inc.*,
  717 F. App'x 12 (2d Cir. 2017) ...............................................................................................9

*Sheppard v. Fantasia Trading LLC*,
  731 F. Supp. 3d 1152 (C.D. Cal. 2024) ....................................................................................5

*Sherman v. AT&T Inc.*,
  2012 WL 1021823 (N.D. Ill. Mar. 26, 2012)...........................................................................12

*Sjoblom v. Charter Commc'ns, LLC*,
  571 F. Supp. 2d 961 (W.D. Wis. 2008) ....................................................................................3

*Snider v. Heartland Beef, Inc.*,
  479 F. Supp. 3d 762 (C.D. Ill. 2020) ......................................................................................14

*Uncommon, LLC v. Spigen, Inc.*,
  926 F.3d 409 (7th Cir. 2019) ..................................................................................................10

*Univ. Healthsystem Consortium v. UnitedHealth Grp., Inc.*,
  68 F. Supp. 3d 917 (N.D. Ill. 2014) ..........................................................................................1

*W. Union Co. v. Tom Kula & Paymentus Grp., Inc.*,
  2017 WL 2973584 (N.D. Ill. July 12, 2017)............................................................................12

*Weaver v. Champion Petfoods USA Inc.*,
  3 F.4th 927 (7th Cir. 2021) .....................................................................................................10

*Wilk v. Brainshark, Inc.*,
  631 F. Supp. 3d 522 (N.D. Ill. 2022) ........................................................................................5

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Zellmer v. Meta Platforms, Inc.*,
  104 F.4th 1117 (9th Cir. 2024) ....................................................................................6

**Statutes**

740 ILCS 14/10..............................................................................................................12

740 ILCS 14/15....................................................................................................1, 11, 14

Fed. R. Civ. P. 12(b)(6).....................................................................................................4

Fed. R. Civ. P. 26..............................................................................................................1

Fed. R. Civ. P. 30..............................................................................................................1

Fed. R. Civ. P. 56(d) .........................................................................................................2

**Other Authorities**

Black's Law Dictionary .....................................................................................................4

Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in
  Privacy Law*, 104 B.U. L. REV. 593 (2024)..............................................................13

Rest. of the L., Consumer Cont., § 6 cmt. 6(d)...............................................................10

iv

## I.   INTRODUCTION

Amazon's motion for summary judgment demonstrated that Plaintiffs' sole claim under BIPA Section 15(b) fails because Amazon did not collect any biometric identifiers within the meaning of BIPA, and, in any event, obtained BIPA-compliant consent. Doomed by the undisputed facts set forth in Amazon's motion, Plaintiffs resort to invoking non-existent legal standards and making factual assertions with no evidentiary support. The Court should reject those tactics and grant Amazon's motion.

## II.   AMAZON'S SUMMARY JUDGMENT MOTION SHOULD BE GRANTED

### A.   Plaintiffs' Objections to Amazon's Declarations Are Meritless.

Plaintiffs' lead argument in opposition to Amazon's motion urges the Court to ignore the declarations of Canku Calargun and Josh McLane, two witnesses Plaintiffs deposed extensively during discovery. It would be improper to do so. Not only are motions to strike "disfavored" at the summary judgment stage, *Univ. Healthsystem Consortium v. UnitedHealth Grp., Inc.*, 68 F. Supp. 3d 917, 921 (N.D. Ill. 2014), but Plaintiffs fail to identify any valid basis for striking these declarations.

For starters, Amazon's declarations are not "untimely." *See* ECF 214 ("Opp.") at 2. A party has no obligation to disclose a declaration during discovery where, as here, the declaration did not yet exist. *See Hopkins v. McDonough*, 2024 WL 707223, at *12 n.9 (N.D. Ill. Feb. 21, 2024). Amazon was required to identify witnesses it might use to support its defenses and make those persons available for deposition. *See* Fed. R. Civ. P. 26 & 30. Amazon did so. Amazon disclosed both Mr. Calargun and Mr. McLane as potential witnesses during discovery, and Plaintiffs deposed both at length. They questioned Mr. Calargun for ***two full days*** regarding the technology covered in his declaration, *see, e.g.*, ECF 188-2, Exs. 11 & 13, and deposed Mr. McLane for ***a full day***

1

regarding the disclosures and consent flow covered by his declaration, *see, e.g.*, ECF 226-5 at 33:19-35:7, 58:17-61:5.

