**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANGELA HOGAN and B.H., a minor, by and through his guardian Angela Hogan, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC.<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 21-CV-03169<br><br>Judge John J. Tharp, Jr. |

**MEMORANDUM OPINION AND ORDER**

In this suit under section 15(b) of the Illinois Biometric Information Privacy Act ("BIPA"), the plaintiffs allege that Amazon Photos performed facial scans of their digital photographs and thereby collected biometric identifiers and information without providing the required notice and obtaining the written consent of the pictured individuals. The named plaintiffs move to certify two classes of purported victims: users and non-users of Amazon Photos whose faces were scanned in users' photographs. Amazon opposes the motion, and the plaintiffs have moved to exclude certain evidence on which Amazon relies to defeat class certification. The Court finds that, to the extent any disclosure violations occurred, exclusion is not the proper remedy. As to certification, the Court grants the motion to certify a class of users and denies the motion with respect to a class of non-users. The Court further appoints the named plaintiffs as class representatives and their counsel and co-counsel as the attorneys for the class.

**BACKGROUND**

**1. The Act**

As relevant here, BIPA provides:

> No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:
>
> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15(b). The purpose of this section is "to ensure that consumers understand, before providing their biometric data, how that information will be used, who will have access to it, and for how long it will be retained." *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020). It ensures a person's "opportunity to consider whether the terms of this collection and usage were acceptable given the attendant risks." *Id.*; *see Mora v. J&M Plating, Inc.*, 213 N.E.3d 942, 953 (Ill. App. Ct. 2022) ("Section 15(b)'s purpose "is to provide individuals certain information when a private entity seeks to obtain their biometric data (including the length of term for which the data will be stored) and to give them control over whether to allow their data to be collected.").

**2. Amazon Photos**

Amazon Photos, formerly Prime Photos, is Amazon's mobile application ("app") for storing digital photographs. Its image recognition feature is an optional organizational tool. When the feature is enabled, algorithms detect an image of a face (or object, etc.) within a photo and then generate a string of numbers, called an "embedding," associated with the image. Embeddings are not images themselves—they are numerical representations—but by associating similar embeddings, images of the same person can be grouped (sometimes imperfectly). Amazon's Face Processing Technology uses face embeddings to "cluster" images without input from the user. The

user can assign a label to the clusters, such as a name or nickname, but the app itself does not label people or attempt to associate the images with specific people. Only about 2% of the app's users assign such labels. By default, image recognition was disabled for Illinois users, who had to activate the feature themselves.

Amazon also has a separate image-recognition technology called Rekognition. It was originally used to generate the face embeddings used for clustering in Amazon Photos, but over time Amazon transitioned to Face Processing Technology in Amazon Photos to generate embeddings. (Nevertheless, Rekognition's face detection technology remained part of the process, and embeddings created for Amazon Photos were also stored on Rekognition servers.) Rekognition, which is an Amazon Web Services product, is sold to third parties for purposes such as identity verification, but that technology is not built into Amazon Photos.

The Amazon Photos login screen states at the bottom, below the fields for entering the user's email or phone number and password: "By signing in, you agree to the Privacy Notice and the Amazon Photos Terms of Use." These documents are hyperlinked within that statement. Users can, however, log into Amazon Photos without clicking on these links. If a user reads the Terms of Use, he will encounter terms like "image recognition," "image recognition technology," "image recognition data," "data about the faces in the photos you store," "image recognition features," and "image recognition analysis." The Terms of Use do not define those terms, however, or use the terms "biometric," "biometric data," "biometric identifier," "biometric information," "scan of face geometry," "face embedding," or "facial recognition." The Terms of Use inform users that when image recognition is enabled "you agree that the Services may use image recognition technology to group together photos containing people with similar facial characteristics, and to organize and tag your photos." The "image recognition data, including data about the faces" is retained "until

you disable the image recognition feature or your account's access to the Services is terminated." The general Privacy Notice does not mention Amazon Photos or contain any language relating to image recognition, data about faces, embedding, or biometric data.

Before a user uploads images, the landing screen in the Photos app has empty photo albums for people, places, and things. If an Illinois user who had not yet enabled image recognition clicked on the "People" album, the app prompted them to turn on "image recognition" in their settings (though the app could be used without turning on image recognition). To do so, the user would toggle a virtual switch, which would allow the "People" album to be populated with clustered images. On the same screen as the toggle switch (as a result of BIPA) appeared the statement: "Illinois residents, by turning on image recognition features, you agree to this important legal information." Clicking a link brought the user to a "Notice to Illinois residents." This page informed users, among other things, that in Illinois, the image recognition was turned off by default and that by enabling it "you understand that image recognition analysis will be performed on the photos stored in your account." Another hyperlink ("Learn More") under the image recognition switch brought (any) user to a webpage called "How Does Image Recognition Work?" Users could enable image recognition without viewing the Notice to Illinois Residents or "How Does Image Recognition Work?"

Unsurprisingly, non-users of Amazon Photos do not receive any information from Amazon about the use of image recognition technology. Instead, the Notice to Illinois Residents states that, "[b]y enabling image recognition features for your account, . . . you represent to us that you have obtained the consent of the individuals in the photos stored in your account permitting us to use image recognition analysis on photos of them." Amazon Photos users do not have to submit written

releases from non-users or otherwise prove that the non-users received notice of what was being collected from their facial images.

Amazon has a general File Retention Policy—which applies to Amazon Photos—stating that after two years of inactivity, all files for "abandoned" accounts will be deleted." "Files" is undefined. Users of Amazon Photos can delete photos from their accounts, but no publicly available document tells users whether their image-recognition data is deleted, and if so, when.

Because of this lawsuit, on January 31, 2023, Amazon Photos disabled image recognition for Illinois residents.

**3. The Named Plaintiffs**

On December 7, 2020, Angela Hogan, an Illinois resident, purchased two Amazon Fire tablets as gifts for her children, including then-infant B.H., whose tablet was first used later that month. To activate the tablet, Hogan had to enter the email address associated with her Amazon account and her Amazon password. At the time, she did not read the Terms of Use because, she testified, they "didn't appear on [her] screen." Amazon Photos came pre-installed on the tablet; she did not have to download it. After taking photos and opening the Photos app for the first time, her photos were already stored there. She did not have to pass through a login screen and did not see links to Terms of Use or a notice about image recognition.

Hogan labeled photo clusters depicting each of her children with their first names. She labeled a cluster of photos containing her face as "Mom." Hogan enjoyed what the feature did for her photos. She liked the way the clusters allowed her to see her son develop over time. Nevertheless, Ms. Hogan would not have used the app if she had known beforehand what the image recognition feature did and how it worked. She believes that the app collected her and her

son's biometric data without her permission and without notifying her properly. She did not, however, disable the image-recognition feature after learning more about it.

Hogan does not recall ever enabling image recognition in her Amazon Photos account and testified that she does not know how to do so. She testified that she first started using Amazon Photos around January of 2021 (other evidence suggests it might have been a year earlier). Someone using her account toggled on the image-recognition feature on April 29, 2021, though it might have been activated at other times before that (this is disputed, at least for purposes of the class-certification motion).

**4. The Lawsuit**

On May 12, 2021, B.H., by and through his mother Angela Hogan, sued Amazon in the Circuit Court of Cook County on behalf of a class. He alleged violations of sections 15(a), 15(b), and 15(c) of BIPA and common-law unjust enrichment (on the theory that Amazon collected his biometric data and used it to train software from which it profited). Amazon removed the lawsuit to federal court. The plaintiff amended the complaint, adding Angela Hogan as an independent plaintiff, and Amazon moved to dismiss the amended complaint. This court remanded the § 15(a) and § 15(c) claims to state court for lack of Article III standing and dismissed the unjust-enrichment claim under Rule 12(b)(6).[1] Therefore, all that remains here is a claim under §15(b). The parties also continue to litigate in state court. At the time of the class-certification briefing in this case, discovery in the state case was ongoing.