Plaintiffs' complaint that these witnesses have offered by declaration additional testimony that Plaintiffs neglected to cover during their depositions is not a violation of any discovery rule. Plaintiffs' strategic choices about which questions to ask (and not ask) at depositions do not limit the scope of testimony Amazon may use at summary judgment and do not make the declarations untimely or otherwise improper.[1] Indeed, "the Federal Rules expressly contemplate declarations in support of summary judgment, regardless of when in the discovery process the motion is filed," *Ng v. Lahood*, 952 F. Supp. 2d 85, 92 (D.D.C. 2013), and "courts have frequently upheld the use of post-discovery declarations, particularly in cases where, such as here, the declarants were previously disclosed witnesses," *Riemensnyder v. Paragon Sys.*, 2022 WL 1123187, at *3 (M.D. Pa. Apr. 14, 2022) (collecting cases); *accord Hopkins*, 2024 WL 707223, at *12 n.9 (rejecting argument that defendant was required to produce during discovery a declaration supporting a summary judgment motion filed after discovery closed).

Plaintiffs likewise have no basis to invoke the "sham affidavit" rule. That rule prevents a "***nonmoving*** party from creating an issue of fact" by submitting an affidavit that "contradicts prior deposition testimony." *Craig v. Wrought Washer Mfg., Inc.*, 108 F.4th 537, 543 (7th Cir. 2024). The rule simply does not apply where, as here, the "declaration was filed by the ***moving*** party rather than the nonmoving party." *Id.* at 544. Nor have Plaintiffs identified any way in which the declarations contradict deposition testimony, so the sham deposition rule wouldn't apply even if Amazon were the party opposing summary judgment.

---

[1] Tellingly, Plaintiffs do not request additional discovery under Rule 56(d). That is because their complaint is not about the failure to disclose a witness or surprise testimony, but with the undisputed facts that the testimony establishes in Amazon's favor.

2

To call an affidavit a sham, there must be an "unmistakably clear" contradiction with prior testimony. *Sjoblom v. Charter Commc'ns, LLC*, 571 F. Supp. 2d 961, 969-70 (W.D. Wis. 2008); *see also Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 488 (7th Cir. 2007) (affidavit testimony must be "plainly incredible"). Here, the **only** purported contradiction is a single sentence in Mr. Calargun's declaration—stating ███████████████████████████████ ████████████████████████████ ECF 194-20 ¶ 7. At his deposition, in response to Plaintiffs' hypothetical, abstract questions ungrounded in the technology at issue ("What is a face embedding?" and "Is each face in [a] face embedding unique?"), ███████ ██████████████████████████████████████

███████████████████████████████████████████ ████████████████████████████

ECF 217-1, Ex. 11 at 88:3-14.

That testimony is fully consistent with Mr. Calargun's statement in his declaration explaining what the models used here actually did. Speculation about the success of **other** models with different levels of "accuracies and success," *id.*, is not relevant to Amazon's technology. Mr. Calargun's declaration about Amazon's model is also supported by other record evidence. *See, e.g.*, ECF 226-3 at 182:5-12 ██████████████████████████████ ██████████████████████████████. There is no contradiction that could support striking any part of Mr. Calargun's declaration, let alone the whole thing.

### B. Embeddings Are Not Biometric Identifiers.

#### 1. Embeddings Must Be Capable of Identifying an Individual to Qualify as Biometric Identifiers.

Plaintiffs' legal claim is premised on a flawed reading of BIPA's scope: namely, that embeddings of faces in photographs generated by Amazon Photos' image-recognition feature are

3

"biometric identifiers" as defined by BIPA merely because they allegedly involve scans of face geometry.[2] *See* ECF 194 at 8-9. Indeed, in opposition to Amazon's motion, Plaintiffs' lead argument on this subject is that a scan of face geometry is purportedly a biometric identifier "even if it **cannot** be used to identify a person." *See* Opp. at 5-6.