## DISCUSSION

### Motion to Exclude Evidence

[1] The Honorable Harry D. Leinenweber presiding.

Before addressing the substance of the class-certification motion, the Court must resolve the plaintiffs' motion to exclude, under Federal Rule of Civil Procedure 37(c)(1), certain evidence from consideration in opposition to that motion. The plaintiffs contend that Amazon relied upon evidence that it belatedly produced in this case and submitted declarations and expert opinions that also relied upon such evidence or are otherwise improper.

Federal Rule of Civil Procedure 26(a) and 26(e) govern the substance of parties' disclosure obligations and their duty to supplement their disclosures in a timely manner. In turn, Rule 37(c)(1) authorizes sanctions for violations of these requirements: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Under this rule, "the exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004). "Substantially justified" takes the same meaning in this rule as it does in the Equal Access to Justice Act. *Pable v. Chicago Transit Auth.*, 145 F.4th 712, 723–24 (7th Cir. 2025). In that context, the Supreme Court has defined the term as "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Determining harmlessness involves a holistic assessment with reference to the non-exhaustive factors listed in *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003): "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date."

As to each category of evidence, the Court must first assess whether Amazon violated Rule 26 in the manner plaintiffs claim. *Karum Holdings LLC v. Lowe's Companies, Inc*., 895 F.3d 944, 951 (7th Cir. 2018). If it did, the Court must determine whether exclusion is mandated or whether Amazon has established that the violation was substantially justified or harmless. *Id*. The Court takes the categories in turn.

**1. Declarations of previously deposed witnesses**

First, the plaintiffs move to exclude the declarations of Bahri Yilmaz (Senior Manager of Business Intelligence at Amazon Photos) and Canku Calargun (Senior Manager for Amazon Photos) because they discuss data about Amazon Photos accounts that was produced in this case a year after the fact-discovery deadline and over two months after the plaintiffs moved for class certification.[2] The contested portions of the Yilmaz declaration pertain to his reliance on records about the number of out-of-state billing addresses for the 339,847 Amazon Photos accounts associated with an Illinois address and about users' use of the "Auto-Save" and cellular-uploading features—also relevant to Amazon's ability to know users' locations when photos were uploaded.

The Calargun declaration addresses when Ms. Hogan enabled image-recognition in her account, and therefore, plaintiffs say, "rewrites" his deposition testimony, on this topic.[3] Namely,

---

[2] Fact discovery closed on August 31, 2023. The plaintiffs moved for class certification on March 22, 2024; the defendant responded on June 17, 2024; the plaintiffs replied on August 30, 2024; the defendant filed a sur-reply on September 30, 2024. The plaintiffs moved to exclude evidence from consideration on class certification on September 13, 2024; Amazon responded on October 1, 2024; plaintiffs replied on October 16, 2024. The plaintiffs and defendant each filed their motions for summary judgment and *Daubert* motions on November 12, 2024.

[3] When this issue arises at summary judgment, the rule is that "a party may not avoid summary judgment by attempting to contradict his prior deposition testimony with a later affidavit, absent a plausible explanation for the inconsistency," but if "deposition testimony is ambiguous or incomplete…the witness may legitimately clarify or expand upon that testimony by way of an affidavit." *Shepherd v. Slater Steels Corp*., 168 F.3d 998, 1007 (7th Cir. 1999). To the extent this rule applies here, the Court does not see an inherent conflict in the testimony. The deposition questions and answers were not especially clear (nor is the document shown to the witness). Still,

someone enabled facial recognition on Hogan's account on April 29, 2021. Amazon, based on Calargun's declaration, says that this was the one and only time Hogan activated the feature; meaning, if true, she did so two days after answering a Facebook solicitation from her now-lawyers The plaintiffs contend (with some supporting evidence, including from Calargun's first deposition) that Angela began using Amazon Photos a year earlier. This timing could be relevant to whether the requirements for class certification are met. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012); *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) ("Before deciding whether to allow a case to proceed as a class action, therefore, a judge should make whatever factual and legal inquiries are necessary under Rule 23.") For example, the issue of notice could be much different for Ms. Hogan than other class members if she was apprised by attorneys of the possible collection of biometric data before enabling imaging recognition. But the first task is to resolve whether the declarations can come in.

First, these declarations are not improper by virtue of the declarants having been deposed already (in Calargun's case, twice, because he was a Rule 30(b)(6) witness) or already having submitted a declaration. Like the plaintiffs did, Amazon was entitled to submit evidence relevant to the class-certification decision.[4] And it was not required to elicit testimony from its own witnesses when the plaintiffs deposed them. Second, the declarations are themselves timely; they were filed along with the timely response to the class-certification motion. And it does not matter

---

Calargun might have a credibility problem with the trier of fact based on his elaboration (or correction, or revision) of his deposition testimony — just as Ms. Hogan might with respect to her statements that she used Amazon Photos only on the tablets and also that she began using the program in January 2020, before she owned them. (Amazon contends that Calargun was misled at his first deposition, whereas the plaintiffs assert that Ms. Hogan could have activated and deactivated the feature before April 2021).

[4] But Amazon's contention that the Calrgun and Yilmaz declarations are proper because the plaintiffs also relied on a declaration is disingenuous. An affidavit authenticating exhibits (like plaintiffs') is not at all akin to a declaration giving substantive evidence in itself.

how long after the fact discovery period closed they came; declarations supporting substantive motions, to the extent based on the declarant's personal knowledge, are not part of fact discovery. *See generally* Fed. Rs. Civ. P. 30-36, 56(c)(4).

The problem is the declarants' reliance on records that were belatedly disclosed to the plaintiffs. The defendant's position—that anything timely produced in the state case is timely here— is unreasonable. This matter has its own case management schedule, to which the parties were bound to adhere. Rule 16(b)(4) permits modification of a schedule "only for good cause and with the judge's consent." Nothing in the scheduling or case management orders issued in this case referred to or incorporated the deadlines in the state case. True, the Amended Confidentiality Order in this case states that confidential documents could be used in "this litigation," which is defined to mean both the federal and state cases. Am. Conf. Order, Dkt. # 80 at ¶ 5(a) & n.2. But this allowance does not purport to, and does not, modify any scheduling order in the federal case, nor could it under Rule 16(b)(4). The parties were bound by the deadlines in the case management orders, including the cut-off of fact discovery on August 31, 2023. Order Amending the Case Schedule, Dkt. # 112; *see* N.D. Ill. LR 16.1 Standing Order Establishing Pretrial Procedure ¶ 4; *Tetzlaff v. Educ. Credit Mgmt. Corp.*, 794 F.3d 756, 760 (7th Cir. 2015) (enforcing expert disclosure deadline). So, the belated disclosure here is not substantially justified by the timeline in the state case.

Moreover, the modification of the proposed class definitions does not substantially justify late disclosure of evidence, as Amazon contends. This is a stronger argument for Amazon because the current class definitions are more specific and technical, and narrow down what evidence might be relevant to the claims and defenses. Further, the original class was defined with reference to the collection of "biometric identifiers," something that, problematically, married the class definition

to an important contested merits issue—namely, whether the image recognition feature obtained any "biometric" data. Still, its disagreement about what constitutes "biometric" data does not mean Amazon can reasonably argue that detailed records about the Illinois accounts at issue—such as how many used image recognition—were not relevant until the class definition was clarified (or until it saw any particular expert report). Rule 26(e) does not give a party a license to disregard discovery deadlines and produce more evidence under the guise of "supplementing," and Amazon has not made an effective case that materials underlying the two declarations were not available or were not relevant until it saw the class-certification motion.