Plaintiffs ask this Court to ignore the plain meaning of the word "identifier" within the statutory term "biometric identifier." Under Illinois law, however, courts must give statutory language its plain and ordinary meaning, in full, and without rendering any word superfluous. *See, e.g.*, *Fuesting v. Uline, Inc.*, 30 F. Supp. 3d 739, 742 (N.D. Ill. 2014). "Merriam-Webster defines 'identifier' as 'one that identifies' and Black's Law Dictionary defines 'identify' as 'to prove the identity of (a person or thing).'" *Martell v. X Corp.*, 2024 WL 3011353, at *3 (N.D. Ill. June 13, 2024). Then, by definition, "biometric **identifier**" refers only to a biometric "that identifies," i.e., "to prove the identity of a person." *See id*. Because the language of the statute is clear and unambiguous, its plain meaning is dispositive.

In its motion, Amazon cited **five** recent cases from courts in this district and a recent Ninth Circuit case adopting this plain-meaning interpretation of the term "biometric identifier." *See* ECF 194 at 8-9. Plaintiffs do not even attempt to distinguish those cases. Instead, Plaintiffs urge this Court to ignore the growing weight of authority and hold that "a scan of face geometry is a biometric identifier **even if it cannot** be used to identify a person." Opp. at 5-6. In support, Plaintiffs cite three inapposite cases, all decided at the pleading stage under the lenient Rule 12(b)(6) standard. One of those cases does not even address the issue of whether "biometric

---

[2] Plaintiffs argue Amazon waived any argument that it did not collect scans of face geometry. Not so. Amazon's opposition to Plaintiffs' summary judgment motion cites substantial evidence explaining that embeddings are not scans of face geometry. ECF 226 at 4-5; ECF 226-1 at 50-52 (ASF 2-8). That said, the Court need not reach the issue to rule in Amazon's favor if the Court holds that Amazon Photos face embeddings were incapable of identifying a person and thus were not biometric identifiers.

4

identifiers" must be capable of identifying a person. *See Wilk v. Brainshark, Inc.*, 631 F. Supp. 3d 522 (N.D. Ill. 2022). And the other two (out-of-circuit) cases declined to dismiss BIPA claims because the technology at issue could—according to allegations accepted as true at the pleadings stage—actually identify individuals. *See Sheppard v. Fantasia Trading LLC*, 731 F. Supp. 3d 1152, 1156, 1158 (C.D. Cal. 2024) (plaintiffs alleged technology "recognize[d] faces . . . and identif[ied] the person"); *Melzer v. Johnson & Johnson Consumer Inc.*, 2023 WL 3098633, at *1, *4 (D.N.J. Apr. 26, 2023) (plaintiffs alleged the "biometric data [collected] is tied to individuals' names, birthdates, and other personally identifying information"). By contrast, here, the at-issue embeddings are not tied to personally identifying information, and, thus, cannot identify anyone. *See* ECF 215 at 27-35 (SF 20-25)[3]; *see also Clarke v. Aveda Corp.*, 704 F. Supp. 3d 863, 866 n.2 (N.D. Ill. 2023) (distinguishing *Melzer* because there "the 'biometric data [collected] is tied to individuals' names, birthdates, and other personally identifying information'").