Nevertheless, Amazon has demonstrated that the late disclosures are harmless when the *David v. Caterpillar Inc.* factors are applied. Under the first two factors (prejudice to the plaintiffs and opportunity to cure it), the plaintiffs had ample time to evaluate and respond to the evidence before replying in support of their class-certification motion. *See David,* 324 F.3d at 857. The plaintiffs did not need to seek relief from the Court for more time to conduct discovery and reply; the parties worked that out themselves. The Court further notes that, despite the plaintiffs' position that these materials should have been produced in response to written discovery requests, they never moved to compel further responses soliciting them, even when Amazon raised objections the plaintiffs now label inadequate. With respect to the materials cited by Yilmaz, this is information the plaintiffs wanted all along and received in time to use.[5] Although the burden is on Amazon to establish harmlessness, the plaintiffs' case for prejudice is reduced under these circumstances.

[5] The Court should not be understood to condone Amazon's late disclosure of responsive documents, especially those cited in the Yilmaz declaration. Again, the lateness violated Rule 26 and is not substantially justified.

As for the third factor, the likelihood of disruption to the trial, the summary-judgment stage was months (roughly 5) away at the time of the disclosures. Rather than seeking more time for discovery, the plaintiffs filed their summary-judgment motion and responded to Amazon's, which suggests their ability to move forward was not disrupted. *See Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 418 (7th Cir. 2019). They could have sought a stay or filed a motion under Rule 56(d). Nor can the plaintiffs claim disruption to the trial if they had what they needed for a summary-judgment motion (and defense of one); in any event, no trial date has been set. Finally, although the Court is not impressed with Amazon's rationales for the trickling document disclosures after fact discovery closed, it sees no bad faith or willfulness. *See id.* (equating these with a "tactic of surprise" or "intentional or reckless behavior").

**2. Certain opinions of Margaret Daley**

Next the plaintiffs contend that the Court should exclude certain opinions in the rebuttal expert report of forensic consultant Margaret Daley that rely explicitly on the Calargun Declaration: first, that people in photos stored on Amazon Photos cannot be identified in an automatic way; and second, that individualized investigation is needed to determine a user's residency at the time of facial image embedding. But the declaration is not the only source for these opinions. Further, the Court has already explained why the Calargun declaration is not excludable. Finally, the plaintiffs have cited no authority for a court blue-penciling an expert report. The court will not excise individual statements from the report without firmer grounding.[6]

**3. Report of Dr. Michael Siegel**

[6] The plaintiffs raise violations of Rule 26 with respect to the materials relied upon by this expert and the others. For purposes of class certification, they do not seek to disqualify these experts under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Nothing in this decision constitutes a ruling on whether these experts are qualified or used reliable methodology to form their opinions.

The plaintiffs next seek to exclude the entire expert report of Dr. Siegel, which primarily addresses the security of the (allegedly) biometric data collected by Amazon Photos. They contend that the report is heavily based on documents produced after fact discovery closed and improperly relies on interviews with Amazon employees who were not disclosed as witnesses. The plaintiffs also argue that data security is no issue in this case, in contrast to the state case, and that Dr. Siegel does not know who wrote "his" report.

The Court has already concluded that the disclosure of evidence after fact discovery closed—provided it existed earlier and was responsive to proper discovery requests or mandatory disclosures—was untimely and therefore violated Rule 26. However, the untimeliness was harmless as it relates to Dr. Siegel's report, too. The plaintiffs received the documents before deposing this expert, and they have their own expert on the security of the data uploaded to Amazon Photos. The harsh remedy of exclusion is not warranted.

The plaintiffs next object to Dr. Siegel interviewing eight Amazon employees and basing some of his opinions on the interviews without Amazon having provided Rule 26 disclosures for these "witnesses." As a matter of admissibility, reports based on interviews with a party's employees are not inherently suspect. Fed. R. Evid. 703 (Experts can rely on facts or data that are not themselves admissible); *cf. NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 790 (7th Cir. 2000) ("data gathered by others" can be used by experts). "[A] number of cases have concluded that interviews can be a reliable source of data upon which to base expert opinion, so long as such data is reasonably relied upon by experts in the relevant field." *3600 Michigan Co. v. Infra-Metals, Co.*, No. 2:07-CV-367-PPS, 2011 WL 8991, at *5 (N.D. Ind. Jan. 3, 2011) (collecting cases).

Despite the regularity with which experts rely on witnesses, the plaintiffs do not cite any authority—nor can the Court find any— requiring anyone providing information to an expert to

have been disclosed as witnesses under Rule 26. These people—whom Amazon identified to the plaintiffs before they deposed Dr. Siegel— are not witnesses or offering evidence.[7] The plaintiffs were entitled to depose the expert and find out all about the interviews, and they did so. But they were not entitled to Rule 26 disclosures with respect to the interviewees.

The Court also will not exclude Dr. Siegel's entire report on the grounds of irrelevance. Sanctions under Rule 37(c) are to enforce the disclosure rules, not other discovery rules or the Rules of Evidence. And if, as the plaintiffs maintain, matters of cybersecurity are irrelevant to the class certification motion, then declining to exclude the report cannot harm them.

Finally, the plaintiffs ask the Court to exclude Dr. Siegel's report because "he does not know who wrote it." This objection is also beyond the bounds of a Rule 37 motion. And it is, moreover, an overstatement: the expert testified that his report was prepared "under his direction" and reflects "[his] opinion and only [his] opinion." He also testified that he worked with the staff of an expert consulting firm. His testimony that he did not know whether Amazon employees or counsel had drafted any of the report does not establish that the opinions are not his. *See* Fed. R. Civ. P. 26 cmt. on Rule 26(a)(2)(B)(1993) ("Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports, and indeed…this assistance may be needed"). The authorship of a report can go to the weight of the evidence, and it is an appropriate matter for cross-examination (and inquiry at a deposition, as occurred here). *See, e.g.*, *Berkeley*IEOR v. Teradata Operations, Inc.,* No. 17 C 7472, 2024 WL 5075416, at *3 (N.D. Ill. Jan. 25, 2024). And "ghost" authorship can be grounds for a *Daubert* motion. *See id*. But the instant

[7] To be clear, the Court's view would be very different if Amazon had submitted evidence directly from these employees or tried to use them as trial witnesses. These employees cannot be witnesses in the case. Further, the fact that the witness interviews apparently were not recorded and no notes were taken could affect the Court's view of the expert's reliability and methodology under Rule 702/ *Daubert*, but all that is before the Court now is whether disclosure was required.

motion seeks only to enforce Rule 26. Dr. Siegel was disclosed as an expert properly, and the late disclosure of material on which he relied was harmless.

**4. All evidence produced after close of fact discovery**

Finally, the plaintiffs argue that the Court should exclude *all* evidence that Amazon disclosed after the close of fact discovery in this case, unless produced pursuant to a court order or agreement with the plaintiffs. The plaintiffs contend that Amazon's discovery conduct, and its position that it can rely on evidence that was timely produced in either this case or the state case, justify a blanket order excluding all records produced belatedly. Although the Court understands the concern, it cannot issue such a blanket order. Under Rule 37(c), "the punishment should fit the crime." *Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 752 (7th Cir. 2005). Excluding even specific pieces of evidence is a severe and harsh sanction that the plaintiffs have not justified here because of the showing of harmlessness. *See Melendez v. Illinois Bell Tel. Co*., 79 F.3d 661, 672 (7th Cir. 1996) (acknowledging "severity" of exclusion as sanction for late disclosure). And a blanket ruling would be inconsistent with Rule 37(c) allowing a party to provide substantial justification for a late production or to demonstrate that the untimeliness is harmless. Further, as the plaintiffs concede, there is a strong presumption in favor of resolving issues on the merits. *See, e.g*., *Rice v. City of Chicago*, 333 F.3d 780, 786 (7th Cir. 2003) (discussing dismissal sanction.). Indiscriminately excluding a swath of evidence from consideration violates that principle.[8] And some of that evidence is favorable to the plaintiffs: that

[8] Moreover, although the plaintiffs cite how many documents and how many pages were produced after fact discovery closed, they give no detail (except as it relates to the declarations and reports they wish to bar from consideration) about that evidence—a log, for example. The wholesale exclusion of evidence without knowing what it comprises is the antithesis of sound exercise of the Court's discretion in the supervision of discovery.

they are willing to pox their own house to punish Amazon does not make the Court more willing to prioritize a broad sanction over a merits determination.