The Court should join the weight of authority, here and in other jurisdictions, by applying the plain language of BIPA and holding that scans of faces in photos are not biometric identifiers unless they can identify individuals. For example, in *G.T. v. Samsung Electronics America Inc.*, the plaintiff—like Plaintiffs here—contended that image recognition technology collected biometric identifiers through scanning face geometry in photos. 2024 WL 3520026, at *7 (N.D. Ill. July 24, 2024). The court, however, rejected this argument because the technology was not capable of "ascertain[ing] an individual's identity." *Id.* at *8. The court held, with logic directly applicable here, that image recognition technology is not regulated by BIPA where it merely "groups unidentified faces together, and it is the Device user who (has the option to) add names to the faces" because this does ***not*** show that the technology was capable of "identifying a person's

---

[3] While Plaintiffs' purport to dispute SF 22-25, they fail to cite evidence creating a triable issue and instead rely on meritless arguments addressed below in Section II(B)2.

identity." *Id.*; *see also Clarke*, 704 F. Supp. 3d at 865-66 (dismissing BIPA claim where plaintiffs failed to allege the at-issue technology was "capable of determining their identities"); *Castelaz v. Estée Lauder Cos., Inc.*, 2024 WL 136872, at *6-7 (N.D. Ill. Jan. 10, 2024) (dismissing BIPA claim where technology was not "capable of determining Plaintiffs and members of the Illinois class members' identities by using the collected facial scans"); *Daichendt v. CVS Pharm., Inc.*, 2022 WL 17404488, at *5 (N.D. Ill. Dec. 2, 2022) (dismissing BIPA claim where plaintiffs failed to allege defendant "connect[ed] the voluntary scans of face geometry with their identities"); *Martell*, 2024 WL 3011353, at *4 ("Without allegations that PhotoDNA uses facial geometry to identify individuals, Plaintiff failed to allege that the hashes are biometric identifiers."); *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1125-26 (9th Cir. 2024) (affirming summary judgment because face scans were not biometric identifiers given they could not identify an individual).

### 2.   The Embeddings Do Not and Cannot Identify a Person.

Amazon's motion demonstrates that the embeddings created by Amazon Photos do not, and cannot, identify anyone. *See* ECF 194 at 8-10. Plaintiffs respond with speculation that Amazon ***could*** create new technology and collect new data to change Amazon Photos into a biometric identification system. Opp. at 6-7. While Plaintiffs argue that ████████████████████ ███████████████████████████████████████ this would require Amazon Photos to build a new system capable of doing so, because ████████████████ ███████████████████████████████████████████ ████████████████████████████ Plaintiffs' speculation about what might be possible with as-yet unbuilt technology and additional data does not create a genuine dispute of fact as to whether the actual technology and data at issue here can be used to identify a person. If anything, Plaintiffs' speculation is a tacit admission that this fact is undisputed.

6

Even if a new Amazon Photos system was built, people in photos could not be identified unless Amazon gathered new data, including "a reference image that they knew for a fact this was a particular person." *Id.* 254:19-255:16. Indeed, Plaintiffs' own expert, Atif Hashmi, "assum[es] that Amazon cannot use Amazon Photos **as currently configured** to determine the identities of persons in the images stored in Amazon Photos," so he suggests "Amazon, with all its engineering and financial resources, . . . could scrape the Internet" to "set up a system similar to [third-party] Clearview AI that can receive a face image and provide information about a person for identification purposes." ECF 215 at 36 (SF 26). But this and Plaintiffs' other proposals for Amazon to change its technology to identify class members are speculative, impracticable, and likely illegal. *See* ECF 171 at 3-7. That Plaintiffs resort to extreme and hypothetical measures to try to identify putative class members only reinforces that Amazon Photos, "as currently configured," does not generate biometric identifiers, and thus is not regulated by BIPA.

Plaintiffs also argue that Amazon knows the name of Amazon Photos account holders, but that is different than identifying who appears in a photo. It cannot be assumed that the account holder appears in any photos, let alone all photos, in his or her account. There are many reasons for this, including that: (i) account holders often photograph friends, family members, and strangers, (ii) many photos contain multiple faces, and (iii) Amazon accounts are frequently shared, so the account holder is not always the one using Amazon Photos. Indeed, common sense dictates that Amazon cannot identify who appears in a photo based on the name of the account holder, and Plaintiffs' attempt to argue otherwise demonstrates the weakness of their position.