**Motion for Class Certification**

With the evidentiary issues resolved, the Court can proceed to considering class certification. The plaintiffs bear the burden of proving by a preponderance of the evidence that class certification is proper *Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 843 (7th Cir. 2022). As a threshold issue, any proposed class "must be sufficiently definite that its members are ascertainable." *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 493 (7th Cir. 2012) (reversing certification decision where potential class members were unknown and unknowable). The proposed class must next meet the requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation. Then the proposed class must also satisfy one of the subsections in Rule 23(b); as relevant here, that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," Rule 23(b)(2); or that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," Rule 23(b)(3). "And if a class plaintiff satisfies all the requirements of Rule 23(a) and Rule 23(b), the class must be certified, even if it is sure to fail on the merits." *Simpson v. Dart*, 23 F.4th 706, 711 (7th Cir. 2022) (citing *Shady Grove Orthopedic Assocs., P.A. v. All-state Ins. Co.*, 559 U.S. 393, 399–400 (2010)).

In evaluating the plaintiffs' motion, the Court need not assume the truth of the plaintiffs' allegations and may "receive evidence and resolve factual disputes as necessary to decide whether certification is appropriate." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th

Cir. 2012); *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) ("Before deciding whether to allow a case to proceed as a class action, therefore, a judge should make whatever factual and legal inquiries are necessary under Rule 23.") Though courts "should not turn the class certification proceedings into a dress rehearsal for trial on the merits," *id.*, "[m]erit questions may be considered to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied," *Jacks v. DirectSat USA, LLC*, 118 F.4th 888, 895 (7th Cir. 2024) (quotation marks and citations omitted); *see Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

After the motion for class certification and motion to exclude evidence were fully briefed, the parties cross-moved for summary judgment and moved to exclude the reports of a combined 11 experts. Those motions are now fully briefed as well. But the Court resolves the class-certification motion first, and solely on the briefing and exhibits the parties filed in connection with that motion. *See Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1058 (7th Cir. 2016) (cautioning plaintiffs against seeking merits ruling before class-certification decision and urging district courts not to act on summary-judgment motion before ruling on class certification).[9]

## I. Class Definitions and Ascertainability

The plaintiffs move to certify two classes pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3). The proposed classes are, for the period of October 18, 2016 through January 31, 2023 (when Amazon Photos disabled image recognition for Illinois residents):

Class 1 – The User Class:

> Any Illinois resident whose face appears in a photo stored in their own Amazon Photos account that had image recognition enabled during the Class Period, where Amazon generated a face embedding from the image

---

[9] For the same reason, class notice must be provided before the Court rules on the pending summary judgment motions.

of the face.

Class 2 – The Non-User Class:

> Any Illinois resident whose face appears in a photo stored in another Illinois resident's Amazon Photos account that had image recognition enabled during the Class Period, where Amazon generated a face embedding from the image of the face.

Amazon contends that these proposed classes fail at the threshold step of being ascertainable. For a class to satisfy the ascertainability standard, it must be "indeed identifiable as a class," *Oshana v. Coca-Cola Co*., 472 F.3d 506, 513 (7th Cir. 2006), namely: "defined clearly and based on objective criteria," *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). A class can fall short of this standard if the definition is vague or amorphous, rather than "identify[ing] a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Mullins*, 795 F.3d at 659-660. A class "defined by subjective criteria" or "defined in terms of success on the merits" is also likely to fail. *Id*.

The plaintiffs argue that their classes easily satisfy the ascertainability standard, explaining: "[A] person is a Class Member if they (1) are an Illinois resident (2) whose face appears in a photo stored in an Amazon Photos account (their own account in the case of the User Class; another person's account for the Non-User class) (3) that had image recognition enabled during the Class Period (4) where Amazon generated a face embedding from the image of the face."

The Court agrees halfway with each party. Although the User Class is sufficiently concrete and identifiable, the Non-User Class is not. Starting with the latter: A Non-User class is not ascertainable because, as the defendant contends, it is an amorphous and nearly unidentifiable group of people. Amazon does not currently identify the people whose faces appear in photos stored in the app and does not know who the non-users are. The non-users could be pictured in any of the 978 million photos stored in the nearly 340,000 Amazon Photos accounts associated with

an Illinois address. Few, if any, of the non-users would have any way of knowing that they appear in users' photographs, that the photos are stored in Amazon Photos, and that image-recognition is enabled in those accounts.

In response the plaintiffs cite two examples of ways to identify members. First, they propose that class members can identify themselves through sworn affidavits. To be sure, affidavits are an acceptable means of identifying class members. *Mullins*, 795 F.3d at 672. But the plaintiffs do not explain how putative class members could identify themselves as such; they do not answer the defendant's argument that "people likely have zero idea that photos of their faces are being stored by someone else (if they are even aware of the photo in the first place), where it is being stored (e.g., in Amazon Photos instead of Apple Photos or Google Photos), and whether or not the account holder has enabled image recognition." Under these circumstances, publishing a notice would be unlikely to lead to self-identification, and plaintiffs have not identified any other means of providing notice.

Second, the plaintiffs assert (for the first time in their reply brief) that Amazon can use its Rekognition technology to identify the non-users in the photos stored by users. One of their experts, Dr. Atif Hashmi, explained one potential process for harnessing Amazon's own technology: "An individual can submit an image of their face (e.g., a 'selfie') through . . . an online portal, and the selfie would then be processed by Amazon's facial-recognition technology to determine whether the potential Class Member is a person for who Amazon Photos created and stored a . . . face embedding …. Along with their selfie, the potential Class Member also could submit through the portal their name, contact information, and even dates during which they resided in Illinois." As an example, the plaintiffs point to the use of Amazon's technology to enable

participants in large events to upload photos of themselves that are scanned and compared to the photos taken at the event to find ones including those participants.

The analogy is inapt. Finding photographs of a person within a set (however large) of photographs of a single event is nothing like finding one stored in one or more of 900-million-plus photos in the 340,000 Amazon Photos accounts potentially at issue in this case. Using account holders' photographs for that exercise raises obvious privacy concerns and, Amazon maintains, would violate its consumer privacy policies. It would also require the creation of a database of all photographs currently stored in users' private accounts, and Amazon's hardware currently lacks the capacity to accommodate the hundreds of millions of images at issue in a single database. Even Dr. Hashmi does not posit that Amazon could currently perform the process he proposes for matching an indeterminate number of non-users to photos stored with Amazon Photos.