Plaintiffs also argue that users can label faces in their account, but the facts are that:

- Less than ███ of Amazon Photos users label faces. ECF 215 at 25 (SF 17).

- Labels can be a first name, a nickname, or anything else the user chooses. *Id.* at 26 (SF 18).

- Plaintiffs did not label, or at least do not recall labeling, any face cluster in Amazon Photos. *Id.* at 27 (SF 19).[4]

- If Plaintiff Angela Hogan labeled her face, she input "Mom" or "Angela" without any last name. *Id.* (SF 20).

- If Plaintiff B.H.'s face was labeled, it was his first name only—not his full name or including his last name. *Id.* (SF 21).

- Other than any label input by a user, no name or identifying information traceable to the individual appearing in the photo was ever associated with any embedding or photo. *Id.* at 28 (SF 22).

- Amazon does not verify or cross-reference any labels input by a user. *Id.* at 29 (SF 23).

- ███████████████████████████████████████████████ *Id.* at 35 (SF 25).

BIPA does not regulate Amazon Photos because it merely "groups unidentified faces together, and it is the Device user who (has the option to) add names to the faces." *G.T.*, 2024 WL 3520026, at *8. Plaintiffs' BIPA claim fails on this basis alone.

### C. Amazon's Disclosures Complied with BIPA and Plaintiffs Consented.

Even if Amazon Photos' embeddings are deemed biometric identifiers, Plaintiffs' Section 15(b) claim still fails because Amazon complied with BIPA's notice and consent requirements. *See* ECF 194 at 10-14. Plaintiffs fail to submit evidence creating a triable issue of fact on this issue and instead rely on flawed legal arguments and unsupported factual assertions.

#### 1. Amazon Disclosed What Was Collected.

Plaintiffs admit that Amazon disclosed that the technology would "group together photos containing people with similar facial characteristics" and collect "image recognition data,

---

[4] Ms. Hogan testified she did not recall labeling any face cluster in Amazon Photos. While Plaintiffs cite Ms. Hogan's earlier deposition testimony that she labeled her and B.H.'s profile names used to login to the Fire tablets, that is different than labeling face clusters in Amazon Photos. And, in any event, Ms. Hogan admitted that the labels she assigned of "Mom" or first names—without last names—are insufficient to identify her or her son. SF 20-21.

including data about the faces." ECF 215 at 45, 52 (SF 39, 46). Amazon further informed users they were agreeing to "important legal information" stating that "Illinois state law may require the informed written consent from an Illinois resident before performing image recognition on photos that include his or her face" and "[b]y enabling image recognition features for your account, you understand that image recognition analysis will be performed on the photos stored in your account." ECF 215 at 49-50 (SF 43-44).

Plaintiffs do *not* argue Amazon's disclosures were inaccurate. Instead, Plaintiffs argue they were "vague and ambiguous." But this is contradicted by Ms. Hogan's own deposition testimony. She understands the plain language in Amazon's disclosures. *Compare* ECF 226-6 (Hogan Tr.) 40:21-41:24 (testifying she understands language used in Amazon's disclosures), *with* ECF 194-10 ¶¶ 6, 8-9, 15 (citing Amazon's disclosures containing language that Ms. Hogan testified she understood). In contrast, Ms. Hogan did not know the meaning of "biometrics"—the term Plaintiffs now contend Amazon should have used. *See* ECF 226-6 (Hogan Tr.) 35:14-18. Ms. Hogan further testified that "Amazon should have informed [her] that it was using image recognition technology on the faces in [her] photographs" to allow her to decide whether to use the technology. ECF 215 at 56 (SF 51). But that *is exactly what Amazon prominently disclosed*, including on the screen when she voluntarily turned on the feature. *Id.* at 45-51, 54 (SF 39-45, 54). Plaintiffs now argue Amazon's disclosures should have contained the terms "biometric," "scan of face geometry," "face embedding," or "facial recognition." But Plaintiffs cite no authority—and Amazon is aware of none—requiring those particular words for a disclosure to comply with BIPA.[5]

---

[5] To the contrary, *Santana v. Take-Two Interactive Software, Inc.*, 717 F. App'x 12, 15-16 (2d Cir. 2017), rejected an argument that BIPA required using the statutory phrase "scan of face geometry" in disclosures. While the plaintiff's claims were dismissed for lack of standing, the opinion remains persuasive for the commonsense observation that BIPA does not mandate particular language in disclosures.