The plaintiffs' proposed class of non-users is simply too amorphous to be workable.[10] *See Jamie S.*, 668 F.3d at 495 (vacating certification when "there is no way to know or readily ascertain who is a member of the class"); *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011) (affirming denial of certification in part because buyers of product were unknown and "individual notice would be impossible"). The Court is mindful that the Seventh Circuit has expressly rejected a requirement that plaintiffs "show a reliable and administratively feasible way

[10] The Court also questions who would represent the non-user class. The named plaintiffs, B.H. and his mother Angela Hogan, are users of Amazon Photos. B.H. uses his mother's Amazon Photos account on his Amazon Fire tablet. He does not have his own account but he is not a "non-user" in the sense that he takes photos and saves them in Amazon Photos on a device designated as his. The named plaintiff must be a member of the class that he or she purports to represent, both because of the real-party-in-interest requirement, Fed. R. Civ. P. 17(a) and the language of Rule 23(a) authorizing "one or more members of a class" to sue as representative parties. Wright & Miller, 7A Fed. Prac. & Proc. Civ. § 1761 (4th ed.). "A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court. *Sosna v. Iowa*, 419 U.S. 393, 403 (1975).

to determine whether a particular person is a member of the class." *Mullins*, 795 F.3d at 661, 662. But requiring that it be possible to know who is in a class does not amount to adopting the "heightened ascertainability requirement" that the *Mullins* court rejected.

On the other hand, though Amazon contends that identifying the User Class members would be "practically impossible—without a painstaking manual review of the nearly 340,000 accounts at issue," the Court is not persuaded. Amazon fails to meet the plaintiffs' argument that members of the User Class can self-identify through affidavits. Doing so is possible because, unlike non-users, users know whether their faces appear in images in their Amazon Photos accounts and whether the image-recognition feature was activated in their accounts. (For the latter, they do not have to remember toggling on the feature; they simply have to observe whether their account automatically clusters photos of the same people together.) Further, Amazon has now produced evidence of which Illinois accounts had image-recognition enabled, which will help identify potential class members. Amazon also contends that users' accounts might not contain any photos of the user's face, but if that is true, then those users are not class members.

Amazon further argues that it is too hard to discern whether users are Illinois residents. The Court agrees, as explained later, that location is an individualized issue that is not subject to class-wide proof. (See pp. 29-30, *infra*.) But that does not mean the class is not ascertainable. In *Svoboda v. Amazon.com, Inc.*, a BIPA case pertaining to Amazon.com's Virtual Try-On technology, the Seventh Circuit did not find the individualized nature of the location inquiry to preclude certification of a class of people who used the feature "while in Illinois." 168 F.4th 956, 960, 963 (7th Cir. 2026). The Court concluded that "billing addresses, IP addresses and geolocation data, and personal affidavits from class members" were available tools for ascertaining

location. Billing addresses and affidavits are also options in this case. (The plaintiffs have not proposed using IP addresses.)

The remainder of the discussion pertains only to the proposed User Class.

## II. Rule 23(a)

### A. Numerosity

Numerosity is no obstacle to certifying the User Class, and Amazon does not dispute that the class is so numerous that joinder of all members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). The record establishes that there are 339,847 Amazon Photos accounts that are associated with Illinois billing addresses and that had image recognition enabled at any time during the class period. If even 1% of these account holders uploaded (in Illinois) photographs of their own faces, the class would number over 3,000 users. With this number of plaintiffs, it would be "extremely difficult or inconvenient" to join all members of the class. *Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 777 (7th Cir. 2021) (quoting 7A C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 1762 (3d ed.)).

### B. Commonality

The defendant vigorously challenges the existence of common issues among the proposed class members. Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50, (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). This does not mean merely that they have all suffered a violation of the same provision of law; the claims must depend upon a common contention that is capable of class-wide resolution. *Wal-Mart*, 564 U.S. at 350; *Amgen Inc.*, 568 U.S. at 467 (commonality refers to issues that can be "proved through evidence common to the class."). "In this context, class-wide resolution means that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Bell v. PNC*

*Bank, Nat. Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015) (*citing Wal-Mart*, 564 U.S. at 350; *see also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."). There is no requirement, however, that a plaintiff seeking class certification show that each element of the claim can be proved on a class-wide basis. *Amgen Inc*, 568 U.S. at 469.

Under these standards, the plaintiffs have established the existence of common questions among the potential User Class. They identify at least three questions that the Court agrees are common to the class: (1) whether any of the facial-recognition information collected by Amazon to detect of faces in photos and create embeddings constitutes a biometric identifier or biometric information under BIPA; (2) if so, whether Amazon provides advance notice to users about the purpose and length of time for which it is collecting and storing the data; and (3) if so, whether Amazon obtains a "written release" (*i.e.*, "informed written consent," 740 ILCS 14/10) from users before collecting the biometric data.

Each of these questions is central to the validity of the plaintiffs' claims, and the truth or falsity of whether Amazon (1) collected "biometric" data; (2) provided notice with the required content; and (3) obtained a written release can be proved with evidence common to the class. Every plaintiff's claim hinges on whether the same type of data—an embedding of his or her facial features—is "biometric" under BIPA. That is a question of law and has a single answer for all class members. Similarly, the notice Amazon provided to Illinois users was materially identical throughout the class period. Again, it is a question of law whether the Terms of Use, Notice to Illinois Residents, Privacy Notice, "How Does Image Recognition Work?" advisory, and the File Retention Policy combined to notify users (1) that biometric data was being captured (2) for a

particular purpose and (3) for what length of time. Whether these notices provided the information required by BIPA can be answered for the entire class.

Third, whether toggling on the image-recognition feature is a "written release" of the privacy of one's biometric data is a question with one answer for the class members. Amazon presented the same circumstances to all users of the Photos app in Illinois, and so the class members' contentions that these circumstances failed to comply with BIPA are capable of class-wide resolution. *See Suchanek*, 764 F.3d at 757; *Howe v. Speedway LLC*, No. 1:19-CV-01374, 2024 WL 4346631, at *15 (N.D. Ill. Sept. 29, 2024) (commonality where "all of Speedway's timeclocks used during the class period were materially identical in terms of how they operated, their hardware, and their use"). Amazon insists that "informed consent" is an individualized issue, but this is not a subjective inquiry. The "informed" piece concerns what notice Amazon provided and whether it comports with BIPA's requirements. The "consent" inquiry is whether the users provided a "written release" through the processes Amazon made available—logging in or toggling a switch. Amazon focuses on whether individual users chose to read the Terms of Service and other notices, but BIPA is concerned with what information Amazon *provided* to allow for users' informed consent.

### C. Typicality

The named plaintiffs maintain, and Amazon disputes, that their claims are typical of the claims of the User Class. Typicality is established if the named plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). Typicality should be determined with reference to the defendant's actions. *Wagner v. NutraSweet Co*., 95 F.3d 527, 534 (7th Cir. 1996) (quoting *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983)).

From that standpoint, the plaintiffs' claims are typical. Amazon allegedly acted (or failed to act, in the case of providing notice) identically with respect to all members of the class, including the plaintiffs. It posted the same Terms of Use and other notices for all users, and when image recognition was enabled in Amazon Photos, it created embeddings corresponding to the faces visible in users' photographs. There is no variation among the plaintiffs with respect to how Amazon allegedly harmed them. Further, there is no legal theory for relief other than the alleged violation of § 15(b)'s notice and informed consent provisions. Thus, the named plaintiffs' claims "share the same essential characteristics as the class claims." *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 606 (7th Cir. 2021).

Amazon responds that the named plaintiffs do not have typical claims because their claims are subject to unique defenses. Its focus on the plaintiffs' conduct rather than its own is misplaced. *See Wagner*, 95 F.3d at 534. The existence of plaintiff-specific factual defenses can be considered under the rubric of typicality, *e.g., Oshana*, 472 F.3d at 514, but those arguments also overlap with the next question: whether the plaintiffs are adequate class representatives, *see Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1027 (7th Cir. 2018) ("A representative might be inadequate if he is subject to a substantial defense unique to him."). The Court considers the question there.

**D. Adequacy of Representation**

The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Conflicts that are hypothetical and may not become actual should not defeat certification. *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 680 (7th Cir. 2009).