BIPA does not require companies to use legalese or technical terminology to describe the information being collected, as opposed to common, easy-to-understand language.

Contrary to Plaintiffs' assertion, the Court has not already "held" Amazon's disclosures insufficient. In its motion to dismiss ruling, the Court analyzed Amazon's disclosures in light of Plaintiffs' *false allegation* that Amazon should have disclosed it would use Plaintiffs' data to train AWS's "Rekognition" technology. ECF 49 at 3-4, 21. Plaintiffs now admit that allegation was false. ECF 215 at 57 (SF 52) (admitting Rekognition was never trained using Plaintiffs' data). Moreover, the Court's conclusion that "[t]he statement in the TOUs that Amazon retains data about the faces is not clear enough to notify a party that Amazon is collecting a biometric identifier," ECF 49 at 21, was made at the motion-to-dismiss stage, where the Court was required to "accept [] as true all well-pleaded facts alleged, and *draw [] all possible inferences in [the plaintiff's] favor*." *Id.* at 5. Now, the actual evidence—including Ms. Hogan's own deposition testimony— disproves Plaintiffs' allegation that Amazon Photos' disclosures, taken as a whole, failed to inform customers that their biometric data would be collected.

For example, Amazon's survey evidence shows that: (1) the vast majority—92%—of respondents who viewed Amazon Photos' disclosures believed that the image recognition feature collected their biometric data; and (2) adding the phrase "biometric data (a scan of face geometry from the photos)" made no statistically significant difference to respondents' beliefs.[6] ECF 215 at 53-54 (SF 48-49). While Plaintiffs hired a purported expert to critique the survey, his opinions do

---

[6] Courts consider survey evidence when deciding on summary judgment whether a reasonable consumer would understand contested language. *See, e.g.*, *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934-35 (7th Cir. 2021) (granting defendant's summary judgment motion and noting plaintiff's lack of survey evidence supporting his claim); *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 414, 424-25 (7th Cir. 2019) (holding survey evidence proved meaning of word to consumers). The Restatement of the Law of Consumer Contracts explains: "Of course, a business may demonstrate that a term does affect consumers' contracting decisions with appropriate evidentiary support, for example, by survey evidence[.]" Rest. of the L., Consumer Cont., § 6 cmt. 6(d).

10

not create a triable issue of material fact and should be excluded for the reasons described in Amazon's pending *Daubert* motion (ECF 195), including that he is not a survey expert and fails to apply a reliable methodology. Plaintiffs do not submit a survey of their own or any other evidence supporting their argument that Amazon's disclosures were inadequate. Thus, the uncontroverted evidence shows that Amazon complied with BIPA Section 15(b)(1)'s consent requirement.

### 2. Amazon Disclosed the Purpose and Retention Period.

Amazon disclosed that enabling "image recognition technology" would "group together photos containing people with similar facial characteristics . . . to organize and tag your photos." ECF 215 at 45 (SF 39). That was the purpose of this feature, and Plaintiffs submit no evidence to the contrary. While Plaintiffs argue Amazon should have disclosed "it was collecting face embeddings used for clustering," this is a distinction without a difference, other than urging technical language in place of the easy-to-understand language that Amazon used to communicate the same point. Plaintiffs also argue that Amazon ███████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████ *See* ECF 226-1 at 18-19 (response to SF 24).

Regarding retention, Amazon disclosed it would "retain image recognition data, including data about the faces, in the photos you store using the Services until you disable the image recognition features or your account's access to the Services is terminated." ECF 215 at 52 (SF 46). Amazon also disclosed that "files" in abandoned accounts—those that have not been active in the prior 2 years—will be deleted. *Id.* (SF 47). Plaintiffs do not, and cannot, show that Amazon failed to comply with these policies because Plaintiffs never disabled image recognition and never abandoned their account. *Id.* at 60-61 (SF 56-57). The uncontroverted evidence therefore shows

11

that Amazon complied with BIPA Section 15(b)(2) as well.