Again, the defendant bases its adequacy argument on its assertion that Angela Hogan's claim is subject to numerous defenses unique to her. Amazon contends that Hogan's claim will be vitiated by its affirmative defenses of "waiver/ estoppel" and "ratification/ acquiescence." These

defenses hang on the respective premises that (1) the one and only time Angela Hogan enabled image recognition in her Amazon Photos account was on April 29, 2021, after she talked to the lawyers; and (2) she left image recognition enabled even after filing suit. The first of these premises is a disputed fact; the second is undisputed.

It does not matter to the adequacy issue, however. Amazon's defenses do not negate any element of Hogan's § 15(b) claim. *See Winforge, Inc. v. Coachmen Indus., Inc.,* 691 F.3d 856, 872 (7th Cir. 2012) (affirmative defense is one that does not controvert the plaintiff's proof and as to which defendant bears the burden of proof); *Glen Flora Dental Ctr., Ltd. v. First Eagle Bank*, 487 F. Supp. 3d 722, 735 (N.D. Ill. 2020). They are defenses that apply even if Hogan establishes a prima facie case that Amazon violated BIPA. As a result, Hogan has the same incentive as all class members to prove the affirmative elements of the claim: that Amazon, a private entity, collected, captured, purchased, or traded Illinois users' biometric data without first providing notice that it was doing so and for what specific purpose and length of time, and then receiving a written release from the users. *See Mora v. J&M Plating, Inc.*, 213 N.E.3d 942, 952 (Ill. App. Ct. 2022) (explaining requirements of § 15(b)). True, if affirmative defenses are available under BIPA (an open question—see p. 31, *infra*), then Amazon might be able to establish that Hogan is not entitled to recover even if the class proves that Amazon violated § 15(b). But that does not mean that she has a conflict with the rest of the class members that prevents her from representing their interests vigorously. Further, the record to date establishes that Ms. Hogan is invested in the case, knowledgeable about the proceedings, and committed to being a voice (in her words) for the class members. *See Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 394 (N.D. Ill. 2006) (explaining "modest" burden on named plaintiffs to demonstrate understanding of case).

The adequacy of the plaintiffs' chosen counsel to represent the class has not been challenged, and so the court will not linger on the subject. The firm of Wexler Boley & Elgersma LLP, has extensive experience in major complex and class litigation, including class actions under BIPA, in both the Northern District of Illinois and the Circuit Court of Cook County, among other courts. Plaintiffs' counsel have invested substantial resources in prosecuting this case and have acquired in-depth familiarity with the issues from the pleading stage (including a motion to dismiss) through extensive expert discovery. The Court has no basis on which to question plaintiffs' counsel's adequacy. *See* Fed. Rs. Civ. P. 23(a)(4), 23(g); *Eggleston v. Chicago Journeymen Plumbers' Loc. Union No. 130, U. A.*, 657 F.2d 890, 896 (7th Cir. 1981) ("competent and experienced" counsel required for adequate representation).

## III. Rule 23(b)(3)

Having found the case to satisfy all requirements of Rule 23(a), the Court considers next whether the plaintiffs can satisfy Rule 23(b)(3). If it is appropriate to certify a Rule 23(b)(3) class, then the Court need not also consider Rule 23(b)(2), because whatever injunctive relief the plaintiffs seek can be obtained by the (b)(3) class as well. *See Tylka v. Gerber Prods. Co.*, 178 F.R.D. 493, 501 n.7 (N.D. Ill. 1998).

### A. Predominance

The first consideration under Rule 23(b)(3) is whether "questions of law or fact common to class members predominate over any questions affecting only individual members." *Amgen Inc*, 568 U.S. at 467. To be clear, however, "[w]hat matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

A common question predominates if "a failure of proof on the [question] would end the case," and the whole class "will prevail or fail in unison." *Id.* at 460. "Predominance of common issues can be established "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453–54 (2016) (citing 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005) (footnotes omitted)); *Messner*, 669 F.3d at 815) ("Individual questions need not be absent," rather "[t]he rule requires only that those questions not predominate over the common questions affecting the class as a whole."). Further, Rule 23(b)(3) does *not* require that questions common to the class "will be answered, on the merits, in favor of the class." *Bell*, 800 F.3d at 376 (citing *Amgen Inc.*, 568 U.S. at 459).

The issue of predominance "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011); *see Santiago v. City of Chicago*, 19 F.4th 1010, 1018 (7th Cir. 2021) ("Only by properly circumscribing the claims and breaking them down into their constituent elements can a district court decide which issues are common, individual, and predominant."). As related above, "Section 15(b) requires the entity, prior to obtaining a person's biometric identifier or biometric information, to notify the person and receive a written release." *Mosby v. Ingalls Mem'l Hosp*. 234 N.E.3d 110, 118–19 (Ill. 2023).

Examining these elements establishes that they will mostly be subject to class-wide proof. *See Gorss Motels, Inc.*, 29 F.4th at 843–44 ("a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof."). These predominate issues include: (1) whether Amazon collected any data that is "biometric" under BIPA; (2) whether Amazon provided notice that it was collecting

such data and for what purpose and length of time; (3) whether users provided a "written release" by logging into Amazon Photos or toggling on the image-recognition feature. If the proposed common proof could be enough to carry a prima facie case on an element for an individual plaintiff, in an individual case, then that element presents a common question that can predominate for a class action. *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1008 (7th Cir. 2019).

As discussed with respect to commonality, there will be little if any variation among class members when it comes to proving these elements of their claim because Amazon acted the same, or essentially so, with respect to all users. "[S]imilar claims of uniform behavior, such as those involving a uniform form or standardized agreement, are the type of claims that are amenable to class-wide proof and therefore capable of satisfying the predominance inquiry." *Ross v. Gossett*, 33 F.4th 433, 440 (7th Cir. 2022); s*ee Gorss Motels, Inc. v.* 29 F.4th at 844. And because these elements are the core issues in the case, the other matters Amazon raises necessarily do not predominate. The Court takes these in turn.

*1. Illinois location*

As one reason common issues do not predominate, Amazon cites the non-extraterritorial reach of BIPA, which means that "a photo must have been uploaded from Illinois for BIPA to potentially apply."[11] (The user class consists of those with image-recognition activated, so the facial embedding would occur automatically upon upload). Discerning location requires individualized analysis of more than 900 million photographs, Amazon contends, especially

[11] The Court is not entirely sure this is the correct inquiry. The only issue here is whether users received proper notice and gave informed written consent to the collection of their (allegedly) biometric data. The users' location when they allegedly received notice and gave consent might be relevant, too, but the plaintiffs do not advance this argument.

because photos can be uploaded either automatically or manually, using either cellular or wireless data, and it does not collect data reflecting a user's location during uploads.

The Seventh Circuit has instructed that, under BIPA, a district court needs to "assess whether proof of location generates an individualized question of fact that predominates over common questions." *Svoboda v. Amazon.com Inc.*, 168 F.4th 956, 962 (7th Cir. 2026). As in *Svoboda*, however, the Court concludes that location is an individualized issue here, but it does not overcome the predominance of common questions.

The plaintiffs dispute that a review of over 900,000 photos is required because they are not seeking per-scan damages, and therefore each class member had to upload only one photograph in Illinois. They are correct, for reasons that have become much clearer since they first moved for certification. Under the amended BIPA, multiple instances of obtaining biometric information or biometric identifier from the same person by the same method constitute a single BIPA violation. 740 ILCS 14/20(b) (eff. Aug. 2, 2024). This rule is retroactive to cases pending when it became effective. *Clay v. Union Pac. R.R. Co.*, 171 F.4th 975, 977 (7th Cir. 2026). Therefore, the plaintiffs are correct that each class member will need evidence of only a single photo uploaded to Amazon Photos in Illinois.