### 3. Amazon Obtained Plaintiffs' Informed Written Consent.

BIPA expressly allows obtaining informed written consent via an electronic signature. 740 ILCS 14/10. Here, Plaintiffs consented via electronic signature both when they: (1) accepted the Amazon Photos Terms of Use by tapping "Continue" after being informed: "By tapping 'Continue' or 'Start Here,' you agree to Amazon's Conditions of Use and the other terms found here" (ECF 215 at 40-42 (SF 31-34)); and (2) when they toggled-on image recognition, after being informed "by turning on image recognition features, you agree to this important legal information," which was a hyperlink to the Notice to Illinois Residents.[7] *Id.* at 58 (SF 54); *see also W. Union Co. v. Tom Kula & Paymentus Grp., Inc.*, 2017 WL 2973584, at *5 (N.D. Ill. July 12, 2017) (holding that clicking "Accept" is "valid means of expressing assent" in online transactions). The fact that Amazon's disclosures were presented, in part, via hyperlinks does not invalidate Plaintiffs' consent. *See Sherman v. AT&T Inc.*, 2012 WL 1021823, at *3 (N.D. Ill. Mar. 26, 2012) (clicking "a box next to hyperlinked terms generally provides adequate notice").

Plaintiffs argue they did not consent because Ms. Hogan claims she did not read Amazon's disclosures. Their theory is that ***constructive*** knowledge is insufficient and instead ***actual*** knowledge is required to satisfy BIPA's consent requirements. But Plaintiffs cite no authority supporting that proposition, nor could they. Under Illinois law, "that plaintiffs may not have clicked on the hyperlink or read through the terms of service . . . does not preclude the formation of a contract." *Ambrosius v. Chicago Athletic Clubs, LLC*, 203 N.E.3d 239, 251-52 (Ill. App. Ct. 2021); *see also Oelze v. Score Sports Venture, LLC*, 927 N.E.2d 137, 146 (Ill. App. Ct. 2010)

---

[7] Amazon's motion explains that Plaintiff Hogan consented on behalf of herself and her minor child, Plaintiff B.H. *See* ECF 194 at 11. Plaintiffs' opposition ignores and thus concedes this point. Accordingly, if the Court finds that Ms. Hogan consented, then the Court should also find that B.H. consented.

(holding failure to read agreement before manifesting assent to it does not invalidate agreement).[8] Because courts "must evaluate mutual assent based on the objective conduct of the parties," Ms. Hogan cannot avoid consent based on her "subjective intentions." *Nat'l Prod. Workers Union Ins. Tr. v. Cigna Corp.*, 665 F.3d 897, 901-02 (7th Cir. 2011). Further, Ms. Hogan was in touch with her lawyers about this lawsuit *before* she toggled on image recognition in April 2021 (ECF 215 at 57-58 (SF 53-54)), reinforcing that she knowingly consented. *See Canterbury v. Spence*, 464 F.2d 772, 788 (D.C. Cir. 1972) (consent shown by already-known facts).

D.    **Plaintiffs' Claim Is Barred by Waiver and Ratification.**

Amazon's motion demonstrated that Plaintiffs' claim is barred by Amazon's affirmative defenses of waiver and ratification. In response, Plaintiffs admit that they enabled image recognition on April 29, 2021, two days *after* responding to an advertisement from their lawyers seeking a class representative for this case. ECF 215 at 57-58 (SF 53-54). Amazon's business records show that this was the first—and only—time image recognition was enabled for Plaintiffs' account. ECF 194-10 ¶¶ 10, 14; ECF 194-11. Plaintiffs, however, assert that image recognition was enabled earlier on January 4, 2020—*a year before they began using Amazon Photos*. *See* ECF 223 at 3; ECF 23 ¶¶ 69-70 (operative complaint, alleging Plaintiffs first used Amazon Photos in January 2021). That makes no sense, because Plaintiffs obviously could not have enabled image