Amazon has not pointed the Court toward any extraterritorial uploads among the 339,847 Illinois accounts (and millions of photos) potentially at issue, so its concern is purely hypothetical at this time. Doubtless there are many such uploads, but even more likely is that most accounts contain at least a single photo uploaded in Illinois: the class is limited to Illinois residents, so the claims will generally pertain to their use of Amazon's service within Illinois. Further, Amazon will not have to analyze all those photos. Users can attest to where they were when a photo was uploaded. Indeed, there could be a prove-up stage during which the class members establish that

one of their photos was uploaded in Illinois, by affidavit or some other means. *Svoboda,* 168 F.4th at 964 ("A phase requiring individual presentations of proof on all (or part of) an element of a claim does not defeat predominance."). This kind of final phase is "not uncommon" and, indeed "routine" including in BIPA class actions like *Svoboda*. *Id*. Thus, though there is no question that individualized showings will be needed, they will not be so onerous and complicated that the location issue will predominate over common issues.

*2. Defenses*

Amazon next contends that the existence of individualized defenses to class members' claims precludes a conclusion that common issues predominate in this case. The Court rejects this argument for largely the same reasons that it did not defeat the named plaintiffs' adequacy as class representatives.

As alluded to earlier, there is an open question in this circuit (and in the Illinois courts) as to whether common-law defenses can even apply to violations of BIPA. *Svoboda*, 168 F.4th at 965 ("we have not decided" whether "common law defenses can operate to preclude BIPA liability."). Under Illinois law, "statutes in derogation of common law will not be found to abrogate common-law affirmative defenses, unless it plainly appears that the intent of the statute is to impose strict liability." *Olle v. C House Corp*., 2012 IL App (1st) 110427, ¶ 15, 967 N.E.2d 886, 890 (Ill. App. Ct. 2012) (citing *Barthel v. Illinois Central Gulf R.R. Co*., 384 N.E.2d 323 (Ill. 1978). It is difficult to construe BIPA as something other than a strict-liability statute. The Illinois Supreme Court has explained: "When a private entity fails to comply with one of section 15's requirements, that violation constitutes an invasion, impairment, or denial of [] statutory rights. …No additional consequences need be pleaded *or proved*." *Rosenbach v. Six Flags Ent. Corp*., 129 N.E.3d 1197, 1206 (Ill. 2019) (emphasis added). *See also Bryant*, 958 F.3d at 624 (7th Cir.

2020) ("The injury inflicted by nondisclosure is concrete if the plaintiff establishes that the withholding impaired her ability to use the information in a way the statute envisioned."); *Snider v. Heartland Beef, Inc.*, 479 F. Supp. 3d 762, 772 (C.D. Ill. 2020) ("BIPA imposes liability regardless of whether damage can be shown and regardless of the violator's state of mind"). So, it is possible that Amazon's defenses of waiver and ratification are not available in a BIPA case at all.

For now it suffices to acknowledge that there are arguable affirmative defenses applicable to individual users, such as the named plaintiffs.[12] But the existence of individualized defenses does not defeat certification if common issues still predominate. *See Tyson Foods, Inc.*, 577 U.S. at 453 (need to separately try "defenses peculiar to some individual class members" not inconsistent with predominance of common issues). And as already noted, Amazon's defenses are not ones that negate any element of a BIPA claim, so no matter what, the common questions relating to the elements of the claim loom larger than fact-based defenses that might apply to certain plaintiffs.

This is all the more true because the waiver defense is specific to one named plaintiff, Angela Hogan. The theory of waiver is that she was apprised by attorneys of the potentially unlawful collection of biometric data by Amazon Photos and then, despite this information, activated image recognition in her Amazon Photos account. (Again, the factual basis of this

[12] It is not a foregone conclusion that class-wide resolution is impossible, at least for some defenses. For example, to the extent Amazon contends that users provided consent to the collection of biometric data, all users would have done so in the same way. *See Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 844 (7th Cir. 2022) (explaining that "prior express permission may be given by some uniform means such as identical product registration forms or standardized end-user licensing agreements"); *Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 587 (N.D. Ill. 2018) (stating that "if the defendant obtained the class members' consent for calls in a uniform manner, consent can be resolved on a class-wide basis").

defense is contested.) Amazon does not suggest that there is reason to believe that even a single other class member might have acted similarly, however. And they cannot now "manufacture" a claim in that way because the class period is closed. It is difficult to imagine this highly specific defense being one that comes to dominate over the common issues pertaining to liability.

As to the "ratification" defense, Amazon contends that because the plaintiffs continued using image recognition, and benefiting from it, even after filing suit, they manifested consent to their biometric data being collected. It is plausible that other class members might have continued using image recognition after somehow learning that the feature entails the collection of potentially biometric data. But is not clear where that gets Amazon; whatever injury occurred happened with the uploading of the first photograph of the user's face to the app. Unlike a diet soda drinker who could stop using the product after learning of its ingredients, *see Oshana*, 472 F.3d at 514 (7th Cir. 2006), a user of the app could not return to the *status quo ante* after a single photo her face was uploaded and her data allegedly collected. But that is not the question of the moment; the question is whether this potential defense precludes the predominance of common issues. It does not. It is a relatively straightforward question whether failing to disable image recognition after being put on notice amounts to authorization after the fact. *E.g., Progress Printing Corp. v. Jane Byrne Pol. Comm.*, 601 N.E.2d 1055, 1067 (Ill. App. Ct. 1992) (describing ratification). And as a factual matter, class members could easily be polled about whether they stopped using the feature, or Amazon could discern that they did from its own data, as it did with Hogan. Neither method requires scores of mini-trials that would swallow the common issues in the case.

*3. Individualized Damages*

Amazon next contends that individualized damages are at issue here, preventing the Court from finding that common issues predominate. But the plaintiffs seek only statutory damages for

each class member (and are bound by this admission). Pl. Reply. Br., Dkt. # 155 at 4. The only variation could be between the $1000 per-plaintiff and $5000 per-plaintiff recoveries, which depend on whether a proven violation was negligent ($1000) or reckless or intentional ($5000). That kind of plaintiff-specific showing of damages does not defeat a finding of predominance. *See Mullins*, 795 F.3d at 671; *Ross*, 33 F.4th at 441 ("Even assuming a damages assessment would require individual evidence, however, the court did not abuse its discretion in determining that the common issues as to liability establish predominance."). Indeed, "[i]t would drive a stake through the heart of the class action device, in cases in which damages were sought rather than an injunction or a declaratory judgment, to require that every member of the class have identical damages." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013).

The need to demonstrate negligence, intentional action, or recklessness impacts a plaintiff's monetary recovery, not the underlying substantive violation of BIPA. *Sosa v. Onfido*, Inc., 600 F. Supp. 3d 859, 874–75 (N.D. Ill. 2022); *see Rosenbach*, 129 N.E.3d at 1207. The statute itself makes this clear: the liquidated damages (among other remedies) are what a plaintiff can "recover" if there is negligent, reckless, or intentional conduct, *see* 740 ILCS 14/20; the substantive elements of a BIPA violation are separate, *see id*. §15. Further, predominance requires a "qualitative assessment," *Butler,* 727 F3d 796, and the issues relevant to the substantive violation have greater relative importance than Amazon's state of mind for purposes of damages. With multiple core liability issues subject to common proof, the damages issue does not predominate.

The plaintiffs also maintain (without much explanation) that whether Amazon acted negligently, intentionally, or recklessly is a "key common question." (Pl. Mem. at 20.) It is not out of the question that Amazon's state of mind can be established on a class-wide basis, given that all plaintiffs experienced the same process in enabling image recognition in the Amazon Photos

accounts. In *Bell*, the Seventh Circuit concluded that the issue of whether an allegedly underpaying employer acted in good faith or willfully was one appropriately resolved in a class-action context. *See* 800 F.3d at 381. But even if damages need to be established individually, that issue does not overcome the predominance of common questions.