---

[8] Plaintiffs cite a law review article by Daniel Solove for the proposition that informed consent goes beyond "merely posting privacy notices, lengthy terms and conditions, or some other documents, which is typical of most instances of consent in privacy law." Opp. at 12. Solove's article, however, did not describe controlling law—just the opposite, as Solove argues for a change to the law. *See* Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 B.U. L. REV. 593, 615 (2024) ("Privacy law should take a *new approach* to consent that I call 'murky consent.'" (emphasis added)). Solove's argument about "lengthy" disclosure documents is also inapposite here, where there is optional, add-on functionality, and the "How Does Image Recognition Work?" webpage and the "Notice to Illinois Residents" webpage provided disclosures in a concise 315 and 145 words, respectively. ECF 224-2 at 16; *id.* at 632. Likewise, the "Find People Places, and Things" webpage was a concise 74 words. *Id.* at 352.

recognition before registering to use Amazon Photos.[9] Plaintiffs offer no explanation for this glaring flaw in their timeline.

Even if image recognition was somehow turned on more than a year before Plaintiffs began using Amazon Photos (it was not) and then turned off, the undisputed fact remains that Ms. Hogan turned on image recognition two days after responding to her lawyer's advertisement seeking plaintiffs for this case. In doing so, she ***knowingly created*** the alleged biometric data at issue in this case, with full knowledge about the consequence of her actions for herself and her son. This further demonstrates that Plaintiffs provided informed consent, so Amazon should prevail on its affirmative defenses of waiver and ratification.

Plaintiffs argue that the defenses of waiver and ratification do not apply, citing two non-controlling opinions erroneously holding that BIPA abrogates common-law defenses. *See* Opp. at 14 (citing *Snider v. Heartland Beef, Inc.*, 479 F. Supp. 3d 762, 772 (C.D. Ill. 2020); *Brandenberg v. Meridian Senior Living, LLC*, 564 F. Supp. 3d 627, 635 (C.D. Ill. 2021)). But it is well established that common law defenses remain unless ***expressly*** abrogated by statute. *See Carle Found. v. Ill. Dep't of Revenue*, 917 N.E.2d 1136, 1146 (Ill. App. Ct. 2009). Nothing in BIPA expressly abrogates waiver or ratification defenses. *See generally* 740 ILCS 14/15.

Thus, the Court should apply these defenses and hold that Plaintiffs' claim is barred.

## III.   <u>CONCLUSION</u>

The Court should grant Amazon's summary judgment motion and dismiss Plaintiffs' claim.

---

[9] While Plaintiffs speculate that image recognition might have been automatically enabled in January 2020 before they began using Amazon Photos, there is no evidence of this. Moreover, Plaintiffs' operative complaint admits that for Illinois users, like Plaintiffs, image recognition was ***not*** automatically enabled and instead had to be toggled on by the user. ECF 23 ¶ 39; *see also Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings . . . that are binding upon the party making them. They may not be controverted at trial or on appeal.").

Date: February 7, 2025

**MORGAN, LEWIS & BOCKIUS LLP**


/s/ *Elizabeth B. Herrington*
Elizabeth B. Herrington
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
T: (312) 324-1445
F: (312) 324-1001
beth.herrington@morganlewis.com


J. Warren Rissier (*pro hac vice*)
300 South Grand Avenue, Twenty-Second Floor
Los Angeles, CA 90071-3132
T: (213) 680-6860
F: (213) 612-2501
warren.rissier@morganlewis.com

*Counsel for Defendant Amazon.com, Inc.*

15

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 7, 2025, I caused a copy of the foregoing ***Defendant's Reply In Support of Motion for Summary Judgment*** to be served upon all counsel of record via electronic filing using the CM/ECF system and via email.

/s/ Elizabeth B. Herrington
*Attorney for Defendants*