*4. Quality of Images*

Amazon also contends that resolving the plaintiffs' claim will require individualized review of the embeddings at issue to determine whether they are of sufficient quality to be used to identify the person pictured. This is necessary because, according to Amazon, something can be a "biometric identifier" under BIPA only if can be used to identify an individual, and the photos underlying the embeddings will be of "varying quality" and not necessarily conducive to uniquely identifying the person pictured. Thus, Amazon contends, a mini-trial will be needed to determine whether, with respect to each image at issue, Amazon collected data of sufficient quality that it could be used to identify a specific individual. The plaintiffs respond, persuasively, by pointing to evidence that Amazon Photos already uses quality metrics as part of the clustering process so that clusters do not contain different people. Further, each class member's claim will involve only a single photo, and so Amazon's concern that low-quality images will present an overriding individual issue seems unwarranted—but it is certainly only hypothetical at this point and is therefore not sufficient to outweigh the multiple common issues regarding liability. Amazon is in control of its' users' data, including the plaintiffs', yet it has come forth with no specific evidence of any embedding that is too inferior to be used for identification. Speculation does not suffice. *See Costello*, 810 F.3d 1060 ("hypothetical individualized inquiry" needed for one question did not defeat predominance when another common question predominated); *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 298 (N.D. Ill. 2014)

**B. Superiority**

The next questions under Rule 23(b)(3) is whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." This is a "comparative inquiry" that considers a class action's costs and benefits in light of other available options. *Svoboda*, 168 F.4th at 961. The Court considers "(1) the Class Members' interest in individually controlling separate actions; (2) any litigation already begun by Class Members; (3) the desirability of concentrating the litigation in the particular forum; and (4) the difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). "The more claimants there are, the more likely a class action is to yield substantial economies in litigation." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).

The plaintiffs contend that a class action is the superior means of resolving the claims here. They point to the relatively small size of the available liquidated damages, the lack of any other class actions challenging the conduct at issue here, and the appropriateness of this judicial district as a forum given the source of law and the court's management of the case to date. Amazon, in response, argues that the superiority requirement is not satisfied because "class litigation would be unmanageable in the extreme" (for the same reasons it posits that the classes fail at the ascertainability threshold) and because (it contends) the plaintiffs can each obtain enormous individual damages and attorney's fees.

True, although cases in which "individual damages run high" aren't excluded from certification, Rule12(b)(3) is more concerned with those who otherwise would not have the ability or incentive to bring their opponent into court. *Amchem Prods., Inc.*, 521 U.S. at 617. But Amazon's argument about large damages is again based on the premise that the plaintiff users all seek statutory damages for each time Amazon Photos created an embedding of their faces. As

shown above, however, such damages are not available. Repeat instances of obtaining biometric data from the same person by the same method constitute a single BIPA violation. 740 ILCS 14/20(b); *Clay,* 171 F.4th at 977.

With each plaintiff is limited to either $1,000 or $5,000 in statutory damages, affected persons lack the incentive to finance their own individual lawsuits. *See Suchanek*, 764 F.3d at 760 (superiority can be shown where "no rational individual plaintiff would be willing to bear the costs of this lawsuit"); *Redmon v. Uncle Julio's of Illinois, Inc*., 249 F.R.D. 290, 296 (N.D. Ill. 2008) (insufficient incentive to litigate independently with statutory damages of $1,000). That is especially true given the amount of costly evidence and expert testimony the plaintiffs have proffered to support class certification and to defend against and seek summary judgment. *Suchanek*, 764 F.3d at 760. Moreover, given the size of the proposed class and the claims challenging "actions taken by Amazon that apply uniformly, . . . case-by-case resolution of the Class Members' claims would be an inefficient use of judicial and party resources." *Gunderson v. Amazon.com, Inc*., 350 F.R.D. 376, 395 (N.D. Ill. 2025).

Nor does Amazon's argument that damages are "discretionary" defeat a showing of superiority. This argument is based on the previous version of BIPA, as interpreted by the Illinois Supreme Court. *See Cothron v. White Castle Sys., Inc*., 216 N.E.3d 918, 929 (Ill. 2023) ("It also appears that the General Assembly chose to make damages discretionary rather than mandatory under the Act."). In *Cothron*, per-scan damages were available, and the concern was a court's discretion to fashion a damages award that would not financially destroy the defendant business—but that is no longer a concern after per-scan damages have been ruled out by the legislature. And, although plaintiffs can obtain the higher of either actual damages or liquidated damages, 740 ILCS 14/20(a)(1)-(2), the plaintiffs assert that they have "made repeatedly clear that they seek only

statutory damages." Reply in Support of Motion to Exclude, Dkt. # 175 at 12. The only potential variation would be between awards of $5,000 and $1,000, to the extent Amazon's state of mind is not established on a class-wide basis. (Class members with substantial actual damages, if any, could opt out. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006).) As already discussed, however, the need to individually assess damages does not defeat superiority.

Further, although the inquiry is "comparative," Amazon does not propose a method of resolving the issues that is better than a class action (other than to suggest that the "large claims" based on per-scan damages "can be pursued individually"). And given the extensive cost of discovery on the technical issues versus the relatively low available damages, the Court sees no obvious practicable alternative. *See Svoboda*, 168 F.4th at 967 ("complex, costly discovery" among factors that "hamper individual action.").

## IV. Class Definition, Class Representatives, and Class Counsel

In accordance with the analysis above, the Court certifies a class of users of Amazon Photos as follows:

> For the Class Period of October 18, 2016, through January 31, 2023, any Illinois resident whose face appears in at least one photo that was uploaded to his or her own Amazon Photos account in the State of Illinois when image recognition was enabled, and Amazon's Face Processing Technology generated an embedding from the image of the user's face.

This class definition is a modified version of the plaintiff's proposed User Class. The changes are designed to further clarify the requirements for class membership and distinguish the technology at issue in this case from Rekognition or other Amazon image-recognition products. It also clarifies that the uploading of the photo must have occurred in Illinois.

For reasons already stated, the court appoints Plaintiffs as representatives of the User Class.

As previously discussed, Wexler Boley & Elgersma LLP are well-qualified to prosecute this action, and the Court hereby appoints as Co-Lead Counsel Kenneth A. Wexler and Justin N. Boley from that firm. The Court also grants, with no opposition from the defendant, the plaintiffs' request to preserve the interim leadership structure set forth in the Court's order of April 19, 2022. Case Management Order No. 1, Dkt. # 62 at 3-4. Accordingly, the Court appoints Daniel E. Gustafson, Karla M. Gluek, and David A. Goodwin of Gustafson Gluek PLLC; Ryan F. Stephan, James B. Zouras, and Catherine Mitchell Duffy of Stephan Zouras, LLC; and Dean Kawamoto, Derek Loeser, and Gretchen Freeman Cappio of Keller Rohrback L.L.P. as Co-Lead Counsel. Archana Tamoshunas and Kevin Landau of Taus, Cebulash & Landau, LLP, are appointed to the Executive Committee. Pursuant to Fed. R. Civ. P. 23(g), the Court finds that these firms and attorneys have substantial experience in the prosecution of complex cases, including class actions under BIPA, and they have demonstrated the willingness and ability to dedicate the resources and expertise necessary to fairly and adequately represent the proposed Classes and successfully manage this case as a class action.

* * *

For the reasons explained in this opinion, the Court denies the motion to exclude evidence and grants the motion for class certification.

Dated: November 10, 2026

John J. Tharp, Jr.
United States District Judge